**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Miami Division**

Case No. 16-20725-CIV-GAYLES-OTAZO-REYES

**OTTO CANDIES, LLC, ET AL.,**

Plaintiffs,

v.

**CITIGROUP INC.,**

Defendant.

**DEFENDANT CITIGROUP INC.'S**
**MOTION TO DISMISS THE THIRD AMENDED COMPLAINT**
**AND SUPPORTING MEMORANDUM OF LAW**

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. iv

PRELIMINARY STATEMENT ............................................................................................1

STATEMENT OF FACTS ...................................................................................................3

        A.      The Pemex/OSA Cash Advance Program ...........................................3

        B.      Citigroup Learns of Falsified Documentation And OSA Collapses .................4

        C.      Plaintiffs And Their Purported Injuries ...........................................5

ARGUMENT ....................................................................................................................5

    I.      Plaintiffs' RICO Claims Should Be Dismissed ................................................6

        A.      Plaintiffs Fail To Allege A Cognizable RICO Injury .......................6

             1.      Most Plaintiffs Do Not Allege Domestic Injury .................................6

             2.      The Remaining Plaintiffs Do Not Allege Direct Injury.........................9

        B.      Plaintiffs Fail To Allege A Cognizable RICO Predicate Act .........................10

    II.      Nordic Trustee's Claims Should Be Dismissed.........................................................13

    III.      Plaintiffs Fail To Satisfy The Pleading Requirements Of Rule 9(b) Applicable To Their RICO And Common Law Fraud Claims.........................................15

        A.      The TAC Fails To Allege Actionable Misconduct By Citigroup ....................16

        B.      The TAC Fails To Allege Reliance .................................................21

    IV.      The TAC Fails To Allege Scienter .........................................................24

    V.      Plaintiffs' RICO Claims Fail On Every Required Element .........................................31

        A.      The TAC Does Not Allege The Conduct Of A RICO Enterprise....................32

        B.      The TAC Does Not Allege A Pattern Of Racketeering Activity....................34

    VI.      Plaintiffs' RICO Conspiracy Claims Fail ................................................35

VII.   Plaintiffs' Common Law Fraud-Based Claims Fail....................................................36

        A.      Plaintiffs Fail To State A Claim For Fraud.......................................................36

        B.      Plaintiffs Fail To State A Claim For Aiding And Abetting Fraud...................36

        C.      Plaintiffs Fail To State A Claim For Conspiracy To Commit Fraud...............38

VIII.  Plaintiffs' Vicarious Liability Claims Should Be Dismissed ......................................38

CONCLUSION.................................................................................................................................40

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Absolute Activist Value Master Fund Ltd. v. Devine*,
233 F. Supp. 3d 1297 (M.D. Fla. 2017) ................................................................................8

*Acosta v. Campbell*,
2006 WL 146208 (M.D. Fla. Jan. 18, 2006) ........................................................................33

*Adams v. Rothstein*,
2012 WL 1605098 (S.D. Fla. May 8, 2012) ...................................................................10, 12

*Affco Invs. 2001, L.L.C. v. Proskauer Rose, L.L.P.*,
625 F.3d 185 (5th Cir. 2010) ...............................................................................................18

*Aim Recycling of Fla., LLC v. Metals USA, Inc.*,
2020 WL 209860 (S.D. Fla. Jan. 13, 2020) .........................................................................32

*Akanthos Cap. Mgmt., LLC v. CompuCredit Holdings Corp.*,
677 F.3d 1286 (11th Cir. 2012) ...........................................................................................14

*Allapattah Servs., Inc. v. Exxon Corp.*,
372 F. Supp. 2d 1344 (S.D. Fla. 2005) ................................................................................40

*Allstate Life Ins. Co. v. Robert W. Baird & Co.*,
2011 WL 5024269 (D. Ariz. Oct. 21, 2011) ..................................................................14, 15

*Am. Dental Ass'n v. Cigna Corp.*,
605 F.3d 1283 (11th Cir. 2010) .................................................................................22, 34, 35

*Am. United Life Ins. Co. v. Martinez*,
480 F.3d 1043 (11th Cir. 2007) ...........................................................................................15

*Ambrosia Coal & Constr. Co. v. Pages Morales*,
482 F.3d 1309 (11th Cir. 2007) ...........................................................................................15

*Andrews v. AT&T*,
95 F.3d 1014 (11th Cir. 1996) .............................................................................................21

*Anza v. Ideal Steel Supply Corp.*,
547 U.S. 451 (2006) ...............................................................................................................9

*Armada (Singapore) PTE Ltd. v. Amcol Int'l Corp.*,
885 F.3d 1090 (7th Cir. 2018) ...............................................................................................7

iv

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)......................................................................................................5

*Bald Eagle Area Sch. Dist. v. Keystone Fin., Inc.*,
   189 F.3d 321 (3d Cir. 1999)........................................................................................12

*Bascuñan v. Elsaca*,
   874 F.3d 806 (2d Cir. 2017)..........................................................................................7

*BCJJ, LLC v. Lefevre*,
   2011 WL 1296682 (M.D. Fla. Mar. 31, 2011) ..........................................................17

*Beck v. Prupis*,
   162 F.3d 1090 (11th Cir. 1998),
   *aff'd*, 529 U.S. 494 (2000) .....................................................................................23, 36

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)....................................................................................................5, 6

*Bivens Gardens Off. Bldg., Inc. v. Barnett Banks of Fla., Inc.*,
   140 F.3d 898 (11th Cir. 1998) ....................................................................................10

*Boyle v. United States*,
   556 U.S. 938 (2009)....................................................................................................33

*Brooks v. Blue Cross & Blue Shield of Fla., Inc.*,
   116 F.3d 1364 (11th Cir. 1997) ........................................................................3, 26, 31

*Brophy v. Jiangbo Pharm., Inc.*,
   781 F.3d 1296 (11th Cir. 2015) ..................................................................................29

*Brown v. Zaveri*,
   164 F. Supp. 2d 1354 (S.D. Fla. 2001) ......................................................................38

*Bruhl v. Conroy*,
   2007 WL 983228 (S.D. Fla. Mar. 27, 2007)........................................................17, 23

*Caron v. NCL (Bahamas), Ltd.*,
   910 F.3d 1359 (11th Cir. 2018) ..................................................................................39

*Catano v. Capuano*,
   2019 WL 3890343 (S.D. Fla. May 28, 2019) .............................................................6, 7

*Cent. Bank v. City of Fresno*,
   848 F.2d 1242 (9th Cir. 1988) ...............................................................................13, 14

*Cevdet Aksüt Oğullari Koll. Sti v. Cavusoglu*,
   245 F. Supp. 3d 650 (D.N.J. 2017) ...............................................................................8

*Chaparro v. Carnival Corp.*,
    693 F.3d 1333 (11th Cir. 2012) ...............................................................6

*Chiarella v. United States*,
    445 U.S. 222 (1980).................................................................................16

*Chill v. Gen. Elec. Co.*,
    101 F.3d 263 (2d Cir. 1996).....................................................................27

*Cisneros v. Petland, Inc.*,
    972 F.3d 1204 (11th Cir. 2020) ......................................................... *passim*

*In the Matter of Citigroup Inc.*,
    2018 WL 3913653 ......................................................................4, 25, 29, 31

*City of Almaty, Kazakhstan v. Ablyazov*,
    226 F. Supp. 3d 272 (S.D.N.Y. 2016)........................................................6

*City of Miami v. JPMorgan Chase & Co.*,
    171 F. Supp. 3d 1309 (S.D. Fla. 2016) ....................................................26

*U.S. ex rel. Clausen v. Lab'y Corp. of Am., Inc.*,
    290 F.3d 1301 (11th Cir. 2002) .....................................................24, 25, 31

*Colliton v. Cravath, Swaine & Moore LLP*,
    2008 WL 4386764 (S.D.N.Y. Sept. 24, 2008),
    *aff'd*, 356 F. App'x 535 (2d Cir. 2009)....................................................25

*Cordell Consultant, Inc. Money Purchase Plan & Tr. v. Abbott*,
    561 F. App'x 882 (11th Cir. 2014) ..........................................................37

*Cordell Consultants, Inc. Money Purchase Plan v. Abbott*,
    2015 WL 11539507 (S.D. Fla. Nov. 9, 2015),
    *aff'd*, 682 F. App'x 867 (11th Cir. 2017).................................................37

*Cox v. Adm'r U.S. Steel & Carnegie*,
    17 F.3d 1386 (11th Cir. 1994) .................................................................39

*Crenshaw v. Lister*,
    556 F.3d 1283 (11th Cir. 2009) ...............................................................29

*Cruden v. Bank of NY*,
    1990 WL 131350 (S.D.N.Y. Sept. 4, 1990),
    *aff'd in part and rev'd in part on other grounds*,
    957 F.2d 961 (2d Cir. 1992).....................................................................15

*Daedalus Cap. LLC v. Vinecombe*,
    625 F. App'x 973 (11th Cir. 2015) ...........................................................35

*Dandong Old North-East Agric. & Animal Husbandry Co., Ltd. v. Hu*,
  2017 WL 3328239 (S.D.N.Y. Aug. 3, 2017) ..........................................................6, 8

*De La Torre v. Wright Nat'l Flood Ins. Co.*,
  2019 WL 8014548 (S.D. Fla. Sept. 20, 2019) ...........................................................27

*Defer LP v. Raymond James Fin., Inc.*,
  2010 WL 3452387 (S.D.N.Y. Sept. 2, 2010)..................................................16, 27

*Defer LP v. Raymond James Fin., Inc.*,
  654 F. Supp. 2d 204 (S.D.N.Y. 2009)..................................................28, 29

*Delta Coal Program v. Libman*,
  554 F. Supp. 684 (N.D. Ga. 1982),
  *aff'd*, 743 F.2d 852 (11th Cir. 1984).....................................................13

*Diamonds Plus, Inc. v. Kolber*,
  960 F.2d 765 (8th Cir. 1992) ...........................................................32

*Doe v. Emerson*,
  2006 WL 2971314 (Fla. 9th JCC June 2, 2006) ...........................................39

*Dusek v. JPMorgan Chase & Co.*,
  832 F.3d 1243 (11th Cir. 2016) ...........................................................11

*Erica P. John Fund, Inc. v. Halliburton Co.*,
  563 U.S. 804 (2011).....................................................21

*Farris v. United States*,
  333 F.3d 1211 (11th Cir. 2003) ...........................................................39

*Feldbaum v. McCrory Corp.*,
  1992 WL 119095 (Del. Ch. June 2, 1992)..................................................14, 15

*Feng v. Walsh*,
  2020 WL 5822420 (S.D. Fla. Sept. 14, 2020) ...........................................8, 37, 38

*Feng v. Walsh*,
  2022 WL 669198 (S.D. Fla. Mar. 7, 2022)...........................................40

*Fernau v. Enchante Beauty Prods., Inc.*,
  847 F. App'x 612 (11th Cir. 2021) ...........................................................23

*Ferrell v. Durbin*,
  311 F. App'x 253 (11th Cir. 2009) ...........................................................35

*Filippova v. Mogilvesky*,
  2018 WL 7825449 (S.D. Fla. Aug. 29, 2018)..................................................6, 9

*Fin. Sec. Assur., Inc. v. Stephens, Inc.*,
 500 F.3d 1276 (11th Cir. 2007) ....................................................................................3

*Finn v. Prudential-Bache Sec., Inc.*,
 821 F.2d 581 (11th Cir. 1987) ....................................................................................36

*Garcia v. Lion Mexico Consol., L.P.*,
 2016 WL 6157436 (W.D. Tex. Oct. 21, 2016) ...........................................................7

*Garfield v. NDC Health Corp.*,
 466 F.3d 1255 (11th Cir. 2006) ..................................................................................20

*Gatz v. Ponsoldt*,
 297 F. Supp. 2d 719 (D. Del. 2003)............................................................................12

*Ginsberg v. Lennar Fla. Holdings, Inc.*,
 645 So. 2d 490 (Fla. 3d DCA 1994) ...........................................................................38

*Glock v. Glock*,
 247 F. Supp. 3d 1307 (N.D. Ga. 2017) .......................................................................31

*GolTV, Inc. v. Fox Sports Latin Am., Ltd.*,
 2018 WL 1393790 (S.D. Fla. Jan. 26, 2018) ...............................................................7

*Gonzalez v. Agave Metal Trading LLC*,
 2018 WL 7048027 (M.D. Fla. Dec. 13, 2018)............................................................30

*In re Gosman*,
 382 B.R. 826 (S.D. Fla. 2007) ....................................................................................40

*Gratz v. Ruggiero*,
 822 F. App'x 78 (3d Cir. 2020) ..................................................................................10

*Great Fla. Bank v. Countrywide Home Loans, Inc.*,
 2011 WL 382588 (S.D. Fla. Feb. 3, 2011) .................................................19, 26, 30

*Green Leaf Nursery v. E.I. DuPont De Nemours & Co.*,
 341 F.3d 1292 (11th Cir. 2003) ..............................................................................9, 21

*Griffin Indus., Inc. v. Irvin*,
 496 F.3d 1189 (11th Cir. 2007) ..................................................................................27

*Gusevs v. AS Citadele Banka*,
 2016 WL 9086931 (C.D. Cal. Sept. 8, 2016) ..............................................................7

*H. J. Inc. v. Nw. Bell Tel. Co.*,
 492 U.S. 229 (1989)...............................................................................................34, 35

*Hecht v. Com. Clearing House, Inc.*,
    897 F.2d 21 (2d Cir. 1990)......................................................................................10

*In re Henry Schein, Inc. Sec. Litig.*,
    2019 WL 8638851 (E.D.N.Y. Sept. 27, 2019) ........................................................19

*Holmes v. Sec. Inv. Protection Corp.*,
    503 U.S. 258 (1992)................................................................................................10

*Hosch v. Wachovia Bank, N.A.*,
    815 F. App'x 352 (11th Cir. 2020) ...................................................................15, 39

*Howard v. Am. Online Inc.*,
    208 F.3d 741 (9th Cir. 2000) ...........................................................................11, 35

*Humana, Inc. v. Castillo*,
    728 So. 2d 261 (Fla. 2d DCA 1999) .................................................................21, 36

*Humphrey v. GlaxoSmithKline*,
    905 F.3d 694 (3d Cir. 2018).................................................................................6, 8

*In LBS Petroleum, LLC v. Demir*,
    2015 WL 12469064 (S.D. Fla. Oct. 27, 2015).........................................................37

*Infante v. Bank of Am. Corp.*,
    680 F. Supp. 2d 1298 (S.D. Fla. 2009) .............................................................16, 21

*Jackson v. BellSouth Telecomms.*,
    372 F.3d 1250 (11th Cir. 2004) .......................................................................35, 36

*Kalnit v. Eichler*,
    264 F.3d 131 (2d Cir. 2001)...................................................................................29

*In re KLX, Inc. Sec. Litig.*,
    232 F. Supp. 3d 1269 (S.D. Fla. 2017) .............................................................27, 31

*Koch v. Royal Wine Merchs., Ltd.*,
    907 F. Supp. 2d 1332 (S.D. Fla. 2012) ..................................................................17

*Kusner v. First Pa. Corp.*,
    531 F.2d 1234 (3d Cir. 1976).................................................................................14

*Lamm v. State St. Bank & Trust*,
    749 F.3d 938 (11th Cir. 2014) .........................................................................36, 37

*Lamm v. State St. Bank & Trust Co.*,
    889 F. Supp. 2d 1321 (S.D. Fla. 2012),
    *aff'd*, 749 F.3d 938 (11th Cir. 2014)......................................................................38

*Lan Li v. Walsh*,
   2017 WL 3130388 (S.D. Fla. July 24, 2017)........................................................................9

*Lance v. Wade*,
   457 So. 2d 1008 (Fla. 1984).............................................................................................14

*Lawrence v. Bank of Am., N.A.*,
   2010 WL 3467501 (M.D. Fla. Aug. 30, 2010),
   *aff'd*, 455 F. App'x 904 (11th Cir. 2012).........................................................................37

*Lefebvre v. James*,
   697 So. 2d 918 (Fla. 4th DCA 1997).................................................................................40

*Licht v. Watson*,
   567 F. App'x 689 (11th Cir. 2014) ....................................................................................10

*Liquidation Comm'n of Banco Intercontinental, S.A. v. Renta*,
   530 F.3d 1339 (11th Cir. 2008) ....................................................................................9, 28

*Loftin v. KPMG LLP*,
   2003 WL 22225621 (S.D. Fla. Sept. 10, 2003) ................................................................11

*Mann v. Palmer*,
   713 F.3d 1306 (11th Cir. 2013) ........................................................................................30

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
   501 F. Supp. 2d 452 (S.D.N.Y. 2006).........................................................................19, 28

*Meridian Tr. Co. v. Batista*,
   2018 WL 4693533 (S.D. Fla. Sept. 26, 2018) .......................................................22, 37, 38

*Miyahira v. Vitacost.com, Inc.*,
   2011 WL 13136262 (S.D. Fla. Dec. 12, 2011) ............................................................26, 28

*Mizzaro v. Home Depot, Inc.*,
   544 F.3d 1230 (11th Cir. 2008) ....................................................................................28, 29

*MLMSK Inv. Co. v. JP Morgan Chase & Co.*,
   651 F.3d 268 (2d Cir. 2011)..............................................................................................11

*Mootilal Ramhit & Sons Contracting, Ltd. v. Mohammed*,
   2014 WL 3439742 (S.D. Fla. July 15, 2014).....................................................................36

*Morgensen v. Body Cent. Corp.*,
   15 F. Supp. 3d 1191 (M.D. Fla. 2014)...............................................................................28

*Muhammad v. Citimortgage, Inc.*,
   598 F. App'x 636 (11th Cir. 2015) ...............................................................................16, 24

*Murray v. U.S. Bank Trust Nat'l Ass'n*,
   365 F.3d 1284 (11th Cir. 2004) ........................................................................14

*In re Nokia Corp. Sec. Litig.*,
   1998 WL 150963 (S.D.N.Y. Apr. 1, 1998).........................................................31

*In re Nokia ERISA Litig.*,
   2011 WL 7310321 (S.D.N.Y. Sept. 6, 2011).....................................................27

*Off. Comm. of Unsecured Creditors of PSA, Inc. v. Edwards*,
   437 F.3d 1145 (11th Cir. 2006) ..................................................................32, 34

*Okla. Firefighters Pension & Ret. Sys. v. Corbat*,
   2017 WL 6452240 (Del. Ch. Dec. 18, 2017)......................................................5

*Omnipol, A.S. v. Worrell*,
   421 F. Supp. 3d 1321 (M.D. Fla. 2019)............................................................16

*Osuna v. Citigroup Inc.*,
   2018 WL 6547205 (S.D.N.Y. Sept. 28, 2018),
   *aff'd*, 820 F. App'x 38 (2d Cir. 2020)................................................................5

*Otto Candies, LLC v. Citigroup, Inc.*,
   963 F.3d 1331 (11th Cir. 2020) ........................................................................40

*Otto Candies, LLC v. KPMG LLP*,
   2019 WL 994050 (Del. Ch. Feb. 28, 2019) ...................................................5, 24

*Otto Candies, LLC v. KPMG, LLP*,
   2020 WL 4917596 (Del. Ch. Aug. 21, 2020) .................................................5, 25

*Oxford Asset Mgmt., Ltd. v. Jaharis*,
   297 F.3d 1182 (11th Cir. 2002) ..........................................................................6

*Parm v. Nat'l Bank of Cal., N.A.*,
   242 F. Supp. 3d 1321 (N.D. Ga. 2017)..............................................................33

*PDVSA U.S. Litig. Trust v. Lukoil Pan Ams. LLC*,
   372 F. Supp. 3d 1353 (S.D. Fla. 2019),
   *aff'd*, 991 F.3d 1187 (11th Cir. 2021)...............................................................13

*Platinum Ests., Inc. v. TD Bank, N.A.*,
   2012 WL 760791 (S.D. Fla. Mar. 8, 2012).....................................................37, 38

*Pulte Home Corp. v. Osmose Wood Preserving, Inc.*,
   60 F.3d 734 (11th Cir. 1995) ............................................................................22

*Ravin v. Hockman*,
2007 WL 29248 (S.D. Fla. Jan. 3, 2007) ................................................................21

*Ray v. Spirit Airlines, Inc.*,
126 F. Supp. 3d 1332 (S.D. Fla. 2015),
*aff'd*, 836 F.3d 1340 (11th Cir. 2016) .............................................................32, 33

*Ray v. Spirit Airlines, Inc.*,
767 F.3d 1220 (11th Cir. 2014) ...........................................................................34

*Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*,
119 F.3d 935 (11th Cir. 1997) ........................................................................19, 24

*Reves v. Ernst & Young*,
507 U.S. 170 (1993)......................................................................................32, 33

*RJR Nabisco, Inc. v. Eur. Cmty.*,
579 U.S. 325 (2016).............................................................................................6

*Rogers v. Cisco Sys., Inc.*,
268 F. Supp. 2d 1305 (N.D. Fla. 2003).................................................................24

*Rogers v. Nacchio*,
241 F. App'x 602 (11th Cir. 2007) .......................................................................35

*Sapssov v. Health Mgmt. Assocs., Inc.*,
22 F. Supp. 3d 1210 (M.D. Fla. 2014)..................................................................19

*Sinaltrainal v. Coca-Cola Co.*,
578 F.3d 1252 (11th Cir. 2009) ...........................................................................30

*Solomon v. Blue Cross & Blue Shield Ass'n*,
574 F. Supp. 2d 1288 (S.D. Fla. 2008) .................................................................36

*State v. Mark Marks, P.A.*,
654 So. 2d 1184 (Fla. 4th DCA 1995)...................................................................16

*In re Sunterra Corp. Sec. Litig.*,
199 F. Supp. 2d 1308 (M.D. Fla. 2002)............................................................28, 29

*Super Vision Int'l, Inc. v. Mega Int'l Com. Bank Co., Ltd.*,
534 F. Supp. 2d 1326 (S.D. Fla. 2008) .................................................................22

*Talisman Cap. Alt. Invs. Fund, Ltd. v. Mouttet*,
2011 WL 13223517 (S.D. Fla. Oct. 26, 2011).......................................................30

*Terry A. Lambert Plumbing, Inc. v. W. Sec. Bank*,
934 F.2d 976 (8th Cir. 1991) ...............................................................................33

*Thomas H. Lee Equity Fund V, L.P. v. Mayer Brown, Rowe & Maw LLP*,
  612 F. Supp. 2d 267 (S.D.N.Y. 2009)................................................................................12, 18

*Tippens v. Round Island Plantation LLC*,
  2009 WL 2365347 (S.D. Fla. July 31, 2009)..........................................................................36

*Transatlantic, LLC v. Humana, Inc.*,
  666 F. App'x 788 (11th Cir. 2016) ..........................................................................................26

*United States v. Turkette*,
  452 U.S. 576 (1981)..................................................................................................................33

*United Techs. Corp. v. Mazer*,
  556 F.3d 1260 (11th Cir. 2009) ...............................................................................................38

*Uthe Tech. Corp. v. Harry Allen & Aetrium, Inc.*,
  2016 WL 4492580 (N.D. Cal. Aug. 26, 2016) ..........................................................................8

*Vicon Fiber Optics Corp. v. Scrivo*,
  201 F. Supp. 2d 216 (S.D.N.Y. 2002)......................................................................................35

*W. Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc.*,
  287 F. App'x 81 (11th Cir. 2008) ......................................................................................16, 24

*W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP*,
  549 F.3d 100 (2d Cir. 2008)..................................................................................................9, 13

*Wallace v. N.Y.C. Dep't of Corr.*,
  1996 WL 586797 (E.D.N.Y. Oct. 9, 1996)..............................................................................25

*Wilding v. DNC Servs. Corp.*,
  941 F.3d 1116 (11th Cir. 2019) ...............................................................................................21

*Woods v. Michael*,
  2021 WL 1055816 (S.D. Fla. Feb. 10, 2021),
  *aff'd*, 2021 WL 3355459 (11th Cir. Aug. 3, 2021) .............................................................11, 35

*Worldspan Marine Inc. v. Comerica Bank*,
  2020 WL 1238732 (S.D. Fla. Feb. 27, 2020) .......................................................................6, 8

*Xia Bi v. McAuliffe*,
  927 F.3d 177 (4th Cir. 2019) ...................................................................................................21

*Ziemba v. Cascade Int'l, Inc.*,
  256 F.3d 1194 (11th Cir. 2001) ...............................................................................................18

*Zisholtz v. SunTrust Banks, Inc.*,
  2009 WL 3132907 (N.D. Ga. Sept. 24, 2009) .........................................................................28

**Statutes & Rules**

18 U.S.C. § 1964(c) ...........................................................................................................10

Fla. Stat. § 95.11(3)(p) (2005) ..........................................................................................39

**Other Authorities**

H.R. Conf. Rep. no. 104–396 at 47 (1995) .......................................................................10

Citigroup Inc. ("Citigroup") respectfully moves to dismiss Plaintiffs' Third Amended Complaint (DE 187) ("TAC") pursuant to Fed. R. Civ. P. 9(b) and 12(b)(6).  In support of its motion, Citigroup submits this memorandum of law and the accompanying Request for Judicial Notice ("RJN") and Declaration of Adam S. Hakki.

## PRELIMINARY STATEMENT

Plaintiffs are alleged creditors of Oceanografía, S.A. de C.V. ("OSA"), a Mexican oil services company.  They assert claims under the federal Racketeer Influenced and Corrupt Organizations Act ("RICO") and state common law for alleged losses arising from OSA's collapse in 2014 following revelations that OSA had submitted falsified documents to Banco Nacional de Mexico S.A. ("Banamex," an indirect subsidiary of Citigroup) in connection with a receivables financing arrangement through which Banamex advanced funds to vendors of Petróleos Mexicanos S.A. ("Pemex," Mexico's national oil company).

The 540-page, 1,977-paragraph TAC is Plaintiffs' fourth attempt over six years to state a claim.  Desperate to sue a large company in the U.S. for treble damages, Plaintiffs have catalogued in the TAC seemingly every alleged encounter any of the Plaintiffs may have had with "Citigroup," regardless of whether they actually spoke with someone from Citigroup (as opposed to Banamex or OSA) or how trivial or even relevant the interaction, and often do so merely on "information and belief."  As a result, the TAC is much longer than Plaintiffs' most recent deficient complaint, but no better.

**Rule 9(b):**  Rule 9(b)'s heightened pleading requirements apply to Plaintiffs' civil RICO and fraud-based claims.  Unable to specify on an individual basis (as each Plaintiff must) exactly when, how, why, and through whom Citigroup defrauded each Plaintiff, Plaintiffs complain of misrepresentations made by OSA and make numerous key allegations "on information and belief," even with respect to matters inherently within their personal knowledge.

1

**Scienter:**  Plaintiffs must plead *facts* creating a "strong inference" of fraudulent intent. Instead, Plaintiffs conflate Banamex and Citigroup and rely on conclusory assertions that Citigroup knowingly and purposefully defrauded Plaintiffs, notwithstanding that (1) Plaintiffs have acknowledged that Citigroup learned of OSA's falsified documents "for the first time" in February 2014, (2) Citigroup itself was the largest victim of the OSA fraud, suffering nearly $500 million in losses, and (3) the TAC invokes the enforcement settlement between Citigroup and the U.S. Securities and Exchange Commission ("SEC"), in which the SEC found that Citigroup lacked sufficient controls *to detect* the OSA fraud.  Notably, the necessary predicate for Plaintiffs' theory of how Citigroup supposedly benefitted from the OSA fraud — via reimbursement by Pemex for the unauthorized advances paid to OSA — is inherently implausible, alleged solely "on information and belief," and is contradicted by the TAC itself.

**Civil RICO:**  In addition to failing to satisfy Rule 9(b) or to adequately plead scienter, Plaintiffs' RICO claims fail for several more reasons.  *First*, Plaintiffs fail to allege cognizable RICO injury.  Most of them fail to allege a *domestic* injury, because their claims relate either to (i) tangible property located in Mexico or (ii) investment or other economic losses suffered by non-U.S. entities.  (*See* Annex 1.)  The remainder fail to allege a *direct* injury, because they are investment managers that can only claim losses flowing from their clients' OSA-related losses. *Second*, Plaintiffs fail to allege cognizable RICO predicate acts, because the alleged enterprise's claimed misrepresentations and omissions implicate conduct actionable as securities fraud and thus cannot sustain a RICO claim.  *Third*, Plaintiffs fail to plead an actionable RICO enterprise, continuity, or the other elements of a RICO claim with the particularity demanded by Rule 9(b).

**Common Law Fraud-Based Claims:**  In addition to failing under Rule 9(b) and for lack of scienter, Plaintiffs' common law fraud-based claims fail for multiple additional reasons,

2

including failure to plead actionable misconduct or reliance.  (*See* Annex 2.)

**Nordic Trustee:**  Nordic Trustee claims no injury, but seeks to recover the damages allegedly suffered by the holders of OSA's 2013 Bonds.  Its claims should be dismissed for lack of standing and because the 2013 Bond Agreement does not preclude the 2013 Bondholders from pursuing claims against Citigroup in their individual capacities (as necessary to show reliance).

**Vicarious Liability:**  Plaintiffs' new claim that Citigroup may be vicariously liable for its subsidiaries' alleged misconduct should be dismissed for three reasons: (1) the alleged misconduct was not in furtherance of Citigroup's interests, as Citigroup neither benefitted from nor acquiesced in that conduct; (2) the claims are untimely and cannot relate back to Plaintiffs' original complaint; and (3) Plaintiffs are judicially estopped from now asserting that Citigroup can be *vicariously* liable for the conduct of Banamex in Mexico after securing a reversal of this Court's *forum non* dismissal based on representations to the Eleventh Circuit that they only sought to hold Citigroup *independently* liable for its own conduct in the United States.

### STATEMENT OF FACTS[1]

#### A.     The Pemex/OSA Cash Advance Program

As part of a receivables financing arrangement established in 2008, Banamex advanced funds to Pemex's vendors, including OSA, who paid interest on the advance and assigned their rights to payment from Pemex to Banamex.  (TAC ¶¶ 4, 50, 73.)[2]  The financing arrangement

---

[1] Citations to Ex. A – D refer to the May 10, 2022 Declaration of Adam S. Hakki.  The Court properly may consider at the motion to dismiss stage the full text of documents that Plaintiffs have referenced in the TAC and are central to their claims, as well as matters subject to judicial notice.  *See, e.g.*, *Fin. Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007); *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).

[2] Although Plaintiffs often refer to Banamex as "Citigroup," they do not and cannot allege that Citigroup was a party to the receivables financing arrangement.  *See infra* at 26-27.

3

required OSA to provide Banamex with: (i) a cash advance request form; (ii) a copy of a work estimate counter-signed by Pemex; and (iii) a copy of a Pemex work authorization.  (*Id.* ¶¶ 97, 138.)  A Banamex employee was required to verify with Pemex that it had authorized the work and that the advance request was consistent with relevant agreements.  (*Id.* ¶¶ 98, 139.)

**B.**     **Citigroup Learns of Falsified Documentation And OSA Collapses**

Citigroup conducted a review of Banamex's advances to OSA in February 2014 after a Mexican regulator barred OSA from contracting with Pemex based on an insurance issue.  (TAC ¶¶ 163-65.)  When Citigroup contacted Pemex to verify OSA's receivables, Pemex stated it had not signed many of the work estimates and work estimate authorizations OSA had provided to Banamex during the period September 2013 to February 2014.  (*Id.* ¶¶ 167-68.)  Citigroup immediately alerted Mexican regulators (*id.* ¶ 169), and on February 28, 2014, within approximately one week of being informed of Pemex's findings, publicly disclosed the OSA fraud and the cash advance program was terminated (*id.* ¶ 170).

On March 1, 2014, Mexican authorities seized OSA and its assets.  (*Id.* ¶ 177.)  Soon thereafter, the Banamex employee responsible for validating documents with Pemex was terminated, and, by May 2014, 11 additional Banamex employees were terminated.  (*Id.* ¶ 172.)  The CEO of OSA, Amando Yáñez, and three former Banamex (not Citigroup) employees were criminally charged or subject to arrest warrants (*id.* ¶¶ 177-79), and Mexican regulators fined Banamex (not Citigroup) for violating Mexican banking laws (*id.* ¶¶ 180-81).

The TAC does not allege any U.S. or foreign government or regulatory assertions of fraud or knowing misconduct *by Citigroup*.  Indeed, as the TAC acknowledges, the SEC fined Citigroup for "lacking a sufficient system of internal accounting controls concerning Banamex" ***to detect the OSA fraud*** and thereby avoid the nearly $500 million in losses that Citigroup, as Banamex's owner, consequently suffered.  (*Id.* ¶ 186.)  *See also In the Matter of Citigroup Inc.*,

2018 WL 3913653 ("SEC Order"), at *2-3; RJN Exs. 1, 2 at 218.

### C.  Plaintiffs And Their Purported Injuries

The 30 Plaintiffs fall into five categories: (1) nine are foreign shipping companies and their affiliates that sold or leased vessels or provided services to OSA in Mexico ("Shipping Plaintiffs") (TAC ¶¶ 20-25); (2) 13 are foreign investment funds that purchased bonds issued by OSA in 2008 and/or 2013 ("Bond Plaintiffs") (*id.* ¶¶ 28-29, 32, 36-38); (3) six are investment managers of funds that purchased OSA's 2008 and/or 2013 Bonds ("Investment Manager Plaintiffs") (*id.* ¶¶ 30-31, 36-38, 46); (4) Nordic Trustee AS is a Norwegian company that acted as the trustee for the 2013 Bondholders (*id.* ¶¶ 43-44); and (5) Coöperatieve Rabobank U.A. is a Dutch bank that loaned funds to OSA (*id.* ¶ 47).  The TAC alleges that misrepresentations and omissions by "Citigroup and OSA" led Plaintiffs to invest in or do business with OSA and to maintain their investments in or continue doing business with OSA.  (*Id.* ¶¶ 8, 147.)[3]

### ARGUMENT

A complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Mere "labels and conclusions" or a

---

[3] Other actions against Citigroup, its executives, and its and Banamex's auditors have all been dismissed.  In 2017, the Delaware Chancery Court dismissed a shareholder suit against Citigroup executives and directors in connection with the "losses Banamex suffered" due to the OSA fraud. *Okla. Firefighters Pension & Ret. Sys. v. Corbat*, 2017 WL 6452240, at *18 (Del. Ch. Dec. 18, 2017).  In 2018, the Southern District of New York dismissed a complaint by OSA's CEO against Citigroup and Banamex on *forum non conveniens* grounds, noting that the OSA fraud "is, at bottom, a controversy centered in Mexico." *Osuna v. Citigroup Inc.*, 2018 WL 6547205, at *11 (S.D.N.Y. Sept. 28, 2018), *aff'd*, 820 F. App'x 38 (2d Cir. 2020).  And in 2019 and 2020, the Delaware Chancery Court dismissed claims brought by Otto Candies (a Plaintiff here) against Citigroup's and Banamex's auditors for failing to detect the OSA fraud. *Otto Candies, LLC v. KPMG LLP*, 2019 WL 994050 (Del. Ch. Feb. 28, 2019); *Otto Candies, LLC v. KPMG, LLP*, 2020 WL 4917596 (Del. Ch. Aug. 21, 2020).

"formulaic recitation of the elements of a cause of action" will not suffice. *Twombly*, 550 U.S. at 555. Moreover, allegations that are "more conclusory than factual" need not be credited. *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012). Thus, "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002).

## I.      PLAINTIFFS' RICO CLAIMS SHOULD BE DISMISSED

### A.      Plaintiffs Fail To Allege A Cognizable RICO Injury

#### 1.      Most Plaintiffs Do Not Allege Domestic Injury

A civil RICO plaintiff "must allege and prove a *domestic* injury to its business or property." *RJR Nabisco, Inc. v. Eur. Cmty.*, 579 U.S. 325, 346 (2016). This "is an *independent* requirement for bringing a private RICO action," separate and apart from the requirement of a substantive RICO violation. *City of Almaty, Kazakhstan v. Ablyazov*, 226 F. Supp. 3d 272, 281 (S.D.N.Y. 2016). "The focus of the domestic injury inquiry is the geographic location of the injury to Plaintiffs, not the location of the Defendants' wrongful acts." *Worldspan Marine Inc. v. Comerica Bank*, 2020 WL 1238732, at *7 (S.D. Fla. Feb. 27, 2020). Thus, "even when the majority of RICO conduct took place in the United States, that does not mean a plaintiff has suffered a domestic injury." *Filippova v. Mogilvesky*, 2018 WL 7825449, at *5 (S.D. Fla. Aug. 29, 2018). The need to rigorously enforce the domestic injury requirement is "at its apex," *RJR Nabisco*, 579 U.S. at 348, when, as here, a foreign government has taken an interest in investigating and prosecuting the conduct on which the plaintiff's claim is based. *See Dandong Old North-East Agric. & Animal Husbandry Co., Ltd. v. Hu*, 2017 WL 3328239, at *14 (S.D.N.Y. Aug. 3, 2017); *City of Almaty*, 226 F. Supp. 3d at 287-88.

The geographic location of a plaintiff's claimed injury depends upon the type of injury alleged. *See, e.g.*, *Humphrey v. GlaxoSmithKline*, 905 F.3d 694, 702 (3d Cir. 2018). For

tangible property, *i.e.*, something that has a physical existence, the location of the injury generally is where the asset was physically located when it was harmed. *See, e.g.*, *Bascuñan v. Elsaca*, 874 F.3d 806, 820-21 (2d Cir. 2017); *Catano v. Capuano*, 2019 WL 3890343, at *4 (S.D. Fla. May 28, 2019). For intangible losses, such as lost profits or other harms to an ongoing business, the injury generally is sustained where the plaintiff resides or is located. *See, e.g.*, *Armada (Singapore) PTE Ltd. v. Amcol Int'l Corp.*, 885 F.3d 1090, 1094 (7th Cir. 2018); *GolTV, Inc. v. Fox Sports Latin Am., Ltd.*, 2018 WL 1393790, at *20 (S.D. Fla. Jan. 26, 2018).

None of the Shipping Plaintiffs has alleged a domestic injury. With respect to Otto Candies' and Gulf's alleged injuries based on the seizure or degradation of their shipping vessels (TAC ¶¶ 1817, 1823), the claimed losses were suffered in Mexico, where the vessels were physically located (*id.* ¶¶ 1180, 1377). *See, e.g.*, *Bascuñan*, 874 F.3d at 818-19; *Catano*, 2019 WL 3890343, at *4; *Gusevs v. AS Citadele Banka*, 2016 WL 9086931, at *7 (C.D. Cal. Sept. 8, 2016) (even though the plaintiff was a U.S. resident and certain of the defendants conducted business in the U.S., no domestic injury was alleged because the claimed loss was the foreclosure of properties located in Latvia); *Garcia v. Lion Mexico Consol., L.P.*, 2016 WL 6157436, at *3 (W.D. Tex. Oct. 21, 2016) (plaintiffs' claimed injuries based on alleged impairment of their interests in a Mexican real estate development project were impermissibly extraterritorial).

To the extent the Shipping Plaintiffs allege intangible losses — such as lost charter fees, a lost security deposit (at Rabobank in the Netherlands (TAC ¶ 1381)), or losses due to OSA's failure to make lease payments or to pay for other services rendered (*id.* ¶¶ 1817, 1819, 1821, 1823, 1825, 1827) — those injuries were suffered where their economic impact was felt, *i.e.*, in the foreign countries where those Plaintiffs are incorporated, maintain their principal place of

business, and operate (*id.* ¶¶ 21-25).[4]  *See, e.g.*, *Humphrey*, 905 F.3d at 707-08 (plaintiff felt the effects of lost contracts and engagements in China, where the plaintiff lived, had its principal place of business, and provided services); *Worldspan*, 2020 WL 1238732, at *7 (Canadian corporation felt injuries due to lost contracts and failure to pay for work performed in Canada); *Cevdet Aksüt Oğullari Koll. Sti v. Cavusoglu*, 245 F. Supp. 3d 650, 659 (D.N.J. 2017) ("Plaintiff cannot allege a domestic injury to its business because its business is entirely located in and operated out of Turkey."); *Dandong Old North-East Agric. & Animal Husbandry*, 2017 WL 3328239, at *11 ("[C]ourts have generally found that a domestic injury to a plaintiff's business accrues where the loss is suffered, which in the fraud context, is where the economic impact is felt, normally the plaintiff's residence.") (quotations and citations omitted).

The Bond Plaintiffs claim losses on their investments in OSA's 2008 and/or 2013 Bonds. (TAC ¶¶ 1799, 1801, 1803, 1805, 1807, 1809, 1811, 1813.)  They too thus allege intangible losses necessarily felt in the foreign countries where they are located.  (*Id.* ¶¶ 28-29, 32, 36-38.)[5] *See Absolute Activist Value Master Fund Ltd. v. Devine*, 233 F. Supp. 3d 1297, 1303, 1326 (M.D. Fla. 2017) (although Cayman Islands funds invested on behalf of U.S. investors, the funds' investment losses were economic injuries suffered where the funds were located — in the Cayman Islands); *see also Feng v. Walsh*, 2020 WL 5822420, at *11 (S.D. Fla. Sept. 14, 2020) (foreign nationals fraudulently induced to invest in a Florida development project could not

---

[4] Plaintiff Otto Candies' Mexican subsidiary, which is not a plaintiff, was the owner and lessor of the vessels leased to OSA.  (*Id.* ¶ 1180.)  Thus, not only were the claimed losses from OSA's failure to make those lease payments suffered in Mexico, but any claimed harm suffered by Candies as a result is purely derivative and cannot confer RICO standing.  *See, e.g.*, *Uthe Tech. Corp. v. Harry Allen & Aetrium, Inc.*, 2016 WL 4492580, at *3 (N.D. Cal. Aug. 26, 2016).

[5] Nordic Trustee purports to sue on behalf of the 2013 Bondholders.  (*Id.* ¶¶ 42, 1813.)  As explained *infra* at 12-15, its claims are also subject to dismissal for additional reasons.

8

allege a domestic injury); *Filippova*, 2018 WL 7825449, at \*5 (foreign national seeking recovery for monies allegedly transferred to the U.S. could not allege a domestic injury as the economic impact on plaintiff was not felt in the U.S.); *Lan Li v. Walsh*, 2017 WL 3130388, at \*10 (S.D. Fla. July 24, 2017) (foreign plaintiffs fraudulently induced to invest in Florida limited liability partnership felt their injuries in their home countries).

The intangible losses alleged by the three foreign Investment Manager Plaintiffs — Copernico, Moneda S.A., and Moneda International — (in addition to not constituting a direct injury necessary to confer RICO standing, *see infra* at 9-10) were likewise necessarily felt in the foreign countries were they are located.  (TAC ¶¶ 30, 37, 38.)

Rabobank is a Dutch financial institution.  (*Id.* ¶ 47.)  It claims to have been injured by OSA's failure to repay loans.  (*Id.* ¶ 1828.)  This claimed economic injury — on loans made by a Dutch bank to a Mexican borrower — is plainly extraterritorial.  *See Liquidation Comm'n of Banco Intercontinental, S.A. v. Renta*, 530 F.3d 1339, 1352 (11th Cir. 2008).

### 2.    The Remaining Plaintiffs Do Not Allege Direct Injury

None of the three U.S.-based Investment Manager Plaintiffs — HBK Investments L.P., ICE Canyon LLC, and Waypoint Asset Management LLC (TAC ¶¶ 31, 36, 46) — can claim harm based on a decline in the value of the OSA Bonds they purchased for their clients.  *See W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP*, 549 F.3d 100, 107-10 (2d Cir. 2008) (clients' investment losses did not constitute an injury-in-fact to their investment manager).

Further, a civil RICO plaintiff must plead a direct injury, *i.e.*, that the alleged violation was both a "but for" and a "proximate cause" of the claimed injury.  *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 457 (2006).  This requirement is not satisfied if the claimed violations were "aimed primarily at a third party," *Green Leaf Nursery v. E.I. DuPont De Nemours & Co.*, 341 F.3d 1292, 1307 (11th Cir. 2003) (internal quotations omitted), or if the alleged injury results

"merely from the misfortunes visited upon a third person," *Bivens Gardens Off. Bldg., Inc. v. Barnett Banks of Fla., Inc.*, 140 F.3d 898, 906 (11th Cir. 1998) (citation omitted).

Any damages claimed by these Plaintiffs based on lost management fees or reputational harm flowing from their clients' Bond losses are thus too indirect and speculative to support a RICO claim.  *See, e.g.*, *Holmes v. Sec. Inv. Protection Corp.*, 503 U.S. 258, 268-71 (1992) (RICO proximate cause not satisfied if claimed damages are purely contingent on the harm suffered by another); *Hecht v. Com. Clearing House, Inc.*, 897 F.2d 21, 24 (2d Cir. 1990) (plaintiff's injury "from customers' deciding to cancel subscriptions or to withdraw business upon discovering the frauds" was not proximately caused by alleged RICO violations); *Gratz v. Ruggiero*, 822 F. App'x 78, 82 (3d Cir. 2020) (loss of reputation and future job opportunities too intangible and speculative to constitute concrete financial loss necessary for RICO standing).

**B.       Plaintiffs Fail To Allege A Cognizable RICO Predicate Act**

Section 107 of the Private Securities Litigation Reform Act ("PSLRA") amended RICO to provide that "*no person* may rely upon *any conduct* that would have been actionable as fraud in the purchase or sale of securities to establish" a RICO violation.  18 U.S.C. § 1964(c) (emphasis added); *see, e.g.*, *Adams v. Rothstein*, 2012 WL 1605098, at *3 (S.D. Fla. May 8, 2012).  Courts have applied this bar "broadly, regardless of whether the plaintiff explicitly relied upon securities fraud as a predicate act or even had standing to pursue a securities fraud claim." *Licht v. Watson*, 567 F. App'x 689, 693 (11th Cir. 2014).  Thus, a putative RICO plaintiff cannot, as Plaintiffs do here, plead wire fraud predicate acts "'if such offenses are based on conduct that would have been actionable as securities fraud.'"  *Adams*, 2012 WL 1605098, at *3 (quoting H.R. Conf. Rep. no. 104–396 at 47 (1995)); *see, e.g.*, *Licht*, 567 F. App'x at 693.

Plaintiffs contend that the alleged RICO Enterprise members associated with each other for the purpose of fraudulently inducing Plaintiffs to invest and maintain their investments in

10

OSA (TAC ¶ 1721), and that the 2008 and 2013 Bonds were issued "[i]n connection with and in furtherance of the fraud" (*id.* ¶ 256).  More specifically, Plaintiffs allege that the claimed predicate acts of wire fraud were in furtherance of a common purpose to fraudulently induce their investments in OSA (*id.* ¶ 1789), and that the alleged wire fraud predicate acts induced their purchase of OSA's 2008 and/or 2013 Bonds (*id.* ¶¶ 1737, 1741, 1770, 1772).  Further, each of the Bondholder and Investment Manager Plaintiffs contends that it was misled by the alleged predicate acts of wire fraud to purchase and retain OSA's Bonds.  (*Id.* ¶¶ 1799-1816.)

Section 107 is broadly written and concerned with the nature of the conduct alleged to constitute a predicate act, regardless whether the plaintiff would be able to bring a securities fraud claim against the defendant.  *See, e.g.*, *MLMSK Inv. Co. v. JP Morgan Chase & Co.*, 651 F.3d 268, 277-80 (2d Cir. 2011) (§ 107 applied even though plaintiff alleged aiding and abetting, which cannot provide a private right of action under federal law); *Woods v. Michael*, 2021 WL 1055816, at *3 (S.D. Fla. Feb. 10, 2021) ("Courts have interpreted the scope of § 1964(c)'s so-called 'securities fraud exception' broadly to apply even where a plaintiff does not expressly plead securities fraud as the predicate act, where a plaintiff could not have even brought a securities fraud claim against the particular defendant, and where a plaintiff pleads securities fraud violations but fails to state a claim for relief."), *aff'd*, 2021 WL 3355459 (11th Cir. Aug. 3, 2021); *Loftin v. KPMG LLP*, 2003 WL 22225621, at *6 (S.D. Fla. Sept. 10, 2003) ("That KPMG was not the issuer of the securities … does not preclude application of the PSLRA bar.").

Because Plaintiffs' wire fraud allegations "implicate" conduct actionable as securities fraud — material misrepresentations and omissions that fraudulently induced their OSA Bond purchases — they cannot serve as RICO predicates.  *Howard v. Am. Online Inc.*, 208 F.3d 741, 749 (9th Cir. 2000); *see, e.g.*, *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1249 (11th Cir.

2016) (mail and wire fraud relating to securities investments could not serve as predicate acts); *Bald Eagle Area Sch. Dist. v. Keystone Fin., Inc.*, 189 F.3d 321, 330 (3d Cir. 1999) (misstatements allegedly inducing plaintiffs' investments could not support RICO claim even if conduct also constituted wire fraud).  It makes no difference that Plaintiffs also assert "holder" claims.  Although such claims are not viable under the federal securities laws, "[a] plaintiff cannot circumvent the PSLRA's exclusion of securities fraud as a RICO predicate act through artful pleading." *Gatz v. Ponsoldt*, 297 F. Supp. 2d 719, 731 (D. Del. 2003) (while plaintiff's purchaser or seller status would be relevant to standing for a federal securities claim, the PSLRA exclusion applies regardless of such standing if the complained-of "use of mails and wires in furtherance of a fraudulent scheme" would constitute securities fraud "when done in connection with the purchase or sale of securities"); *see Thomas H. Lee Equity Fund V, L.P. v. Mayer Brown, Rowe & Maw LLP*, 612 F. Supp. 2d 267, 281-82 (S.D.N.Y. 2009) ("the statute simply does not require that, for a RICO claim to be barred, the plaintiff who sues under RICO must be able to sue under securities laws, or that the conduct 'actionable as securities fraud' on which the plaintiff relies to establish the RICO violation must be that of the defendant").

Indeed, the PSLRA's bar applies here with respect to *all* Plaintiffs' RICO claims, including those of the Shipping Plaintiffs and Rabobank, because the alleged predicate acts that are actionable as securities fraud are alleged to have been committed in furtherance of the alleged RICO Enterprise's common purpose of defrauding *all* Plaintiffs.  (TAC ¶¶ 1716, 1721-22, 1736-38.)  *See Bald Eagle Area Sch. Dist.*, 189 F.3d at 329-30 (rejecting argument that § 107 did not apply because only some of the predicate acts were actionable as securities fraud, explaining that all the challenged conduct was "an integral part" of the fraudulent scheme); *Adams*, 2012 WL 1605098, at *3-4 (dismissing complaint because the predicate acts alleged to

12

have been "interrelated" were all "sufficiently connected" to conduct subject to the PSLRA bar).

## II.    NORDIC TRUSTEE'S CLAIMS SHOULD BE DISMISSED

Nordic Trustee does not claim to have suffered any injury, but purports to seek recovery of the damages allegedly suffered by the 2013 Bondholders.  (TAC ¶¶ 44, 1037.)  Because Nordic Trustee admits it has suffered no injury-in-fact — "[t]he irreducible constitutional minimum of standing," *PDVSA U.S. Litig. Trust v. Lukoil Pan Ams. LLC*, 372 F. Supp. 3d 1353, 1358 (S.D. Fla. 2019), *aff'd*, 991 F.3d 1187 (11th Cir. 2021) (citations and quotations omitted) — its claims should be dismissed.  *See W.R. Huff*, 549 F.3d at 107-10; *Cent. Bank v. City of Fresno*, 848 F.2d 1242 (9th Cir. 1988) (trustee lacked standing to assert securities, RICO, and common law fraud claims asserting that bondholders were fraudulently induced to purchase bonds); *Delta Coal Program v. Libman*, 554 F. Supp. 684, 687 (N.D. Ga. 1982) (limited partnership that did not itself purchase securities lacked standing to pursue securities and RICO claims on behalf of its members), *aff'd*, 743 F.2d 852 (11th Cir. 1984).

Plaintiffs would excuse Nordic Trustee's lack of standing on the basis that "[t]he 2013 Bondholders cannot bring claims on behalf of themselves."  (TAC ¶ 27.)  This is so, according to Plaintiffs, because the 2013 Bondholders "*are precluded from directly asserting claims pursuant to a 'no action' clause in the Bond Agreement*."  (*Id.* ¶¶ 349, 1036).  They are wrong.

The Bond Agreement only precludes the 2013 Bondholders from directly asserting claims *against the issuer of the Bonds* — OSA.  It in no way limits the 2013 Bondholders' individual ability to assert the claims advanced in this case against Citigroup:

> [T]he Bondholders may not, based on this Bond Agreement, act directly *towards the Issuer* and may not themselves institute legal proceedings *against the Issuer*, however not restricting the Bondholders to exercise their individual rights derived from this Bond Agreement[.]

(Ex. A § 18.1(d)(ii) (emphasis added).)  As the Bond Agreement does not prevent 2013

13

Bondholders from themselves asserting the claims made here *against Citigroup*, there is no justification for Nordic Trustee to assert those claims on their behalf. *See, e.g.*, *Cent. Bank*, 1988 WL 60158, at \*2; *Kusner v. First Pa. Corp.*, 531 F.2d 1234, 1239 (3d Cir. 1976); *Allstate Life Ins. Co. v. Robert W. Baird & Co.*, 2011 WL 5024269, at \*2-3 (D. Ariz. Oct. 21, 2011).

Moreover, a "no action" clause only affects bondholders' "'rights to bring claims that are *common to all bondholders*.'" *Akanthos Cap. Mgmt., LLC v. CompuCredit Holdings Corp.*, 677 F.3d 1286, 1292 (11th Cir. 2012) (quoting *Feldbaum v. McCrory Corp.*, 1992 WL 119095, at \*7 (Del. Ch. June 2, 1992)) (emphasis added). "No action" clauses permit the trustee to prosecute claims "seek[ing] to enforce rights shared ratably by all bondholders," in other words, where the claims "arise from transactions by the issuer of their bonds and assert injuries arising from [their] bondholder status." *Feldbaum v. McCrory Corp.*, 1992 WL 119095, at \*7-8 (Del. Ch. June 2, 1992). With respect to such claims, bondholders are injured derivatively, and any remedy will be shared *pari passu* with all bondholders. *Akanthos*, 677 F.3d at 1293; *see Murray v. U.S. Bank Trust Nat'l Ass'n*, 365 F.3d 1284, 1289 n.9 (11th Cir. 2004) ("no action" clauses "ensure that any litigation will inure for the equal and ratable benefit of all bondholders").

Nordic Trustee, however, does *not* seek redress for harms allegedly suffered by all 2013 Bondholders on a *pro rata* basis or for which any recovery should be shared ratably among them. Among other things, whether a Bondholder was fraudulently induced to purchase or hold OSA's 2013 Bonds would depend on individual questions of reliance, and any damages would vary by Bondholder depending on when and the price at which they purchased or declined to sell.[6]

---

[6] The illogic and impropriety of Plaintiffs' position is highlighted when it comes to the necessary element of reliance. *See Lance v. Wade*, 457 So. 2d 1008, 1011 (Fla. 1984) ("What one purchaser may rely upon in entering into a contract may not be material to another purchaser."). The TAC pleads the 2013 Bondholders' reliance entirely "on information and belief" (TAC

14

Indeed, any Bondholder fraudulently induced to purchase OSA's 2013 Bonds could not have "effectively consented to the transaction, including the no-action clause itself," meaning "she cannot be bound by it." *Feldbaum*, 1992 WL 119095, at *8. And claims for damages "from the bondholders' being wrongfully induced *to hold* their bonds … are not necessarily held ratably by all bondholders (some might not have been fooled for example) … [and] fall[] outside the reach of [] no-action clauses." *Id.* at *9; *see Allstate*, 2011 WL 5024269, at *3 (plaintiffs' fraud and negligent misrepresentation claims arose out of their purchase of the bonds and not out of their status as bondholders, meaning those claims were not exclusively assigned to the trustee); *Cruden v. Bank of NY*, 1990 WL 131350, at *12 (S.D.N.Y. Sept. 4, 1990) (debenture holders' individual RICO and fraud claims not barred by indenture's "no action" clause), *aff'd in part and rev'd in part on other grounds*, 957 F.2d 961 (2d Cir. 1992).

## III.   PLAINTIFFS FAIL TO SATISFY THE PLEADING REQUIREMENTS OF RULE 9(B) APPLICABLE TO THEIR RICO AND COMMON LAW FRAUD CLAIMS

Plaintiffs' RICO and state-law fraud claims are subject to the heightened pleading and particularity requirements of Rule 9(b). *See, e.g.*, *Hosch v. Wachovia Bank, N.A.*, 815 F. App'x 352, 354 (11th Cir. 2020); *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1064-68 (11th Cir. 2007). Rule 9(b) mandates that the complaint must specifically identify (1) "the precise statements" alleged to be fraudulent, (2) the time and place and person responsible for the statements, (3) the content of such statements and the "manner in which the statements misled the Plaintiffs," and (4) what the defendant gained by the alleged fraud. *Ambrosia Coal & Constr. Co. v. Pages Morales*, 482 F.3d 1309, 1316-17 (11th Cir. 2007).

---

¶¶ 1081 n.47, 1082 n.48, 1087 n.49, 1088 n.50), which is manifestly insufficient. *See infra* at 29-30. To the extent HBK and Moneda seek to assert claims on the 2013 Bonds on their own behalf (*see* TAC ¶¶ 35, 42), their claims are defective for the reasons discussed *infra* at 15-22.

Plaintiffs' fraud-based claims fail because they do not adequately plead one or more of the elements necessary to state such a claim — either that Citigroup made any statement to them concerning a material fact; or that any such statement was false; or that any such statement was relied on to their detriment.  *See, e.g.*, *Muhammad v. Citimortgage, Inc.*, 598 F. App'x 636, 639 (11th Cir. 2015); *Infante v. Bank of Am. Corp.*, 680 F. Supp. 2d 1298, 1303 (S.D. Fla. 2009).

### A.        The TAC Fails To Allege Actionable Misconduct By Citigroup

The TAC identifies only a handful of alleged misstatements supposedly made *by Citigroup*.  The overwhelming majority of the alleged misstatements were made by OSA or its employees and agents and thus cannot serve as the basis for a fraud claim *against Citigroup*. *See, e.g.*, *W. Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc.*, 287 F. App'x 81, 89-90 (11th Cir. 2008); *Omnipol, A.S. v. Worrell*, 421 F. Supp. 3d 1321, 1345 (M.D. Fla. 2019). Nor may Citigroup be liable on an omission theory for an alleged failure to correct misstatements made by others or to affirmatively disclose information about OSA.  Plaintiffs allege no relationship with Citigroup at all, let alone the sort of fiduciary or special relationship of trust that could give rise to a disclosure duty.  *See, e.g.*, *Chiarella v. United States*, 445 U.S. 222, 228-29 (1980); *State v. Mark Marks, P.A.*, 654 So. 2d 1184, 1189 (Fla. 4th DCA 1995).  In any event, an omission can be fraudulent only if the defendant knows of the omitted material fact, *Defer LP v. Raymond James Fin., Inc.*, 2010 WL 3452387, at *7 (S.D.N.Y. Sept. 2, 2010), and the TAC does not plausibly plead that Citigroup was aware of the OSA fraud, *see infra* at 25-31.

Plaintiffs suggest Citigroup can be responsible for alleged misstatements in materials that supposedly incorporated (unspecified) misleading information from "Citigroup" (or that Citigroup "knew" about and failed to correct).  The TAC contains only conclusory allegations that these materials were attributable to Citigroup or that Plaintiffs, at the time, understood them to be representations by Citigroup.  For example: (1) the 2008 Bond Offering Memorandum was

16

prepared by Morgan Stanley as the manager for that Bond Issuance and Plaintiffs merely allege, "on information and belief," that "Citigroup" provided false and misleading information incorporated into the document (TAC ¶ 274); (2) the "Pareto Materials" and 2013 Bond Offering Memorandum were prepared by Pareto Securities as the manager for that Bond Issuance and were allegedly based on information from "Citigroup and OSA" (*id.* ¶¶ 311-12, 320, 325, 330, 334, 338, 344), although the very page from the Pareto Materials highlighted in the TAC explains "Source: Company and Pareto Securities AS" (*id.* fig. 6 at p. 79); and (3) the December 2013 and January 2014 Presentations were allegedly derived from materials prepared months earlier by personnel — not alleged to have been involved in the OSA fraud — from Citigroup's Citi Markets subsidiary (*see id.* ¶¶ 222-28) but were delivered by OSA's Head of Investor Relations, Yáñez, and OSA's financial consultant *after* they had removed financial slides from the older materials and inserted different ones (*id.* ¶¶ 232-33; *see id.* ¶ 245) and the very pages highlighted in the TAC explain "Source: Company management" (*id.* fig. 4 at p. 58) and "projections based on management expectations" (*id.* fig. 5 at p. 61).

In assessing whether someone other than the actual speaker can be responsible for a misrepresentation, "[t]he critical issue is the investor's understanding of who made the misleading statement." *BCJJ, LLC v. Lefevre*, 2011 WL 1296682, at \*6 (M.D. Fla. Mar. 31, 2011). To avoid undermining the element of reliance, direct, primary liability for fraud can exist only if the misrepresentation is attributable to the specific actor "in advance of the investment decision." *See Bruhl v. Conroy*, 2007 WL 983228, at \*2 (S.D. Fla. Mar. 27, 2007); *see also Koch v. Royal Wine Merchs., Ltd.*, 907 F. Supp. 2d 1332, 1345 (S.D. Fla. 2012) ("It is not enough that the maker merely knows of the ever-present possibility of repetition to anyone and the possibility of action in reliance on it."). Any action taken by Plaintiffs based on the Offering

17

Memoranda, the Pareto Materials, or the December 2013 or January 2014 Presentations were not, as a matter of law, taken in reliance on anything said to them by Citigroup or that they could have reasonably understood as a representation by Citigroup.  None of those materials can thus support a fraud claim against Citigroup.  *See, e.g.*, *Affco Invs. 2001, L.L.C. v. Proskauer Rose, L.L.P.*, 625 F.3d 185, 195 (5th Cir. 2010); *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1205-07 (11th Cir. 2001); *Thomas H. Lee Equity Fund V, L.P.*, 612 F. Supp. 2d at 276.

Several Plaintiffs — Adar (*see* TAC ¶ 403), Copernico (*see id.* ¶ 558), HBK (*see id.* ¶ 762), Nordic Trustee (*see id.* ¶ 1095), Waypoint (*see id.* ¶ 1162), Coastline (*see id.* ¶ 1367), De Hoop (*see id.* ¶ 1467), Halani (*see id.* ¶ 1565), and Madisa (*see id.* ¶ 1607) — do not identify a single substantive communication between themselves and Citigroup (or, for that matter, Banamex or Citibank).  For that reason alone, their claims should be dismissed.  *See, e.g.*, *Ziemba*, 256 F.3d at 1207 ("no statements attributable to GY&S were ever made to Plaintiffs; therefore, Plaintiffs could not have relied on GY&S in making their investment decisions").[7]

Plaintiffs Ashmore, HBK (on behalf of GPF), ICE, and Moneda contend that Citigroup made misstatements to their counsel during a conference call on February 21, 2014.  (TAC

---

[7] Halani irrelevantly states that OSA laborers and mechanics wore coveralls with Banamex's logo (*see* TAC ¶¶ 210, 1519) and alleges that at one meeting with OSA's Yáñez in May 2013 "Citigroup employees" were also present but does not identify them or even allege that they said anything (*id.* ¶¶ 1544-46).  De Hoop alleges that it was approached by "Citigroup and OSA" "[o]n or around September 2013" regarding the 2013 Bond Issuance and was told the 2013 Bonds "offered a new means of financing to OSA."  (*Id.* ¶ 1449.)  But the TAC does not identify who from Citigroup supposedly approached De Hoop, who made the referenced statement, or how the statement was false.  Madisa alleges that it entered into a "CitiConnect" agreement with Banamex to receive payments directly from Banamex rather than OSA for its work on Pemex contracts (*id.* ¶ 1601), but the referenced communications between Madisa and Banamex respecting that agreement merely concerned its mechanics (*see id.* ¶ 1602).

¶ 488.)[8]  But these Plaintiffs merely contend in purely conclusory fashion that they relied on these alleged misstatements in retaining their OSA Bonds (for one week before the fraud was disclosed in a public filing by Citigroup).  (*See* TAC ¶¶ 493, 668, 875, 1011.)  This fails to plead actionable reliance with the specificity demanded by Florida law.  *See infra* at 21-23.

Plaintiffs ICE (TAC ¶¶ 796-97, 809-10, 815) and Moneda (*id.* ¶¶ 937-38) also reference the transmission of OSA financial statements to them by Citibank — incidental to its role as trustee for the 2008 Bonds.  But Plaintiffs do not allege that the revenue or income reported in OSA's financial statements was misstated, or that those Citibank employees were involved in or aware of the OSA fraud or doing anything other than performing a ministerial function.  And given that none of them is alleged to have said anything about the source of OSA's revenues or purporting to explain OSA's financial statements, their mere transmission of OSA's financial statements cannot be actionable.  *See, e.g.*, *In re Henry Schein, Inc. Sec. Litig.*, 2019 WL 8638851, at *16 (E.D.N.Y. Sept. 27, 2019); *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 501 F. Supp. 2d 452, 469-71, 493 (S.D.N.Y. 2006); *cf. Sapssov v. Health Mgmt. Assocs., Inc.*, 22 F. Supp. 3d 1210, 1227 (M.D. Fla. 2014).  The only statements allegedly made by these Citibank employees concerned administrative matters related to whether OSA had made coupon payments (TAC ¶¶ 809-10, 815) or when OSA's financial statements needed to be issued (*id.* ¶ 938), none of which is or could be alleged to have been false.

Plaintiffs Otto Candies and Rabobank similarly reference discussions concerning "routine banking transactions" that are insufficient to make out a fraud claim.  *See Republic of Panama v.*

---

[8] GPF does not allege any other communication with Citigroup.  (*See id.* ¶¶ 34, 682.)  And the only other communications with Citigroup alleged by Ashmore are pleaded "on information and belief" (*id.* ¶ 456), which wholly fails to satisfy Rule 9(b).  *See, e.g.*, *Great Fla. Bank v. Countrywide Home Loans, Inc.*, 2011 WL 382588, at *4 (S.D. Fla. Feb. 3, 2011).

*BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 950 (11th Cir. 1997). Candies refers to discussions involving Citigroup in 2011 and 2012 concerning the restructuring of OSA's debt to Candies (*see, e.g.*, TAC ¶¶ 1211-12, 1245-46), with respect to which it is alleged that representations were made to Candies "through the Citigroup/Banamex employees ***and/or*** OSA" or by an unnamed "Citigroup ICG or Banamex representative" or unnamed "Banamex representatives" (*id.* ¶¶ 1212, 1246) (emphasis added). Such "blending" of identities and failure to specify the maker of the alleged misstatement does not satisfy Rule 9(b). *See infra* at 25-26.[9]

Rabobank references discussions that allegedly included Citigroup personnel related to the management of the Rabobank Trust — at Banamex — which enabled Rabobank to receive payments for services provided by OSA to Pemex using Rabobank-financed vessels. (TAC ¶ 1619.) The statements by Citigroup, however, merely concerned matters related to the administration of the Trust (*id.* ¶¶ 1675, 1688, 1694) and are not alleged to have been false.[10]

Finally, Plaintiff Gulf alleges only one communication, in April 2011, with "Citigroup." (TAC ¶¶ 1489-92.) The TAC, however, pleads no facts suggesting the OSA fraud pre-dated

---

[9] Candies also references a discussion with Citigroup personnel on February 19, 2014 during which Candies was asked to withdraw its demand for repayment of OSA's outstanding debt. (TAC ¶ 1283.) Candies admits, however, that it did *not* withdraw its demand. (*Id.* ¶ 1286.) And the suggestion that it relied on Citigroup's failure to disclose during that discussion what it allegedly "knew" about the OSA fraud (*id.* ¶ 1290) fails not only because Citigroup did not owe Candies any duty of disclosure, *see supra* at 16, but also because Candies' allegations that it relied to its detriment on the alleged omission are entirely conclusory, *see infra* at 23.

[10] Rabobank also alleges, "[o]n information and belief," that unnamed "Banamex representatives" told Rabobank that Banamex was responsible for verifying OSA's receivables (TAC ¶ 1669); and that, after subsequent meetings including "on information and belief" unnamed Citigroup personnel (*id.* ¶ 1680), *Rabobank* prepared a presentation outlining the cash flow process for the Trust that "incorporated comments made by [unnamed personnel from] Banamex … and on information and belief, under the direction of [unnamed personnel from] Citigroup's ICG" (*id.* ¶ 1681). These allegations fail to satisfy the most basic demands of Rule 9(b) to specify the "who, what, when, and how" of the alleged fraud. *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1262 (11th Cir. 2006).

20

2013, much less that Citigroup was aware of any such fraud, or that the alleged scienter of Granja (a Banamex employee, *see id.* ¶ 90) may be imputed to Citigroup.  *See infra* 24-31.  In any event, the alleged misrepresentations were made to Gulf's predecessor (TAC ¶ 1488), which means Gulf could not have relied on them in deciding to lease Titan 2 to OSA (because Gulf did not make that decision).  And the TAC is devoid of any allegation that the original lessor relied on the claimed misrepresentations in deciding how to respond to OSA's failure to make lease payments two years later in April 2013 (*id.* ¶ 1513), or that they were ever relayed to or relied on by Gulf in continuing the lease when it took it over in October 2013.  (*See id.* ¶¶ 1476, 1496.)

### B.      The TAC Fails To Allege Reliance

Even had Citigroup "engaged in a scheme to defraud and made misrepresentations to further that scheme, the plaintiffs would still have to show, on an individual basis, that they relied on the misrepresentations [and] suffered injury as a result." *Andrews v. AT&T*, 95 F.3d 1014, 1025 (11th Cir. 1996); *see Ravin v. Hockman*, 2007 WL 29248, at *4 (S.D. Fla. Jan. 3, 2007).  Because "allegations of reliance … inherently rest on information within a plaintiff's possession," "[p]articular allegations of reliance … lie at the core of Rule 9(b)'s mandate." *Xia Bi v. McAuliffe*, 927 F.3d 177, 185 (4th Cir. 2019).  Thus, "[a] bare allegation of reliance on alleged misrepresentations, bereft of any additional detail, will not suffice." *Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1128 (11th Cir. 2019); *see Green Leaf Nursery*, 341 F.3d at 1304 n.12.  This is equally so for alleged omissions. *See, e.g.*, *Humana, Inc. v. Castillo*, 728 So. 2d 261, 265 (Fla. 2d DCA 1999).  In many ways, Plaintiffs fail to adequately plead reliance.

At the most basic level, "[a] plaintiff unaware of the relevant statement … [cannot] establish reliance" on it. *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 810 (2011); *see Infante*, 680 F. Supp. 2d 1298 at 1304 ("logic dictates that where one is not aware of a misrepresentation, he cannot possibly rely on it").  And a plaintiff who cannot establish reliance

on the defendant's alleged misrepresentations cannot satisfy RICO's proximate cause requirement, *i.e.*, that the claimed injury was directly caused by the substantive RICO violation. *See, e.g.*, *Meridian Tr. Co. v. Batista*, 2018 WL 4693533, at \*8 (S.D. Fla. Sept. 26, 2018); *Super Vision Int'l, Inc. v. Mega Int'l Com. Bank Co., Ltd.*, 534 F. Supp. 2d 1326, 1339 (S.D. Fla. 2008).  Standing alone, this dooms most Plaintiffs' claims.

As discussed, many Plaintiffs do not allege any communication with Citigroup; instead, they allege that they bought and/or held OSA Bonds or otherwise did business with OSA in reliance, for example, on the Bond Offering Memoranda or Pareto Materials.  This cannot state a claim against Citigroup, *see supra* at 15-20, but even if it could, Plaintiffs fail to plead reliance because they merely allege that such materials were "provided" to or "received" by them.[11]

Absent from the TAC's 540 pages is any allegation that anyone *read* those materials. Plaintiffs' failure to plead such basic, necessary information — after four attempts, and concerning matters within their personal knowledge — compels dismissal.  *See Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1292 (11th Cir. 2010) (affirming dismissal of RICO claims predicated on wire fraud because "Plaintiffs ma[d]e no allegations as to who, if anyone, read the advertisements and was misled by them"); *Pulte Home Corp. v. Osmose Wood Preserving, Inc.*, 60 F.3d 734, 743-44 (11th Cir. 1995) (plaintiff could not establish reliance because its employees had not read the materials containing the allegedly false statements).[12]

---

[11] *See, e.g.*, TAC ¶¶ 389, 395 (Adar); *id.* ¶¶ 471-72 (Ashmore); *id.* ¶ 1359 (Coastline); *id.* ¶ 549 (Copernico); *id.* ¶ 1450 (De Hoop); *id.* ¶ 622 (GPF); *id.* ¶ 1556 (Halani); *id.* ¶¶ 706, 732, 748 (HBK); *id.* ¶ 828 (ICE); *id.* ¶ 954 (Moneda); *id.* ¶¶ 1073 & n.46, 1088 (Nordic Trustee).

[12] Copernico and ICE allege that the 2008 Offering Memorandum was "reviewed," but this still-tepid reliance pleading fails because neither identifies *who* allegedly undertook the claimed "review."  (*See* TAC ¶¶ 539, 787.)  And Waypoint, who at least seems to identify the reviewer, fails to explain what the claimed review entailed.  (*See id.* ¶ 1136.)

Plaintiffs' claimed reliance is defective in other respects as well.  First, their uniform, formulaic allegations are wholly conclusory.  They simply allege that had they known the truth about the OSA fraud, they would not have purchased and/or retained their OSA Bonds or done business with OSA.[13]  But such generalizations "provide[] no information about which of the specifically alleged misrepresentations and omissions, if any, induced them to purchase … or even whether they read the materials" in question.  *Fernau v. Enchante Beauty Prods., Inc.*, 847 F. App'x 612, 622 (11th Cir. 2021) (affirming dismissal of fraud claims, explaining that "a statement that the plaintiffs would not have invested if the defendants had provided all available information says nothing about whether they were persuaded to invest by—or even aware of— the specific alleged misrepresentations"); *see Beck v. Prupis*, 162 F.3d 1090, 1097 (11th Cir. 1998) (fraud claim deficient because no showing that plaintiff actually saw, let alone relied on, any false financial statements or that one of the substantial factors in making financial commitments was his belief that the company was run legally), *aff'd*, 529 U.S. 494 (2000).

Second, the Bond Plaintiffs' allegations are insufficient to state a "holding" claim — *i.e.*, that Citigroup's alleged misstatements induced them to retain their OSA Bonds.  To state such a claim, Florida law "impose[s] a heightened pleading standard on the element of reliance" that requires the plaintiff to *specifically* allege — whether the claim is based on supposed misrepresentations or omissions — not only that he would have sold if the material information had been disclosed, but also "the amount of shares he would have sold, and when he would have sold them in relation to the time the material information should have been disclosed."  *Bruhl*,

---

[13] *See* TAC ¶ 387 (Adar); *id.* ¶¶ 422, 513 (Ashmore); *id.* ¶¶ 530, 567 (Copernico); *id.* ¶¶ 584, 688 (GPF); *id.* ¶¶ 704, 769 (HBK); *id.* ¶¶ 785, 896 (ICE); *id.* ¶¶ 912, 1032 (Moneda); *id.* ¶¶ 1060, 1105, 1110 (Nordic Trustee); *id.* ¶¶ 1124, 1168 (Waypoint); *id.* ¶¶ 1195, 1301 (Otto Candies); *id.* ¶¶ 1336, 1373 (Coastline); *id.* ¶¶ 1404, 1473 (De Hoop); *id.* ¶¶ 1486, 1509 (Gulf); *id.* ¶¶ 1529, 1571 (Halani); *id.* ¶¶ 1585, 1613 (Madisa); *id.* ¶¶ 1633, 1707 (Rabobank).

2007 WL 983228, at *8-9; *see Rogers v. Cisco Sys., Inc.*, 268 F. Supp. 2d 1305, 1313-14 & n.18 (N.D. Fla. 2003) ("heightened" reliance pleading standard for holder claims requires plaintiff to "allege actions, as distinguished from unspoken and unrecorded thoughts and decisions" in order to separate "plaintiffs who actually and justifiably relied upon the misrepresentations from the general investing public, who, though they did not so rely, suffered the loss due to the decline in share value"); *see also Otto Candies, LLC*, 2019 WL 994050, at *23 n.211 (even assuming Delaware law recognized holder claims, "Plaintiffs have failed to sufficiently plead reliance").

## IV.     THE TAC FAILS TO ALLEGE SCIENTER

Scienter is a required element of Plaintiffs' RICO and fraud-based claims.  *See, e.g.*, *BCCI Holdings*, 119 F.3d at 949; *Muhammad*, 598 F. App'x at 639.  Rule 9(b) "requires more than conclusory allegations that certain statements were fraudulent; it requires that a complaint plead *facts* giving rise to an inference of fraud."  *W. Coast Roofing & Waterproofing, Inc.*, 287 F. App'x at 86 (emphasis added); *see, e.g.*, *U.S. ex rel. Clausen v. Lab'y Corp. of Am., Inc.*, 290 F.3d 1301, 1313 (11th Cir. 2002) (plaintiff must "offer[] more than mere conjecture"); *BCCI Holdings*, 119 F.3d at 949 (because RICO requires a "strong inference" of fraudulent intent, scienter allegations "cannot be merely conclusory and unsupported by factual allegations").

Investigations by Mexican and U.S. authorities revealed that OSA submitted falsified work estimates and authorizations to Banamex from September 2013 to February 2014.  (TAC ¶¶ 140, 166.)  But to plead the expansive claims alleged against Citigroup, Plaintiffs must postulate a scheme that originated in 2008 and in which Citigroup was a knowing and active participant throughout.  Plaintiffs' efforts to do so cannot withstand analysis under Rule 9(b). The only plausible inference that can be drawn from the allegations in the TAC and the other materials the Court may consider in assessing its sufficiency is that Citigroup did not learn about the OSA fraud until February 2014, as Plaintiffs themselves conceded at the outset of this action.

As a threshold matter, no fact pleaded in the TAC supports an inference that the OSA fraud began in 2008.  Plaintiffs invariably and repeatedly make this crucial timing allegation "[o]n information and belief" (*see* TAC ¶¶ 122-23, 125, 127-29, 166), which is plainly inadequate under Rule 9(b).  *See, e.g.*, *Clausen*, 290 F.3d at 1310.  The only attempt to offer factual support for this allegation is to reference the SEC Order and OSA's financial statements. (*See* TAC ¶¶ 109 n.14, 122 n.8.)  But those documents merely note that the financing arrangement was established in 2008; nothing in them suggests that OSA's fraud began at that time.  *See also Otto Candies, LLC*, 2020 WL 4917596, at *1 n.7 (Plaintiffs' "allegations of fraud during the pre-August 2013 period appear tentative, speculative, and conclusory").

Moreover, none of Plaintiffs' various efforts to plead Citigroup's knowledge of and participation in the OSA fraud — at any point in time — is valid.  As mentioned, the TAC does not allege any government or regulatory assertions of fraud or knowing misconduct *by Citigroup*. Indeed, the SEC fined Citigroup for lacking sufficient internal controls **to detect** the OSA fraud, *SEC Order*, 2018 WL 3913653, at *3-4, which is the exact opposite of Citigroup being aware of the fraud.  Plaintiffs' initial complaint thus acknowledged that Citigroup only learned of the falsified Pemex documents "for the first time" in February 2014.  (DE 1, ¶ 98.)  And although Plaintiffs *now* speculate that this was something Citigroup "already knew" (TAC ¶ 168), the Court need not accept this changed allegation as true.  *See Colliton v. Cravath, Swaine & Moore LLP*, 2008 WL 4386764, at *6 (S.D.N.Y. Sept. 24, 2008), *aff'd*, 356 F. App'x 535 (2d Cir. 2009); *Wallace v. N.Y.C. Dep't of Corr.*, 1996 WL 586797, at *2 (E.D.N.Y. Oct. 9, 1996). Regardless, Plaintiffs fail to plead any particularized facts supporting their current speculation.

*First*, "when alleging fraudulent conduct and statements, a plaintiff may not lump together defendants when it will obscure the identity of the party that has committed the alleged

act." *Great Fla. Bank*, 2011 WL 382588, at *3.  Plaintiffs thus can neither "use 'group pleading'

to impute the knowledge of" Banamex to Citigroup, *Miyahira v. Vitacost.com, Inc.*, 2011 WL

13136262, at *6 (S.D. Fla. Dec. 12, 2011), nor by artful pleading try to "blend[] the identities" of

Banamex and Citigroup, *Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1217 (11th Cir. 2020); *see,*

*e.g.*, *Transatlantic, LLC v. Humana, Inc.*, 666 F. App'x 788, 789 (11th Cir. 2016) (affirming

dismissal of RICO complaint against separate corporate defendants because it "treat[ed] the

defendants as a single entity" and "group[ed] them as a collective"); *Brooks v. Blue Cross &*

*Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1380-81 (11th Cir. 1997) (RICO complaint that lumped

together all defendants did not plead fraud with the specificity required by Rule 9(b)); *City of*

*Miami v. JPMorgan Chase & Co.*, 171 F. Supp. 3d 1309, 1313-14 (S.D. Fla. 2016) (dismissing

complaint that "lump[ed] together" separate corporate defendants, including a parent holding

company, and "then ma[de] undifferentiated allegations against the composite entity").

Nevertheless, Plaintiffs refer to "Citigroup's cash advance facility with OSA" (TAC ¶ 86)

and aver that "Citigroup" advanced OSA over $3.3 billion (*see id.* ¶¶ 4, 74).  Elsewhere,

however, the TAC specifically acknowledges that the cash advance program utilized "Banamex

credit facilities" (*id.* ¶ 74), was established "within Banamex" (*id.* ¶ 73), employed trusts "in

Banamex's trust division" (*id.* ¶ 154; *see id.* ¶¶ 156-57, 159), and that "Banamex provided [the]

cash advances to OSA" (*id.* ¶ 50; *see id.* ¶¶ 75, 84).  In a similar vein, Plaintiffs contend that

"Citigroup provided extensive services to OSA" (*id.* ¶ 208), even though the TAC concedes that

OSA was provided banking services "through Banamex" (*id.* ¶¶ 209, 211), that it was Citibank

and Banamex that acted as trustee and collateral agent, respectively, for OSA's 2008 Bonds (*id.*

¶¶ 209, 213, 215), and that in 2012-13 a different Citigroup subsidiary (Citi Markets) advised

OSA respecting an acquisition and considered whether, but declined, to finance an OSA vessel

26

acquisition (*id.* ¶¶ 217-22).  *See, e.g.*, *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205-06 (11th Cir. 2007) ("Our duty to accept the facts in the complaint as true does not require us to ignore specific factual details of the pleading in favor of general or conclusory allegations.").

The TAC is replete with such sleights of hand.  For example, a key premise of Plaintiffs' fraud theory is that "Citigroup" entered into a "Regulatory Contract" with OSA respecting controls for the cash advance facility.  (*See* TAC ¶¶ 90, 105, 108, 114, 141.)  However, that contract contains no mention of Citigroup.  (Ex. B.)  Moreover, the TAC itself explains that OSA entered the Regulatory Contract "with Banamex" (TAC ¶ 90), the contract was signed "on behalf of Banamex" (*id.* ¶ 90), and the contract by its plain terms concerned Banamex's implementation of the cash advance facility (*id.* ¶ 106).  Similarly, the TAC alleges that an August 2014 letter from Citigroup to the SEC states that "Citigroup had provided cash advances to OSA based on Pemex documents submitted by OSA to Citigroup" (TAC ¶ 174), when the letter makes clear *Banamex* extended credit to OSA based on documents OSA submitted *to Banamex* (Ex. C at 5).  Because they are contradicted by the TAC itself and the very documents it relies upon, Plaintiffs' attempts to conflate Banamex and Citigroup are unavailing.  *See, e.g.*, *Griffin Indus., Inc.*, 496 F.3d at 1206; *De La Torre v. Wright Nat'l Flood Ins. Co.*, 2019 WL 8014548, at *1 (S.D. Fla. Sept. 20, 2019); *In re KLX, Inc. Sec. Litig.*, 232 F. Supp. 3d 1269, 1276 (S.D. Fla. 2017).

*Second*, knowledge of individual Banamex employees cannot be imputed to Citigroup to allege scienter.  *See, e.g.*, *Chill v. Gen. Elec. Co.*, 101 F.3d 263, 268 (2d Cir. 1996) (declining to impute motive to corporate parent based on actions of subsidiary's employee); *In re Nokia ERISA Litig.*, 2011 WL 7310321, at *4 n.5 (S.D.N.Y. Sept. 6, 2011) (parent's alleged fraud is not alone a plausible theory for imputing its knowledge to its subsidiary); *Defer*, 2010 WL 3452387, at *8-9 (declining to impute subsidiary's knowledge to parent in absence of evidence parent

27

knew of and approved conduct). While "[a]n employee acting within the scope of his or employment is an agent of his or her employer," "[t]he same cannot be said of a subsidiary *vis-à-vis* its parent, at least not necessarily." *Defer LP v. Raymond James Fin., Inc.*, 654 F. Supp. 2d 204, 218 (S.D.N.Y. 2009). Imputation is especially "inappropriate" when, as with the OSA fraud, the employee is engaged in misconduct "adverse to a corporate principal." *Renta*, 530 F.3d at 1354-55; *see also infra* at 38.

*Third*, allegations that Citigroup "must" have known of the OSA fraud are ineffective. "[D]istrict courts within the Eleventh Circuit ha[ve] consistently rejected the notion that plaintiffs could generate a strong inference of scienter merely by alleging that a problem is 'generally known' or 'well known' within the company." *Morgensen v. Body Cent. Corp.*, 15 F. Supp. 3d 1191, 1218 (M.D. Fla. 2014). "Similarly, Plaintiffs may not rely on [individuals'] management positions to raise the inference that they 'must have known' of" the alleged misconduct. *Miyahira*, 2011 WL 13136262, at *6. Citigroup's executives' alleged supervision of the cash advance program (*see* TAC ¶ 78) is thus too "weak and convoluted" a basis to infer knowledge of the fraud. *Zisholtz v. SunTrust Banks, Inc.*, 2009 WL 3132907, at *5 (N.D. Ga. Sept. 24, 2009); *see In re Sunterra Corp. Sec. Litig.*, 199 F. Supp. 2d 1308, 1324 (M.D. Fla. 2002). Were it otherwise, "any executives working at a company with an internal reporting system would work at their peril." *Morgensen*, 15 F. Supp. 3d at 1220; *see In re Marsh & McLennan Co., Sec. Litig.*, 501 F. Supp. 2d at 484 ("Simply arguing that specific high level employees must have known what was taking place … because certain subordinate employees were later implicated in the fraud is insufficient …").

Likewise, "simply alleging that a widespread fraud may have occurred is not enough." *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1247 (11th Cir. 2008). Thus, allegations that the

28

size of the fraud means it was too large to be unknown by Citigroup (*see* TAC ¶¶ 192-93) are "unpersuasive." *See, e.g.*, *Brophy v. Jiangbo Pharm., Inc.*, 781 F.3d 1296, 1305 (11th Cir. 2015). This is especially so considering that the $500 million loss incurred by Citigroup, while significant, represented merely 0.65% of Citigroup's revenues for the year. (RJN Ex. 3 at 5.) *See Mizzaro*, 544 F.3d at 1251 ("although surely a significant sum, $1 billion represents less than 2% of [defendant's] annual sales"); *Defer*, 654 F. Supp. 2d at 219 ("Nor is the magnitude of the fraud especially impressive here. Although defendants allegedly sold $1.9 billion of ARS to investors, there was $300 billion in ARS outstanding by the close of the class period.").

*Fourth*, the lynchpin of the claim that Citigroup knew of and participated in the fraud — because it supposedly benefitted from the fraud — cannot be credited as it is affirmatively contradicted by the very evidence invoked to support that allegation. *See Crenshaw v. Lister*, 556 F.3d 1283, 1292 (11th Cir. 2009). Specifically, although the TAC cites the SEC Order as supposedly evidencing Citigroup's knowing participation in the OSA fraud (*see, e.g.*, TAC ¶ 122 n.18), that Order confirms that Citigroup, as the owner of Banamex, lost nearly $500 million due to the fraud. *SEC Order*, 2018 WL 3913653, at *1-3. Indeed, Plaintiffs' theory for Citigroup's supposed motivation to knowingly participate in the fraud makes no sense. *See Kalnit v. Eichler*, 264 F.3d 131, 140-41 (2d Cir. 2001) (economically nonsensical allegations cannot yield a reasonable inference of fraudulent intent); *In re Sunterra Corp. Sec. Litig.*, 199 F. Supp. 2d at 1328 (lack of plausible motive "militates in favor of a finding of lack of scienter."). It is irrational in the extreme that Citigroup would jeopardize Banamex's relationship with Pemex, an entity with over $100 billion in annual net sales (RJN Ex. 4 at 6; *see* TAC ¶ 73), for the chance at comparatively modest interest payments from OSA (*see, e.g.*, TAC ¶¶ 82, 113, 115). Especially given that Citigroup itself (through Banamex) logically would be (and was) "on the hook" when

29

Pemex refused to reimburse the unauthorized advances. *See Cisneros*, 972 F.3d at 1218-19.

Plaintiffs try to address the glaring illogic upon which their fraud theory is based by alleging — "[o]n information and belief" — that Pemex reimbursed Banamex for the unauthorized advances made to OSA. (TAC ¶¶ 15, 145, 190.) The Court is not required to accept as true allegations made on information and belief, *Mann v. Palmer*, 713 F.3d 1306, 1315 (11th Cir. 2013), or that amount to "unwarranted deduction[s] of fact," *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1268 (11th Cir. 2009), particularly here given that Plaintiffs' reimbursement allegations can be true only if Citigroup's SEC filings (confirming an unreimbursed $500 million loss) were false. (RJN Ex. 2 at 218.) Even where details of the alleged fraud could be said to be within the defendant's knowledge or control, allegations made on information and belief still must be accompanied by "specific facts supporting a strong inference of fraud." *Gonzalez v. Agave Metal Trading LLC*, 2018 WL 7048027, at *7 (M.D. Fla. Dec. 13, 2018); *see Talisman Cap. Alt. Invs. Fund, Ltd. v. Mouttet*, 2011 WL 13223517, at *4 (S.D. Fla. Oct. 26, 2011) (allegations on information and belief did not offer enough "personal or specific facts" with respect to defendants' alleged "participation in fraudulent schemes to support an inference of fraud" that satisfied Rule 9(b)); *Great Fla. Bank*, 2011 WL 382588, at *5 ("The Court finds that Plaintiff improperly uses 'information and belief' pleading because it fails to allege with particularity facts giving rise to a strong inference of Defendants' fraudulent intent.").[14]

Indeed, Plaintiffs' inherently implausible and wholly unsupported keystone allegation *is contradicted by the TAC itself* — which explains that Pemex previously had *refused* to

---

[14] The Mexican Bankruptcy Court's disallowance of Banamex's claims in OSA's bankruptcy (TAC ¶¶ 188-90) does not remotely suggest that Pemex reimbursed Banamex for unauthorized advances paid to OSA. The disallowance was because the accounting certificate provided by Banamex was found to be insufficiently specific. (*Id.* ¶ 190; *see* Ex. D (Torre ¶ 28 & Ex. 8).)

30

reimburse Banamex for funds that had been advanced to OSA based on documents that were not properly validated by Pemex.  (TAC ¶ 125; *see SEC Order*, 2018 WL 3913653, at *6.)  "If Rule 9(b) is to carry any water, it must mean that an essential allegation and circumstance of fraudulent conduct cannot be alleged in such conclusory fashion" as Plaintiffs do here.  *Clausen*, 290 F.3d at 1313; *see Glock v. Glock*, 247 F. Supp. 3d 1307, 1314-15 (N.D. Ga. 2017) (dismissing complaint for failure to satisfy Rule 9(b) because key components of the claimed fraudulent scheme were alleged on information and belief unsupported by specific facts).

*Finally*, Plaintiffs' own allegations negate a plausible inference of scienter.  As noted, Plaintiffs originally acknowledged that Citigroup only learned of OSA's false invoices "for the first time" upon conducting a review of the cash advances in February 2014 (DE 1, ¶ 98), and the SEC Order (which Plaintiffs rely upon) concludes that "it was not until … February of 2014 … that Citigroup discovered many of the work estimates were falsified," *SEC Order*, 2018 WL 3913653, at *1.  Moreover, Plaintiffs themselves concede that it was Citigroup who alerted Mexican regulators to the existence of the falsified documents (TAC ¶ 169) and then promptly and voluntarily disclosed the OSA fraud (*see id.* ¶ 170; *see also* RJN Ex. 1), all of which undercuts an inference of fraudulent intent.  *See, e.g.*, *In re KLX, Inc. Sec. Litig.*, 232 F. Supp. 3d at 1282; *In re Nokia Corp. Sec. Litig.*, 1998 WL 150963, at *13 (S.D.N.Y. Apr. 1, 1998).

## V.    PLAINTIFFS' RICO CLAIMS FAIL ON EVERY REQUIRED ELEMENT

Apart from their failure to allege cognizable injury or predicate acts, *see supra* at 6-12, Plaintiffs fail to state a RICO claim for additional reasons.  To state a RICO claim, Plaintiffs must plead facts alleging that Citigroup "(1) operated or managed (2) an enterprise (3) through a pattern (4) of racketeering activity that included at least two predicate acts of racketeering, which (5) caused (6) injury to [their] business or property."  *Cisneros*, 972 F.3d at 1211.  The facts supporting the alleged "scheme to defraud" must be pleaded with particularity.  *See, e.g.*, *Brooks*,

31

116 F.3d at 1380-81.  The TAC fails to meet *any* of these requirements.

### A.    The TAC Does Not Allege The Conduct Of A RICO Enterprise

To plead the "conduct" of an "enterprise," Plaintiffs must allege Citigroup "participate[d] in the operation or management of the enterprise itself." *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993).  Citigroup's alleged participation must be "affirmative and deliberate," and it "must [have] knowingly implement[ed] and ma[d]e decisions" in furtherance of the common goal.  *Off. Comm. of Unsecured Creditors of PSA, Inc. v. Edwards*, 437 F.3d 1145, 1156 (11th Cir. 2006) (internal quotation omitted).  Plaintiffs do not adequately plead any such facts.

**The TAC Does Not Establish The Existence Of An Enterprise:**  The purported RICO "enterprise" — an association among a financial institution (Banamex), its indirect parent (Citigroup), and its customer (OSA) — presents precisely the type of "common business relationships [that] do not, in and of themselves, constitute a racketeering 'enterprise.'"  *Ray v. Spirit Airlines, Inc.*, 126 F. Supp. 3d 1332, 1341 (S.D. Fla. 2015), *aff'd*, 836 F.3d 1340 (11th Cir. 2016; *see Cisneros*, 972 F.3d at 1212 (affirming dismissal of claims involving "an anodyne … business model"); *Aim Recycling of Fla., LLC v. Metals USA, Inc.*, 2020 WL 209860, at *15 (S.D. Fla. Jan. 13, 2020) (for a business to be involved in a RICO enterprise, "there must be evidence of some activity that goes beyond general, self-interested business activity").

The cash advance program was established in 2008 (TAC ¶ 73), yet the only specific allegations that it was misused relate to OSA's submission of false invoices to Banamex from September 2013 through February 2014 (*id.* ¶¶ 140, 166).  *See supra* at 24.  This alleged abuse of an otherwise legitimate financing arrangement cannot constitute a RICO "enterprise" because a RICO enterprise must exist separate and apart from the purported RICO activity itself — it must encompass more than just "what was necessary to perpetrate the predicate crimes."  *Diamonds Plus, Inc. v. Kolber*, 960 F.2d 765, 770 (8th Cir. 1992).  This cannot be established

32

simply by alleging that the participants engaged in racketeering activity. *United States v. Turkette*, 452 U.S. 576, 583 (1981); *see Boyle v. United States*, 556 U.S. 938, 947 (2009).

All the TAC pleads beyond the purported RICO activity — OSA's submission of false invoices to Banamex — is conclusory speculation that the conduct occurred as part of an "enterprise" to defraud OSA's vendors and creditors, based on anodyne communications in the normal course of bond offerings (TAC ¶¶ 796-97, 815, 937-38), the renegotiation of a loan (*id.* ¶¶ 1384-89), the restructuring of a debt (*id.* ¶¶ 230, 448), and the establishment of trusts (*id.* ¶¶ 360-64, 1619-23). "Bankers do not become racketeers by acting like bankers." *Terry A. Lambert Plumbing, Inc. v. W. Sec. Bank*, 934 F.2d 976, 981 (8th Cir. 1991). Plaintiffs have thus failed to plead the "something more" that is required to plead an "enterprise." *See, e.g.*, *Ray*, 836 F.3d at 1355 (allegations establishing that defendants "were engaged in no more than a series of legitimate commercial transactions" insufficient); *Parm v. Nat'l Bank of Cal., N.A.*, 242 F. Supp. 3d 1321, 1346 (N.D. Ga. 2017) ("An enterprise must be more than a routine contractual combination for the provision of financial services."); *Acosta v. Campbell*, 2006 WL 146208, at *6 (M.D. Fla. Jan. 18, 2006) (activities that were "precisely the sort of activities" defendants engaged in for the purpose of their regular business could not constitute "enterprise activities").

**The TAC Does Not Plead That Citigroup Directed The Affairs Of The Enterprise:** The TAC does not plausibly plead that Citigroup or any of its employees "direct[ed] [the] affairs" of the alleged enterprise. *Reves*, 507 U.S. at 179. The TAC merely identifies 11 Banamex employees in Mexico who allegedly approved OSA's advances and 11 individuals (3 in Mexico, 2 in the U.S., and 6 unclear or unspecified) who allegedly had supervisory authority over Banamex, the cash advance program, or the Pemex customer relationship. (*See* TAC Appendices 1, 2.) Unable to allege any specific affirmative and deliberate decision by Citigroup

in connection with the enterprise, or even its participation in the submission of falsified invoices, Plaintiffs ask the Court to infer such conduct must have occurred because individuals "in Mexico" have been accused criminally or were subject to adverse employment actions.  (*See* TAC ¶¶ 88, 110, 112, 173, 176 nn.29-30.)  Such illogical speculation does not provide a basis to infer that Citigroup played a role in directing the enterprise.  *See Edwards*, 437 F.3d at 1156.

**B.        The TAC Does Not Allege A Pattern Of Racketeering Activity**

To establish a pattern of racketeering, Plaintiffs must plead enough particularized facts with respect to each predicate act to make it independently indictable as a crime.  *See Cisneros*, 972 F.3d at 1215-16.  They must also plead facts demonstrating "that the predicates themselves amount to, or that they otherwise constitute a threat of, *continuing* racketeering activity."  *H. J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 240 (1989).  Plaintiffs have done neither.

<u>**The TAC Fails To Allege That Citigroup Engaged In Predicate Acts Of Wire Fraud:**</u>  As noted, Plaintiffs' reliance on predicate acts of wire fraud is barred by Section 107 of the PSLRA.  *See supra* at 10-12.  Plaintiffs also fail to state a claim based on predicate acts of wire fraud because the TAC does not plead facts, consistent with the heighted pleading standard of Rule 9(b), demonstrating that Citigroup "(1) intentionally participate[d] in a scheme to defraud another of money or property and (2) use[d] the … wires in furtherance of that scheme."  *Am. Dental Ass'n*, 605 F.3d at 1290.  Wire fraud is a specific intent crime, "requiring that the defendant acted with bad purpose either to disobey or disregard the law."  *Ray v. Spirit Airlines, Inc.*, 767 F.3d 1220, 1227 (11th Cir. 2014).  For the reasons discussed *supra* at 23-30, the TAC does not allege with the requisite particularity that Citigroup acted with fraudulent intent.

<u>**The TAC Fails To Establish Continuity:**</u>  "Continuity" can be satisfied by reference to either (i) "a closed period of repeated conduct" (*i.e.*, closed-end continuity), or (ii) "past conduct that by its nature projects into the future with a threat of repetition" (*i.e.*, open-ended continuity).

34

*H. J. Inc.*, 492 U.S. at 241.  Plaintiffs can satisfy neither standard.

*First*, the TAC only identifies with particularity fraudulent cash advances over a 150-day period from September 2013 through February 2014.  "In this Circuit, closed-ended continuity cannot be met with allegations of schemes lasting less than a year."  *Ferrell v. Durbin*, 311 F. App'x 253, 256 (11th Cir. 2009) (citations and quotations omitted).

*Second*, to allege open-ended continuity, Plaintiffs must allege the racketeering activity was part of Citigroup's "regular way of doing business" or "threatened repetition in the future."  *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1267 (11th Cir. 2004).  The TAC forecloses any conclusion that the alleged RICO violations were part of Citigroup's regular way of doing business by pleading that they violated Citigroup's policies and procedures.  (*See, e.g.*, TAC ¶¶ 114, 123.)  Moreover, the TAC acknowledges that Citigroup terminated the alleged scheme and publicly disclosed the OSA fraud upon learning of it.  *See Jackson*, 372 F.3d at 1268-69 (no open-ended continuity where activity was punished and was "virtually certain" to not continue); *Vicon Fiber Optics Corp. v. Scrivo*, 201 F. Supp. 2d 216, 221 (S.D.N.Y. 2002) (open-ended continuity not established where scheme was uncovered and stopped).  As there is "no longer a working relationship" involving OSA, there is no opportunity for the alleged racketeering to persist.  *Daedalus Cap. LLC v. Vinecombe*, 625 F. App'x 973, 977 (11th Cir. 2015).

## VI.    PLAINTIFFS' RICO CONSPIRACY CLAIMS FAIL

Plaintiffs' RICO conspiracy claims are based on the same alleged wire fraud predicates as their RICO claims.  (TAC ¶ 1844.)  Because PSLRA § 107 bars the substantive RICO claims, *see supra* at 10-12, it bars the RICO conspiracy claims.  *Howard*, 208 F.3d at 751; *Woods*, 2021 WL 1055816, at *3; *see Rogers v. Nacchio*, 241 F. App'x 602, 609 (11th Cir. 2007).

Further, a RICO conspiracy claim requires allegations that the defendant agreed either to "the overall objective of the conspiracy or … to commit two predicate acts."  *Am. Dental Ass'n*,

35

605 F.3d at 1293.  The agreement must be pleaded with specificity, *Solomon v. Blue Cross & Blue Shield Ass'n*, 574 F. Supp. 2d 1288, 1292-93 (S.D. Fla. 2008), and requires overt acts, not just an agreement to act, *Beck*, 162 F.3d at 1098.  Here, the conspiracy claim fails because the bases for "inferr[ing]" (TAC ¶ 1841) that Citigroup knowingly agreed to participate in the OSA fraud are speculative and conclusory.  *See supra* at 25-31.  *See, e.g.*, *Jackson*, 372 F.3d at 1269.

## VII.    PLAINTIFFS' COMMON LAW FRAUD-BASED CLAIMS FAIL

### A.    Plaintiffs Fail To State A Claim For Fraud

A fraud claim under Florida law requires: (i) a representation of fact; (ii) that defendant knew was false; (iii) made for the purpose of inducing reliance; and (iv) reasonable reliance. *Finn v. Prudential-Bache Sec., Inc.*, 821 F.2d 581, 586 (11th Cir. 1987).[15]  As discussed, *see supra* at 15-31, the TAC fails to adequately allege an actionable misstatement by Citigroup, reliance, or scienter.  Nor do Plaintiffs adequately allege proximate cause.  The TAC plausibly pleads only that the OSA fraud operated from September 2013, *see supra* at 24, and there is no specific allegation that it would have made a difference if Plaintiffs had learned of OSA's liquidity issues then rather than in February 2014.  *See, e.g.*, *Humana*, 728 So. 2d at 265.

### B.    Plaintiffs Fail To State A Claim For Aiding And Abetting Fraud

"[I]t is unclear whether aiding and abetting fraud exists as a cause of action in Florida." *Lamm v. State St. Bank & Trust*, 749 F.3d 938, 950 n.9 (11th Cir. 2014).  However, it is clear that Plaintiffs must allege the elements of such a claim with particularity, *Tippens v. Round*

---

[15] Plaintiffs purport to bring their claims under Florida law (TAC ¶ 58) but offer no analysis of the law applicable to their common law claims under Florida's "fairly involved" "most significant relationship" test. *See Mootilal Ramhit & Sons Contracting, Ltd. v. Mohammed*, 2014 WL 3439742, at *7-8 (S.D. Fla. July 15, 2014).  Without conceding that Florida law (as opposed to the law of New York, Mexico, or Plaintiffs' various domiciles) applies, in this motion Citigroup addresses only the deficiencies of Plaintiffs' common law claims under Florida law.

*Island Plantation LLC*, 2009 WL 2365347, at *5 (S.D. Fla. July 31, 2009), including Citigroup's knowledge and substantial assistance of the primary fraud, *see Cordell Consultant, Inc. Money Purchase Plan & Tr. v. Abbott*, 561 F. App'x 882, 884 (11th Cir. 2014); *In LBS Petroleum, LLC v. Demir*, 2015 WL 12469064, at *11 (S.D. Fla. Oct. 27, 2015).  Plaintiffs have not done so.

**No Actual Knowledge:**  "[W]here a bank customer has perpetrated a fraudulent scheme, courts have widely held that the bank is not liable for aiding and abetting unless the bank has actual knowledge of its customer's wrongful activity."  *Platinum Ests., Inc. v. TD Bank, N.A.*, 2012 WL 760791, at *3 (S.D. Fla. Mar. 8, 2012).  It is not enough for Plaintiffs to allege facts merely suggesting that Citigroup disregarded "red flags" or atypical activities or transactions or that because of its relationship with OSA it "must" or "should" have known about the OSA fraud (*see, e.g.*, TAC ¶¶ 119, 137, 144), especially considering that banking services were provided to OSA "through Banamex" (*id.* ¶¶ 209, 211).  *See, e.g.*, *Lamm*, 749 F.3d at 950; *Feng*, 2020 WL 5822420, at *8; *Meridian Tr. Co.*, 2018 WL 4693533, at *4.  Plaintiffs are required, but fail, to plead "specific facts that give rise to a strong inference of [Citigroup's] actual knowledge regarding the underlying fraud," *Feng*, 2020 WL 5822420, at *7 (citations and quotations omitted), much less particularized facts that Citigroup knew of wrongful conduct by OSA directed to Plaintiffs specifically, *see Cordell Consultants, Inc. Money Purchase Plan v. Abbott*, 2015 WL 11539507, at *6 (S.D. Fla. Nov. 9, 2015), *aff'd*, 682 F. App'x 867 (11th Cir. 2017).

**No Substantial Assistance:**  Aiding and abetting liability can exist only if the defendant "knowingly rendered substantial assistance in the commission of the wrongdoing."  *Lawrence v. Bank of Am., N.A.*, 2010 WL 3467501, at *4 (M.D. Fla. Aug. 30, 2010), *aff'd*, 455 F. App'x 904 (11th Cir. 2012).  Providing "basic banking services" does not suffice.  *Id.* at *5.  Nor can Citigroup be found to have provided substantial assistance based on inaction or an omission

37

theory, given that it owed Plaintiffs no duty of disclosure. *Meridian Tr. Co.*, 2018 WL 4693533, at *5; *Lamm v. State St. Bank & Trust Co.*, 889 F. Supp. 2d 1321, 1332-33 (S.D. Fla. 2012), *aff'd*, 749 F.3d 938 (11th Cir. 2014).  All the more so considering that a defendant can be liable for aiding and abetting based on omissions "only if scienter of the high 'conscious intent' variety can be shown." *Platinum Ests.*, 2012 WL 760791, at *4.

### C.       Plaintiffs Fail To State A Claim For Conspiracy To Commit Fraud

Conspiracy to commit fraud under Florida law requires (1) an agreement among two or more parties, (2) to do an unlawful act, (3) acts in furtherance of the objective, and (4) injury. *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1271 (11th Cir. 2009) (citation omitted). Moreover, there can be no liability for conspiracy if there is no intent to achieve an illegal goal. *Ginsberg v. Lennar Fla. Holdings, Inc.*, 645 So. 2d 490, 502 (Fla. 3d DCA 1994).  This claim too must be pleaded with particularity, and fails because the TAC pleads no specific facts supporting the conclusory allegation that Citigroup agreed with OSA to defraud Plaintiffs. *See, e.g.*, *Feng*, 2020 WL 5822420, at *12; *Meridian Tr. Co.*, 2018 WL 4693533, at *6.

## VIII.   PLAINTIFFS' VICARIOUS LIABILITY CLAIMS SHOULD BE DISMISSED

The TAC asserts, for the first time since this action was commenced nearly six years ago, that even if Citigroup is not directly liable to Plaintiffs for its own conduct, it is "[a]lternatively" liable vicariously under actual or apparent agency theories for the conduct of its subsidiaries. (TAC ¶¶ 1961, 1973.)  These claims should be dismissed for three separate reasons.

*First*, whether based on a theory of actual or apparent agency, a principal can be liable for an agent's wrongdoing only if it was done in furtherance of the principal's interests. *Brown v. Zaveri*, 164 F. Supp. 2d 1354, 1361-62 (S.D. Fla. 2001).  As discussed, the TAC's theory respecting how Citigroup supposedly benefitted from the OSA fraud is entirely conclusory and affirmatively contradicted by Plaintiffs' own evidence and allegations.  Simply put, Citigroup

38

cannot be vicariously liable for a fraud by which it was itself victimized by nearly $500 million (RJN Ex. 2), which it promptly disclosed once discovered (TAC ¶¶ 169-70), and in response to which it fired "approximately a dozen employees, including senior executives" (*id.* ¶ 172). *See Hosch*, 815 F. App'x at 355-56 (affirming dismissal of complaint; bank could not be vicariously liable for employee's actions if it did not benefit from the fraud, which indicated that the scheme did not further the bank's business); *Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1406-07 (11th Cir. 1994) (a corporation is vicariously responsible for the wrongful acts of its employees only if the acts were committed in furtherance of the corporation's business and authorized or subsequently acquiesced in by the corporation).

*Second*, these claims are time-barred. They are subject to a four-year statute of limitations, Fla. Stat. § 95.11(3)(p) (2005); *see Doe v. Emerson*, 2006 WL 2971314, at *3 (Fla. 9th JCC June 2, 2006), but Plaintiffs waited nearly eight years after OSA's fraud was publicly revealed to assert them. And Plaintiffs cannot rely on "relation back" because nothing in their prior complaints suggested Citigroup faced *secondary* liability for its subsidiaries' conduct as opposed to *primary* liability for its own conduct. *See Caron v. NCL (Bahamas), Ltd.*, 910 F.3d 1359, 1368 (11th Cir. 2018). Rule 15(c)(2) relation back is "for a relatively narrow purpose" and does not allow an amended pleading to add a new claim based on "separate conduct or a separate occurrence in both time and type." *Farris v. United States*, 333 F.3d 1211, 1215 (11th Cir. 2003). That, however, is precisely what Plaintiffs are attempting to do. While their initial claims asserted liability against Citigroup for its own conduct, the newly-asserted vicarious liability claims assert liability against Citigroup for the conduct of its subsidiaries. These new claims thus rely "not only on a different theory of recovery" (direct vs. vicarious), "but also on separate ultimate facts" (Citigroup's alleged misconduct vs. the alleged misconduct of its subsidiaries).

39

*See Lefebvre v. James*, 697 So. 2d 918, 920 (Fla. 4th DCA 1997).

*Third*, Plaintiffs should be judicially estopped from now asserting these claims. Judicial estoppel "prevent[s] parties from playing fast and loose with the courts to suit the exigencies of self interest" by successfully taking one position in a case and later asserting a contrary position. *See, e.g.*, *Allapattah Servs., Inc. v. Exxon Corp.*, 372 F. Supp. 2d 1344, 1367-68 (S.D. Fla. 2005) (citations and quotations omitted). Plaintiffs have repeatedly represented that their claims concern only the conduct of Citigroup in the United States. (*See, e.g.*, DE 85 at 1; DE 125 at 31.) Indeed, the Eleventh Circuit's reversal of this Court's *forum non conveniens* dismissal was based on Plaintiffs' representations that they were *not* complaining of conduct occurring primarily in Mexico, that the dispute "focused on Citigroup's conduct in the United States," and that they were seeking to hold Citigroup "*independently* liable for its alleged role in overseeing, directing, or participating in the scheme." *Otto Candies, LLC v. Citigroup, Inc.*, 963 F.3d 1331, 1341-43 (11th Cir. 2020) (emphasis added). Plaintiffs' vicarious liability claims, however, assert exactly the opposite — that they were defrauded by Banamex, in Mexico, and Citigroup should be responsible not for its own conduct towards Plaintiffs, but under agency theories. The judicial estoppel doctrine is designed to prevent precisely what Plaintiffs are doing by adding vicarious liability claims only after having avoided dismissal on *forum non conveniens* grounds — "making a mockery of justice" by the calculated assertion of divergent positions. *Allapattah*, 372 F. Supp. 2d at 1368; *see, e.g.*, *In re Gosman*, 382 B.R. 826, 841-42 (S.D. Fla. 2007).

### CONCLUSION

Four chances to state a claim are more than enough. The TAC should be dismissed with prejudice. *See, e.g.*, *Feng v. Walsh*, 2022 WL 669198, at *1-2 (S.D. Fla. Mar. 7, 2022).

40

DATED:  May 10, 2022

Respectfully submitted,

**SHEARMAN & STERLING LLP**

By:   *Adam S. Hakki*  

ADAM S. HAKKI
(admitted *pro hac vice*)
ahakki@shearman.com
STEPHEN FISHBEIN
(admitted *pro hac vice*)
sfishbein@shearman.com
JOHN NATHANSON
(admitted *pro hac vice*)
john.nathanson@shearman.com
DANIEL C. LEWIS
(admitted *pro hac vice*)
daniel.lewis@shearman.com
599 Lexington Avenue
New York, New York 10022
Telephone: (212) 848-4000

MICHAEL P. MITCHELL
(admitted *pro hac vice*)
michael.mitchell@shearman.com
401 9th Street, NW
Washington, D.C. 20004
Telephone: (212) 508-8000

**DAY PITNEY LLP**

By:   *Manuel A. Garcia-Linares*  

MANUEL A. GARCIA-LINARES
Fla. Bar No. 985252
mgarcialinares@daypitney.com
athomsen@daypitney.com
GEORGIA A. THOMPSON
Fla. Bar No. 100181
gthompson@daypitney.com
lmiller@daypitney.com
396 Alhambra Circle
North Tower, 14th Floor
Miami, Florida  33134
Tel:  (305) 373-4000
Fax:  (305) 373-4099

*Counsel for Defendant Citigroup Inc.*

41

## Annex 1 – Plaintiffs' Foreign Injuries

| Category of Plaintiff | Plaintiff | Location of Tangible Property | Where Intangible Loss (If Any) Was Felt |
|---|---|---|---|
| Shipping Companies and Service Providers | Otto Candies, LLC | Vessels leased to OSA in Mexico (¶¶ 1177-79). | Mexico, where partially-owned subsidiary, Candies Mexican Investments, was located (¶¶ 1180, 1817). |
| | Coastline Maritime Pte. Ltd. | Vessels leased to OSA in Mexico (¶¶ 1303, 1314, 1319, 1377). | Singapore (¶¶ 21, 1819). |
| | Marfield Ltd. Inc. | | Panama (¶ 21). |
| | Shanara Maritime International S.A. | | Panama (¶ 21). |
| | Gulf Investments and Services Ltd. | Vessels leased to OSA in Mexico (¶¶ 1475-76). | United Arab Emirates (¶¶ 23, 1823). |
| | Halani International Ltd. | Vessels leased to OSA in Mexico (¶¶ 1515-19). | St. Vincent and Grenadines (¶¶ 24, 1825). |
| | Shipyard de Hoop B.V. | Vessels leased to OSA in Mexico (¶¶ 1379-80). | Netherlands (¶ 22). |
| | Hoop Lobith International B.V. | | Netherlands (¶¶ 22, 1821). |
| | Máquinas Diesel S.A. de C.V. | Shipboard cranes and maintenance services to OSA in Mexico (¶ 1574). | Mexico (¶¶ 25, 1827). |

| Category of Plaintiff | Plaintiff | Location of Tangible Property | Where Intangible Loss (If Any) Was Felt |
|---|---|---|---|
| Investment Funds | HBK Master Fund L.P. | | Cayman Islands (¶¶ 32, 1805, 1807). |
| | ICE 1 EM CLO Limited | | Ireland (¶¶ 36, 1809). |
| | Adar Macro Fund Ltd. | | Cayman Islands (¶¶ 28, 1799). |
| | Ashmore Emerging Markets Debt and Currency Fund Limited | | Guernsey and Luxembourg (¶¶ 29, 1801). |
| | Ashmore Emerging Markets High Yield Plus Fund Limited | | |
| | Ashmore Emerging Markets Tri Asset Fund Limited | | |
| | Ashmore SICAV in respect of Ashmore SICAV Emerging Markets Corporate Debt Fund | | |
| | Ashmore SICAV in respect of Ashmore SICAV Emerging Markets Debt Fund | | |
| | Ashmore SICAV in respect of Ashmore SICAV Emerging Markets High Yield Corporate Debt Fund | | |
| | Padstow Financial Corp. | | British Virgin Islands (¶ 38). |
| | Moneda Latin American Corporate Debt | | Cayman Islands (¶¶ 38, 1811). |
| | Moneda Deuda Latinoamericana Fondo de Inversion | | Chile (¶¶ 37, 1811). |
| | Moneda Renta CLP Fondo de Inversión | | |

| Category of Plaintiff | Plaintiff | Location of Tangible Property | Where Intangible Loss (If Any) Was Felt |
|---|---|---|---|
| Investment Managers | HBK Investments L.P. | | United States (¶ 31).[*] |
| | ICE Canyon LLC | | United States (¶ 36).[*] |
| | Copernico Capital Partners (Bermuda) Ltd. | | Bermuda (¶¶ 30, 1803). |
| | Moneda International Inc. | | British Virgin Islands (¶ 38). |
| | Moneda S.A. Administradora General De Fondos | | Chile (¶ 37). |
| | Waypoint Asset Management LLC | | United States (¶ 46).[*] |
| Trustee | Nordic Trustee AS | | Norway (¶¶ 43-45, 1813).[†] |
| Bank | Coöperatieve Rabobank U.A. ("Rabobank") | | Netherlands (¶¶ 47, 1381). |

---

[*] As discussed in Section I.A.2 of the brief, the RICO claims asserted by the three U.S.-based investment managers, HBK Investments L.P., ICE Canyon LLC, and Waypoint Asset Management LLC, are insufficient as a matter of law because they fail to allege a direct injury.

[†] As explained in Section II of the brief, Nordic Trustee's claims fail for the independent reason that it does not claim to have suffered any injury.

## Annex 2

| Plaintiff | Failure to Plead Actionable Misconduct | | | | | | Failure to Plead Reliance | | |
|---|---|---|---|---|---|---|---|---|---|
| | No Substantive Communication with Citigroup | No Disclosure Duty Owed By Citigroup | No False Statement by Citigroup | Information and Belief / Non-Particularized Allegations | Failure to Allege Scienter | | Fails to Plead Reliance with Specificity | Plaintiff Did Not *Read* Materials | Insufficiently Alleges "Holding" Claim |
| Otto Candies (1) | | X | | X | X | | X | | |
| Adar (1) | X | X | X | | X | | X | X | X |
| Ashmore (6) | | X | | X | X | | X | X | X |
| Coastline (3) | X | X | X | | X | | X | X | |
| Rabobank (1) | | X | X | X | X | | X | | |
| Copernico (1) | X | X | X | | X | | X | X | X |
| De Hoop (2) | X | X | X | X | X | | X | X | |
| Gulf (1) | X | X | | | X | | X | | |
| Halani (1) | X | X | X | X | X | | X | X | |
| HBK (2) | X | X | | | X | | X | X | X |
| ICE (2) | | X | | | X | | X | X | X |
| Madisa (1) | X | X | X | | X | | X | | |
| Moneda (6) | | X | | | X | | X | X | X |
| Nordic Trustee (1) | X | X | X | | X | | X | X | X |
| Waypoint (1) | X | X | X | | X | | X | X | X |

1