UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:16-cv-20725-DPG

OTTO CANDIES, LLC, et al.,

        Plaintiffs,

v.

CITIGROUP, INC.,

        Defendant.

_____/

## ORDER

**THIS CAUSE** comes before the Court on Defendant Citigroup, Inc.'s Motion to Dismiss the Third Amended Complaint (the "Motion"), [ECF No. 190]. The Court has carefully considered the Third Amended Complaint (the "TAC"), the record, and the applicable law and is otherwise fully advised. For the reasons that follow, the Motion is granted.

## BACKGROUND[1]

In this action, Plaintiffs allege a fraudulent scheme carried out by Citigroup, Inc. ("Citigroup") and others not sued in this action. Most of the fraudulent acts occurred in Mexico, and most of the key actors are based, and engaged in business, in Mexico.

### I.    The Parties

Citigroup is a U.S.-based banking and financial institution incorporated in Delaware with its principal place of business in New York, New York. [ECF No. 187 ¶ 48]. Plaintiffs[2] are a

---

[1] The Court accepts Plaintiffs' allegations set forth in their TAC, [ECF No. 187], as true for purposes of the motion to dismiss. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).

[2] Otto Candies, LLC; Adar Macro Fund LTD.; Ashmore Emerging Markets Debt and Currency Fund Limited; Ashmore Emerging Markets High Yield Plus Fund Limited; Ashmore Emerging Markets Tri Asset Fund Limited; Ashmore SICAV in respect of Ashmore SICAV Emerging Markets Corporate Debt Fund; Ashmore SICAV in respect of Ashmore SICAV Emerging Markets Debt Fund; Ashmore SICAV in respect of Ashmore SICAV Emerging

1

diverse group of entities including shipping companies, investment funds, and a bank, located all over the world including in the United States, Mexico, the Caribbean, South America, Europe, and the Middle East. *Id.* ¶¶ 18–47. Plaintiffs bring this action as vendors, creditors, and bondholders of Oceanografía S.A. de C.V. ("OSA"), a now bankrupt Mexican oil and gas services company. *Id.* ¶¶ 1, 206. Petróleos Mexicanos S.A. de C.V. ("Pemex") is Mexico's state-owned oil and gas company and, at one time, one of the largest customers of OSA's offshore drilling services. *Id.* ¶¶ 4, 51. Banco Nacional de México ("Banamex") is Citigroup's wholly owned Mexican subsidiary. *Id.* ¶¶ 3, 49. Plaintiffs bring this action to recover the losses sustained from their investments and business dealings with OSA. *Id.* ¶¶ 15–16.

## II.     The Alleged Cash Advance Scheme

According to the TAC, Citigroup, through its Mexican subsidiary Banamex, established credit facilities to provide cash advances to contractors of Pemex, including OSA. *Id.* ¶ 73. OSA allegedly used the cash advances to fund its ongoing projects with Pemex. *Id.* ¶ 74. Over the life of the Banamex cash facility, Citigroup advanced over $3.3 billion to OSA, charging OSA substantial interest on every cash advance. *Id.* ¶¶ 4, 73, 74, 113. Additionally, conditioned on continuing its short-term credits to OSA, Citigroup was guaranteed repayment of the cash advances directly from Pemex. *Id.* ¶ 116. Because repayment was guaranteed by Pemex (i.e., the Mexican government), Plaintiffs allege that Citigroup, through or in conjunction with Banamex,

---

Markets High Yield Corporate Debt Fund; Coastline Maritime Pte. Ltd.; Coöperative Rabobank U.A.; Copernico Capital Partners (Bermuda) Ltd.; Gulf Investments and Services Ltd.; Halani International Ltd.; HBK Investments L.P.; HBK Master Fund L.P.; Hoop Lobith International B.V.; ICE Canyon LLC; ICE 1 EM CLO Limited; Máquinas Diesel S.A. de C.V.; Marfield Ltd. Inc.; Moneda Deuda Latinoamericana Fondo de Inversion; Moneda International Inc.; Moneda Latin American Corporate Debt; Moneda Renta CLP Fondo de Inversion; Moneda S.A. Administradora General de Fondos; Nordic Trustee ASA; Padstow Financial Corp.; Shanara Maritime International, S.A.; Shipyard De Hoop B.V.; and Waypoint Asset Management LLC.

repeatedly increased OSA's cash advance limit to earn millions in risk-free profit. ¶¶ 116–18.

Plaintiffs assert that because of Pemex's payment guarantee, Citigroup advanced amounts to OSA that Citigroup knew greatly exceeded any amount OSA could earn under its service contracts with Pemex. *Id.* ¶ 118–21. Plaintiffs allege that Citigroup knowingly advanced hundreds of millions of dollars to OSA that far exceed the value of the underlying Pemex contract by using documents and information it knew was either false or included forged Pemex signatures. *Id.* ¶¶ 122–37. Plaintiffs contend that the continued cash injections into OSA resulted in OSA's financials appearing more attractive to prospective investors, such as Plaintiffs. *Id.* ¶¶ 8, 10–12. These misrepresentations led Plaintiffs and others into believing that OSA was a financially attractive company for investment, which ultimately led Plaintiffs to: (1) invest and maintain their investments in OSA; (2) restructure their debts with OSA; and (3) enter into financial agreements with OSA. *Id.* ¶ 8.

In late-February 2014, the fraud involving OSA was uncovered by the Mexican government in connection with an unrelated investigation of OSA's insurance policies. *Id.* ¶ 15. OSA was seized and put into restructuring proceedings by Mexican prosecutors in March 2014, which triggered its collapse. *Id.* As a result of the fraud, Plaintiffs allegedly incurred more than $1 billion in losses. *Id.* Plaintiffs first initiated this action on March 26, 2016. [ECF No. 1]. After amending their pleadings twice, Plaintiffs filed the instant TAC on February 25, 2022.[3] [ECF No. 187]. In the TAC, Plaintiffs assert the following claims against Citigroup: Violation of RICO, 18 U.S.C. §1962(c) ("Count I"); Conspiracy to Violate RICO, 18 U.S.C. §1962(d) ("Count II"); Common Law Fraud ("Count III"); Common Law Aiding and Abetting Fraud ("Count IV"); Common Law Conspiracy to Commit Fraud ("Count V"); Vicarious Liability Based on Actual

---

[3] The Third Amended Complaint is 541 pages long, with 1,977 paragraphs of allegations.

Agency ("Count VI"); and Vicarious Liability Based on Apparent Agency ("Count VII"). *Id.* ¶¶ 1709–1977.

Citigroup has moved to dismiss this action arguing that: (1) Plaintiffs fail to allege a cognizable injury; (2) Plaintiffs fail to allege a cognizable RICO predicate act; (3) Plaintiff Nordic Trustee fails to plead an injury; (4) Plaintiffs fail to satisfy the Federal Rule of Civil Procedure 9(b) pleading standard as to their RICO and common law fraud-based claims; (5) Plaintiffs' RICO claims fail to plead scienter; (6) Plaintiffs' RICO claims are barred by Section 107 of the Private Securities Litigation Reform Act ("PSLRA"); (7) Plaintiffs fail to state a claim for each of the common law fraud-based claims; (8) Plaintiffs' vicarious liability claims fail to show that OSA acted in furtherance of Citigroup's interests; (9) Plaintiffs' vicarious liability claims are time-barred; and (10) Plaintiffs should be judicially estopped from now asserting their vicarious liability claims. [ECF No. 190 at 20–54].

## LEGAL STANDARD

To survive a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), a claim "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" meaning that it must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While a court must accept well-pleaded factual allegations as true, "conclusory allegations . . . are not entitled to an assumption of truth—legal conclusions must be supported by factual allegations." *Randall v. Scott*, 610 F.3d 701, 709-10 (11th Cir. 2010). "[T]he pleadings are construed broadly," *Levine v. World Fin. Network Nat'l Bank*, 437 F.3d 1118, 1120 (11th Cir. 2006), and the allegations in the complaint are viewed in the light most favorable to the plaintiff. *Bishop v. Ross*

*Earle & Bonan, P.A.*, 817 F.3d 1268, 1270 (11th Cir. 2016). At bottom, the question is not whether the Plaintiffs "will ultimately prevail . . . but whether [their] complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 530 (2011) (internal quotation and citation omitted).

**DICUSSION**

## I. Counts I and III – Plaintiffs' RICO and Common Law Fraud Claims

Plaintiffs' RICO and common law fraud claims are subjected to a heightened pleading standard. Rule 9(b) of the Federal Rules of Civil Procedure requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *see, e.g., Inman v. Am. Paramount Fin.*, 517 F. App'x 744, 748 (11th Cir. 2013). The particularity rule alerts "defendants to the 'precise misconduct with which they are charged' and protect[s] defendants 'against spurious charges of immoral and fraudulent behavior.'" *Durham v. Bus. Mgmt. Assocs.*, 847 F.2d 1505, 1511 (11th Cir. 1988) (quoting *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984)). "The application of the rule, however, must not abrogate the concept of notice pleading." *Id*. Rule 9(b) is satisfied if the complaint states:

> (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

*See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997) (internal quotation marks omitted). Furthermore, "[a] bare allegation of reliance on alleged misrepresentations, bereft of any additional detail, will not suffice under Rule 9(b)." *Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1128 (11th Cir. 2019) (affirming the district court's dismissal of the

plaintiffs' fraud claims because they "failed to allege with particularity the manner in which they relied on the defendants' statements").

Here, Citigroup argues that Plaintiffs' fraud-based claims fail because they do not adequately plead one or more of the heightened requirements: that Citigroup made any statement to them concerning a material fact, that any such statement was false, or that any such statement was relied on to their detriment. [ECF No. 190 at 29–39]. The Court agrees. Plaintiffs mostly offer vague and conclusory statements that they suffered damages/injuries because they relied on Citigroup's alleged misrepresentations. *See* [ECF No. 187 ¶¶ 408-11, 512-17, 563-71, 687-92, 894-99, 1100–11, 1031-35, 1167-71, 1300-02, 1372-78, 1472-74, 1508-14, 1570-73, 1612-15, 1706-08]. In some form or another, Plaintiffs allege that: (1) they relied on Citigroup's misrepresentations via OSA or OSA's financial consultant and Pareto[4]; and (2) they would not have invested in OSA, renegotiated the terms of their loans to OSA, or entered into an agreement with OSA, had they been privy to (i) OSA's false financial projections, (ii) the false documents submitted by OSA to Citigroup's Institutional Client's Group ("ICG") employees, and (iii) the ongoing fraud. *Id.* However, none of the Plaintiffs (with the possible exception of Plaintiff HBK Investments L.P. ("HBK")) allege with specificity the exact misrepresentations they relied on to induce them to either invest in OSA, renegotiate the terms of their loans to OSA, or enter into an agreement with OSA. Nor do Plaintiffs state how any misrepresentations informed their decision to invest in OSA. *See Fernau v. Enchante Beauty Prods., Inc.*, 847 F. App'x 612, 622 (11th Cir. 2021) (noting that these sorts of broad statements "[provide] no information about which of the specifically alleged misrepresentations and omissions, if any, induced them to purchase shares . . . or even whether they read the materials [] provided").

---

[4] Pareto consists of Pareto Securities AS, Pareto Securities Pte. Ltd., and Pareto Securities, Inc. *See* [ECF No. 187 ¶¶ 302–03].

In *Fernau*, the district court held that while the plaintiffs met their burden by pleading with specificity the misrepresentations and omissions the defendants made to induce them to invest, the plaintiffs did not expressly state that they relied on those misrepresentations and omissions. *See Fernau*, No. 18-20866, 2020 WL 2569300, at * 2 (S.D. Fla. May 21, 2020) (adopting the report and recommendation at *Fernau*, 18-20866, 2020 WL 5371297, at * 4 (S.D. Fla. Mar. 11, 2020)). Nor did the plaintiffs explain how the reliance was justifiable. *Id.* The Eleventh Circuit ultimately affirmed the district court's dismissal of the plaintiffs' fraud claims for failure to state a claim, finding the broad statements the plaintiffs made in their complaint regarding reliance insufficient. *See Fernau*, 847 F. App'x at 623–24 ("The plaintiffs have not satisfied Rule 9(b)'s heightened pleading requirements for their fraud claims because they have failed to allege with particularity the manner in which they relied on the defendants' statements and omissions." (citing *Wilding*, 941 F.3d at 1128 (quotations omitted))).

In the instant action, Plaintiffs provide no details about the specific misrepresentations that they relied on or—as in *Fernau*—how their reliance was justifiable. The only Plaintiff that provides additional detail regarding their alleged reliance is HBK. *See* [ECF No. 187 ¶¶ 767–72]. Specifically, HBK alleges that it relied on the fact that "(1) OSA had access to liquidity through a factoring facility; (2) OSA was 'in business with a reputable bank' and (3) Citigroup served as trustee and collateral agent of the 2008 Bonds and OSA's banker." *Id.* ¶ 768. HBK's allegations of reliance go much further than other Plaintiffs' allegations. Even so, HBK's pleadings also fail because it does not allege that its reliance was justifiable. *See In re Sahlen & Assocs., Inc. Sec. Litig.*, 773 F. Supp. 342, 352 (S.D. Fla. 1991); *see also HCM High Yield Opportunity Fund, LP v. Skandinaviska Enskilda Banken AB*, No. 99-1350-CIV, 2001 WL 36186526, at *11 (S.D. Fla. Dec. 14, 2001) ("The plaintiffs must allege that they actually relied on a particular document or misrepresentation and that

such reliance was justifiable, meaning that they would not have discovered the truth even by exercising reasonable diligence."). As each of the Plaintiffs fail to meet the heightened Rule 9(b) pleading requirements, Counts I[5] and III shall be dismissed.

**II.      Count II – Plaintiffs' RICO Conspiracy Claim**

"A plaintiff can establish a RICO conspiracy claim in one of two ways: (1) by showing that the defendant agreed to the overall objective of the conspiracy; or (2) by showing that the defendant agreed to commit two predicate acts." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1293 (11th Cir. 2010) (citations omitted). "The Eleventh Circuit has affirmed the dismissal of RICO claims where the allegations of conspiracy were merely conclusory and unsupported by any factual allegations." *Solomon v. Blue Cross and Value Shield Ass'n*, 574 F. Supp. 2d 1288, 1291–92 (S.D. Fla. 2008) (citing *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 950 (11th Cir. 1997)) (quotations omitted). Further, the United States Supreme Court in *Twombly*, "add[ed] a new bite to the RICO requirement that the Plaintiffs describe the agreement to conspire in the complaint." *Id.* at 1292 ("The Supreme Court explained that without that further circumstance pointing toward a meeting of the minds, an account of a defendant's commercial efforts stays in neutral territory. . . . The Supreme Court observed that the complaint mentioned no specific time, place, or person involved in the alleged conspiracies leaving the defendants little idea where to begin in formulating their answers.") (citations and quotations omitted).

In the instant action, Citigroup argues that Plaintiffs' RICO conspiracy claim fails because: (1) it is barred by Section 107 of the PSLRA; and (2) Plaintiffs fail to plead with specificity that Citigroup agreed to the overall objective of the conspiracy or that it agreed to commit two predicate

---

[5] Because Plaintiffs' RICO claim fails to meet the requisite pleading standard, the Court need not address whether Plaintiffs adequately allege a domestic injury and whether the Plaintiffs' RICO claim is barred by Section 107 of the PSLRA.

acts. [ECF No. 190 at 49–50]. Irrespective of whether Plaintiffs' RICO conspiracy claim is barred by Section 107 of the PSLRA, the Court agrees that Plaintiffs' TAC does not sufficiently plead an agreement to the overall objective of the alleged conspiracy or an agreement to commit two predicate acts.

To show an agreement between the alleged co-conspirators, Plaintiffs allege that Citigroup's agreement with OSA to engage in a pattern of racketeering activity can be reasonably inferred from:

> (1) their business relationship; (2) their mutual financial gain resulting from the pattern of racketeering activity; (3) Citigroup's and OSA's fraudulent misrepresentations and material omissions to Plaintiffs regarding OSA's financial attractiveness as an investment; (4) the dependency of the fraudulent acts of each on the fraudulent acts of the others for the success of the fraudulent scheme; (5) Citigroup's CEO's admission that at least one of Citigroup's employees was "criminally involved" in the fraudulent scheme, and that Citigroup had terminated approximately a dozen employees, both "inside and outside" of Mexico, who participated in the fraud; and (6) the findings of the Mexican authorities, including the CNBV, that Citigroup's agents, employees or representatives knowingly engaged in a fraudulent scheme with OSA.

[ECF No. 187 ¶ 1841]. However, the TAC falls short of the pleading standard specified by the Eleventh Circuit in *Am. Dental Ass'n* and the Supreme Court in *Twombly*.

### A.    Agreement to the overall objective of the conspiracy

According to the TAC, the purpose and objective of the alleged RICO activity were to "defraud[] Pemex through the submission of fraudulent and forged receipts and fraudulently induc[e] and lur[e] Plaintiffs to invest, and maintain their investment in, OSA in order to increase (1) cash flows to OSA; and (2) interest payments to Citigroup." *Id.* ¶ 1721. As the Court addressed above, Plaintiffs fail to sufficiently plead fraud because the allegations do not comply with Rule 9(b). Plaintiffs' conspiracy claim also fails, in part, on the same grounds—because Plaintiffs have not sufficiently alleged any misrepresentations by Citigroup on which they relied. *See Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1269 (11th Cir. 2004) ("We have already found that the

complaint failed to state a substantive RICO claim, and the RICO conspiracy adds nothing. . . . Because of this fatal pleading defect, the plaintiffs' RICO conspiracy claims are likewise unable to survive the defendants' motion to dismiss."); *see also Spain v. Brown & Williamson Tobacco Corp.*, 363 F.3d 1183, 1199 (11th Cir. 2004) ("If the underlying cause of action is not viable, the conspiracy claim must also fail."); *Am. Heritage Enters., Inc. v. Am. Paramount Fin., Inc.*, No. 10-cv-80921, 2011 WL 13225180, at *6 (S. D. Fla. July 5, 2011) ("As noted above, plaintiff's fraud allegations directed at [the defendant] are insufficient because they do not comply with Rule 9(b). [The plaintiff's] RICO claim is also deficient for the reasons noted above. Without particular allegations, the Court cannot infer that [the defendant] either committed fraud or agreed to commit fraud.").

Further, the Court cannot reasonably infer Citigroup's agreement to the overall objective of the alleged conspiracy based on the six (6) "activities" Plaintiffs reference. While the existence of a conspiracy "can be inferred from the conduct of the alleged participants or from circumstantial evidence of the scheme," *United States v. LeQuire*, 943 F.2d 1554, 1562 (11th Cir. 1991) (citations and quotations omitted), none of the activities referenced in Plaintiffs' TAC allow the Court to draw such an inference. Specifically, the first four of the six activities[6] are vague, conclusory, and do not support an inference that Citigroup "knowingly agreed to participate in the RICO conspiracy." *See Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 950–51 (11th Cir. 1997) (citing *O'Malley v. O'Neill*, 887 F.2d 1557, 1560 (11th Cir. 1989) (upholding the district court's dismissal of the plaintiff's RICO conspiracy claim because "there [were] no

---

[6] Alleging that an agreement between Citigroup and OSA can be reasonably inferred from: (1) their business relationship; (2) their mutual financial gain resulting from the pattern of racketeering activity; (3) Citigroup's and OSA's fraudulent misrepresentations and material omissions to Plaintiffs regarding OSA's financial attractiveness as an investment; and (4) the dependency of the fraudulent acts of each on the fraudulent acts of the others for the success of the fraudulent scheme. [ECF No. 187 ¶ 1841].

facts alleged that would indicate that [the defendants] were willing participants in a conspiracy"), *cert. denied*, 496 U.S. 926 (1990)); *Davidson v. Wilson*, 763 F. Supp. 1470, 1472 n.3 (D. Minn. 1991) (noting mere affiliation between corporate defendants is insufficient to establish agreement under § 1962(d)), *aff'd*, 973 F.2d 1391 (8th Cir. 1992)).

At best, all six of the alleged activities show that Citigroup should have known of the alleged scheme, not that it actually knew about or otherwise agreed to participate in it. For example, Plaintiffs rely on Citigroup's purported admission, via its then-CEO Michael Corbat, that at least one of Citigroup's employees was "criminally involved" in the fraudulent scheme and that additional employees "who participated in the fraud" were terminated. [ECF No. 187 ¶ 1841]; *see also* [ECF No. 83-4] (Memorandum from Michael Corbat). However, Plaintiffs' summary of Mr. Corbat's statement is misleading. His statement was that Citigroup terminated one employee "who [it] **believe[d] was directly involved in the fraud**."[7] [ECF No. 83-4 at 2] (emphasis added); *but see* [ECF No. 187 ¶ 172] (alleging that Citigroup fired the employee because he was "criminally involved" in the fraudulent scheme). Citigroup terminated eleven (11) other employees "whose **actions** or **inactions failed to protect [the] company** from [the] fraud." *Id.* (emphasis added). Corbat did not state that Citigroup employees were active participants in the fraud or that they knew their actions facilitated fraud. While Plaintiffs refer to and rely on a limited part of Corbat's statement, he also stated that "[w]e also said we would hold accountable any employee who enabled it, whether through lax supervision, circumvention of our controls, violations of our Code of Conduct, or otherwise." *Id.* Therefore, Corbat's statement does not clearly constitute an admission by Citigroup and Plaintiffs have not sufficiently pled that Citigroup agreed to the overall objective of the alleged conspiracy.

---

[7] Plaintiffs consistently misquote, and therefore mischaracterize, this passage throughout their TAC and Response to the Motion to Dismiss. *See* [ECF Nos. 187 ¶¶ 172, 1727, 1841, 1912, 1952; 194 at 17, 20, and 21].

**B.      Two predicate acts**

To establish that Citigroup committed two predicate acts in furtherance of the conspiracy, Plaintiffs allege that Citigroup submitted and accepted at least 166 fraudulent cash advances and made fraudulent misrepresentations and material omissions to Plaintiffs. [ECF No. 187 ¶¶ 1843–45]. However, Plaintiffs do not plead with particularity any material omissions or what fraudulent misrepresentations were made, by whom, where, when, or how. *See Brooks*, 116 F.3d at 1371; *see also Solomon*, 574 F. Supp. 2d at 1293 ("All of Plaintiffs' allegations regarding the agreement to conspire to commit mail and wire fraud are conclusory. The Complaint contains no date when an agreement took place. . . . The Complaint and RICO Case Statement contain no other allegations about who made the agreement, when the agreement was made, or how the Defendants made the agreement."); *Twombly*, 550 U.S. at 556–57 ("[A]n allegation of parallel conduct and a bare assertion of conspiracy will not suffice. Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality."). Instead, Plaintiffs reference nearly 460 pages of allegations[8], leaving the Court to discern the relevant allegations of misrepresentations and omissions. Plaintiffs' allegations are also vague and conclusory because they do not go beyond general allegations of fraudulent misrepresentations and material omissions. Moreover, they rely heavily on the actions of OSA and fail to specify the actions of Citigroup as to each Plaintiff.

Therefore, because Plaintiffs have not sufficiently pled that Citigroup agreed to commit two predicate acts or that Citigroup agreed to the overall objective of the alleged conspiracy, Plaintiffs fail to state a cognizable claim for RICO conspiracy. Accordingly, Count II shall be dismissed.

---

[8] Plaintiffs repeat and reallege paragraphs 1 through 1708 (pages 1–459) into Count II. [ECF No. 187 ¶ 1835].

### III.      Count IV – Plaintiffs' Common Law Aiding and Abetting Fraud Claim

"Under Florida law, to successfully plead the claim of aiding and abetting fraud, the plaintiff must allege the: (1) the existence of the underlying fraud; (2) knowledge of the fraud; and (3) the defendant provided substantial assistance to the commission of the fraud." *Codeventures, LLC v. Vital Motion Inc.*, 20-21574-CIV, 2021 WL 1131531, at * 5 (S.D. Fla. Mar. 24, 2021) (citing *Gilison v. Flagler Bank*, 303 So. 3d 999, 1002 (Fla. 4th DCA 2020) (quotations and brackets omitted). In the instant action, the parties do not dispute the existence of the underlying fraud. Thus, Plaintiffs' aiding and abetting claim turns on whether Citigroup had knowledge of the fraud and provided substantial assistance to the commission of the fraud. The Court addresses each in turn.

#### A.      Actual knowledge

As to the second element, "[i]n order for a claim of aiding and abetting to survive a motion to dismiss, the plaintiff must allege that the defendant had actual knowledge of the underlying wrongdoing. *Lamm v. State St. Bank & Tr. Co.*, 889 F. Supp. 2d 1321, 1332 (S.D. Fla. 2012) (hereinafter *Lamm I*), *aff'd sub nom. Lamm v. State St. Bank & Tr.*, 749 F.3d 938 (11th Cir. 2014) (hereinafter *Lamm II*). Plaintiffs allege that Citigroup had actual knowledge of the fraud because: (1) it knowingly approved false documentation submitted by OSA to Citigroup's ICG; (2) it had actual knowledge that OSA was making fraudulent misrepresentations and material omissions to its creditors, bondholders, and vendors; (3) it knowingly participated in OSA's fraud; (4) it admitted that it was responsible for the fraudulent scheme, showing that it agreed with OSA to commit fraud by making fraudulent misrepresentations and material omissions to its vendors, creditors, and bondholders; (5) CNBV[9] found that ten of Citigroup's employees had violated

---

[9] CNBV is the Mexican banking regulator, the *Comision Nacional Bancaria y de Valores*. *See* [ECF No. 187 ¶ 7].

Mexican criminal law by extending loans its officers knew the recipient(s) could not repay and because OSA's CEO and employees submitted forged documents to obtain cash advances from Citigroup; and (6) a Mexican criminal court issued arrest warrants against three Citigroup employees for the violations detailed in the CNBV report. [ECF No. 187 ¶¶ 1908–14]. Contrarily, Citigroup argues that Plaintiffs' pleadings merely suggest that Citigroup "disregarded red flags or atypical activities or transactions or that because of its relationship with OSA it must or should have known about the OSA fraud." [ECF No. 190 at 51] (quotations omitted).

The Court agrees that Plaintiffs' TAC does not sufficiently allege that Citigroup had actual knowledge of the underlying fraud. "[W]hile the element of actual knowledge may be alleged generally, the plaintiff still must accompany that general allegation with allegations of specific 'facts that give rise to a strong inference of actual knowledge regarding the underlying fraud.'" *Lamm I*, 889 F. Supp. at 1332 (citation omitted). While Plaintiffs' aiding and abetting fraud claims provides *some* particularity, the pleadings still fall short of alleging facts that would give rise to a strong inference that Citigroup had actual knowledge of the underlying fraud.

For example, Plaintiffs allege that Citigroup approved false documentation submitted by OSA to Citigroup's ICG as support for actual knowledge, but fail to allege *how* Citigroup knew the documents to be false or were otherwise forged, *when* such approvals occurred, *which* Citigroup employees approved the documents, etc. The same is true for Plaintiffs' argument that Citigroup actually knew that OSA's representations or omissions were fraudulent. Plaintiffs do not allege *how* or *when* Citigroup became aware of OSA's misrepresentations or omissions. Other than conclusory statements that Citigroup had actual knowledge, the pleadings suggest that Citigroup *should have known* that the documents were forged or that OSA's representations and material omissions were fraudulent, which does not satisfy the standard for aiding and abetting. *See id.*

("Conclusory statements that a defendant 'actually knew' [are] insufficient to support an aiding and abetting claim where the facts in the complaint only suggest that the defendant 'should have known that something was amiss.'") (quoting *Platinum Ests., Inc. v. TD Bank, N.A.*, No. 11-60670-CIV, 2012 WL 760791, at *3 (S.D. Fla. Mar. 8, 2012)).

Further, as the Court addressed in the preceding section, Plaintiffs' account of Citigroup's purported admission (that it was responsible for the fraudulent scheme via Corbat's message to Citigroup employees) is misleading. *See* [ECF No. 83-4]. While Corbat states that Citigroup terminated one employee, "who [it] **believe[d] was directly involved in the fraud**," he did not state that the employee had knowledge of the fraud. *Id.* at 2 (emphasis added). In fact, in the following sentence, Corbat states that "[Citigroup] would hold accountable any employee who enabled it, whether through lax supervision, circumvention of [the company's] controls, violations of [its] Code of Conduct, or otherwise." *Id.* While Plaintiffs point to this statement as an admission of fraud, it is not clear that it is so. As noted above, when read in its full context, a reasonable person could infer that Citigroup may have terminated employees because of their failure to identify the presence of fraud by properly enforcing or applying the safeguards Citigroup had in place. Therefore, the allegations do not lead this Court to draw a strong inference that Plaintiff had knowledge of the underlying fraud.

The Court is also unpersuaded by Plaintiffs' arguments regarding the Mexican government and CNBV's conclusions surrounding Citigroup employees' culpability with respect to Mexican criminal law. Mexican law does not necessarily mirror the standard this Court must apply. Thus, Plaintiff cannot merely rely on the conclusions of the Mexican government regarding Citigroup's knowledge of the underlying fraud and scheme. This Court must come to its own conclusion based on the allegations in the TAC and Florida and federal law. That said, for the reasons noted above

and based upon the pleadings, this Court is unable to draw an inference that Citigroup—whether through its agents or employees—had actual knowledge of the underlying fraud.

### B. Substantial assistance

As to the third element, the Court finds that Plaintiffs do not adequately allege that Citigroup provided substantial assistance to advance the commission of the fraud. "Substantial assistance occurs when a defendant affirmatively assists, helps conceal or fails to act when required to do so, thereby enabling the breach to occur." *Chang v. JPMorgan Chase Bank, N.A.*, 845 F.3d 1087, 1098 (11th Cir. 2017) (citation omitted). Citigroup argues, albeit without elaboration, that Plaintiffs have not sufficiently shown that it rendered substantial assistance because: (1) liability can only exist if the defendant knowingly renders substantial assistance; (2) providing basic banking services does not suffice; (3) Citigroup did not owe Plaintiffs a duty of disclosure; and (4) only scienter of the high conscious intent suffices. [ECF No. 190 at 51–52]. Contrarily, Plaintiffs argue that Citigroup's substantial assistance consisted of: (1) knowingly approving false documentation OSA submitted to the ICG; (2) violating its own internal controls relating to the cash advance facility; (3) allowing OSA to control the cash advance facility in violation of its own internal policies and procedures; (4) providing cash advances that exceeded the amounts of the underlying Pemex contracts; (5) increasing OSA's cash advance limits in violation of its internal policies and procedures; and (6) sanctioning OSA's false financial projections in financial statements, the Pareto Materials[10], and other communications and materials. [ECF No. 187 ¶ 1916].

[T]o establish that a bank substantially assisted a fraudulent scheme . . . knowledge of the

---

[10] "To solicit a trustee and investors for the 2013 Bond Issuance, Pareto prepared materials for distribution among potential trustees and investors. . . . The Pareto Materials include but are not limited to the presentations, credit models, term sheet, and offering memorandums discussed [throughout the TAC]." [ECF No. 187 ¶ 311].

underlying fraud is the crucial element." *Chang*, 845 F.3d at 1098. As the Court has already noted above, Plaintiffs insufficiently plead or otherwise show that Citigroup had actual knowledge of the underlying fraud. Despite Plaintiffs' contention that Citigroup had a "duty to disclose material omitted information, and correct misstatements made by others about which it was aware, regarding OSA's financial condition to Plaintiffs," [ECF No. 194 at 31], the Court cannot conclude that any such duty existed here. *See Chang*, 845 F.3d at 1098 (finding that the bank owed a fiduciary duty to the plaintiff because it *knew* of the funds being held in escrow and *of the underlying fraud*.). Further, Plaintiffs' argument that Citigroup failed to follow its own policies and procedures is also insufficient to establish knowledge. *See Isaiah v. JPMorgan Chase Bank, N.A.*, No. 16-CIV-21771, 2017 WL 5514370, at *3 (S.D. Fla. Nov. 15, 2017) ("Allegations that a bank failed to adhere to an appropriate standard of care or to follow relevant policies, procedures, or regulations are likewise insufficient to demonstrate actual knowledge for the purposes of an aiding and abetting claim.") (citing *Groom v. Bank of Am.*, No. 08-CV-2567, 2012 WL 50250, at *1 (M.D. Fla. Jan. 9, 2012)).

Accordingly, as Plaintiffs insufficiently plead the second and third elements for aiding and abetting—that Citigroup had actual knowledge of the underlying fraud and provided substantial assistance—Count IV shall be dismissed.

## IV.    Count V – Plaintiffs' Conspiracy to Commit Fraud Claim

To state a claim for conspiracy to commit fraud under Florida law, Plaintiffs must establish: "(a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff[s] as a result of the acts done under the conspiracy." *Cordell Consultant, Inc. Money Purchase Plan and Trust v. Abbott*, 561 F. App'x 882, 886 (11th Cir. 2014) (citing *Raimi v.*

*Furlong*, 702 So. 2d 1273, 1284 (Fla. Dist. Ct. App. 1997)). Despite arising under Florida law, Plaintiffs' civil conspiracy claim is subject to Rule 9(b)'s heightened pleading standard. *See Meridian Tr. Co. v. Batista*, No. 17-23051, 2018 WL 4693533, at *6 (S.D. Fla. Sep. 26, 2018) ("Conspiracy claims sounding in fraud must also meet Rule 9(b)'s heightened particularity requirements.") (citation and brackets omitted). Furthermore, "[g]eneral allegations of conspiracy are inadequate. A complaint must set forth clear, positive, and specific allegations of civil conspiracy." *Id.* (citing *Eagletech Commc'ns, Inc. v. Bryn Mawr Inv. Grp., Inc.*, 79 So. 3d 855, 863 (Fla. 4th DCA 2012) (quotations omitted).

Here, Citigroup argues that Plaintiffs do not sufficiently state a cause of action for conspiracy to commit fraud under Florida law because the TAC fails to plead specific facts supporting Plaintiffs' allegations that it agreed with OSA to defraud Plaintiffs. [ECF No. 190 at 52]. Plaintiffs argue that the Court should assume or infer that the parties agreed to commit the underlying fraud based on the "extensive allegations showing that [Citigroup] was an active participant in the fraud and [Citigroup's] knowledge of and participation in the fraud." [ECF No. 194 at 26]. Plaintiffs argue that this "necessarily constitutes an agreement to participate in the fraud against Plaintiffs with OSA." *Id.*

In further support of their argument, Plaintiffs cite to *Cordell*. *See* 561 F. App'x at 886. There, the Eleventh Circuit found that the plaintiff sufficiently stated particularized allegations that satisfied both the agreement and overt act elements when it alleged that: (1) two of the defendants advised the client to obtain a $7 million loan from the plaintiff knowing that the client would use false financial statements; (2) the client agreed and implemented the advice; and (3) the client joined the remaining two defendants—partners of the initial two defendants—who helped the client prepare and jointly submit false loan documents to the plaintiff in order to induce the

18

loan. *Id.* Notwithstanding this Court's earlier finding that Plaintiffs insufficiently plead an agreement between Citigroup and OSA with respect to the underlying fraud, the allegations in the TAC do not rise to the level articulated by the Eleventh Circuit in *Cordell*. Plaintiffs have not adequately alleged an agreement or overt act taken by Citigroup showing its intent to defraud Plaintiffs. Unlike *Cordell*, Plaintiffs fail to show that Citigroup had actual knowledge of OSA's misrepresentations and omissions. Instead, Plaintiffs state that the agreement can be inferred from Citigroup's: (1) degree of knowledge of the conspiracy's objective[11]; (2) acts committed in furtherance of the conspiracy[12]; (3) close association with OSA[13]; and (4) direct financial incentives. [ECF No. 184 ¶ 1951].

As with Plaintiffs' RICO and RICO conspiracy claims, the TAC's allegations for common law conspiracy to commit fraud do not satisfy Rule 9(b)'s heightened pleading requirements because Plaintiffs fail to allege with particularity who made the agreement, when the agreement was made, or how Citigroup made the purported agreement with OSA. *See Meridian Tr. Co.*, 2018 WL 4693533, at *9 (dismissing the plaintiff's civil conspiracy claims for failure to meet the heightened pleading requirements under Rule 9(b): "Aside from Plaintiffs' conclusory and unsupported assertions of an agreement, nowhere in the allegations cited above or in the Complaint do Plaintiffs provide any factual predicate to demonstrate that Itau 'agreed' with other defendants to defraud Plaintiffs"); *see also Jaffe v. Bank of Am., N.A.*, 667 F. Supp. 2d 1299, 1323 (S.D. Fla.

---

[11] As the Court has noted throughout, Plaintiffs have not sufficiently shown that Citigroup had knowledge of the underlying fraud.

[12] Each of the purported acts in furtherance of the conspiracy were alleged under Plaintiffs' aiding and abetting claim. *See* [ECF No. 187 ¶¶ 1915, 1951]. The Court found these alleged acts be insufficient to show that Citigroup substantially assisted in the underlying fraud.

[13] As the Court referenced under the analysis as to Plaintiffs' federal RICO conspiracy claim, mere affiliation between corporate defendants is insufficient to establish an agreement under 18 U.S.C. § 1962(d)). *See Davidson*, 763 F. Supp. at 1472 n.3; *see also Ferrell v. Durbin*, 311 F. App'x 253, 256 n.5 (11th Cir. 2009) ("[T]he Florida RICO statute is patterned after the Federal RICO statute and Florida RICO cases follow Federal RICO cases. Thus, the analysis of the Federal RICO claims is equally applicable to the Florida RICO claims.") (citing *Jackson*, 372 F.3d at 1263–64).

2009) ("Plaintiffs cannot prevail on their civil conspiracy theory because there is no evidence of any kind to support Plaintiffs' allegations that BoA and ABC entered into an agreement to defraud the Plaintiffs of money they put up to purchase a yacht.").

Finally, the bulk of Plaintiffs' allegations primarily rely on the actions of OSA. The Court addressed this very issue during its hearing on Citigroup's Motion to Dismiss the Second Amended Complaint. *See* [ECF No. 184]. Upon dismissing Plaintiffs' Second Amended Complaint, the Court noted that Plaintiffs must do a better job at alleging Citigroup's culpability based on its own actions, not just OSA's actions, and that it must provide specific details regarding Citigroup's actions as to each of the Plaintiffs. *Id.* at 48–49. Even so, Plaintiffs' pleadings fail yet again for this very reason. Accordingly, Count V shall be dismissed.

## V.   Counts VI and VII – Plaintiffs' Vicarious Liability Claims

"To state a claim based on vicarious liability, a plaintiff must set forth any ultimate facts that establish either actual or apparent agency." *Honig v. Kornfeld*, 339 F. Supp. 3d 1323, 1347 (S.D. Fla. 2018) (citation omitted). "Essential to the existence of an actual agency relationship is (1) acknowledgment by the principal that the agent will act for [them], (2) the agent's acceptance of the undertaking, and (3) control by the principal over the actions of the agent. . . . Conversely, apparent agency liability requires finding three essential elements: first, a representation by the principal to the plaintiff, which, second, causes the plaintiff reasonably to believe that the alleged agent is authorized to act for the principal's benefit, and which, third, induces the plaintiffs detrimental, justifiable reliance upon the appearance of agency." *Id.* at 1347–48 (citing *Franza v. Royal Caribbean Cruises, Ltd.*, 772 F.3d 1225, 1252 (11th Cir. 2014)) (quotations omitted). "To hold a principal liable for the [tort] of either an actual or apparent agent, a plaintiff must sufficiently allege the elements of agency in addition to the elements of the underlying [] act of the agent for

which the plaintiff seeks to hold the principal liable." *Id.* at 1348 (citation and quotations omitted).

Plaintiffs argue that Citigroup is vicariously liable for Banamex and Citibank N.A.'s ("Citibank")[14] fraudulent misrepresentations and material omissions. [ECF No. 187 ¶¶ 1961, 1973]. Citigroup does not dispute the existence of an actual or apparent agency relationship between Citigroup, as principal, and Banamex and Citibank, as its agents. Thus, the sufficiency of Plaintiffs' vicarious liability claims turns on whether Plaintiffs have sufficiently pled Citigroup's liability for the actions of Banamex and Citibank. Citigroup seeks dismissal of the two counts of vicarious liability under actual and apparent agency theories arguing: (1) Plaintiffs fail to show that OSA acted in furtherance of Citigroup's interests; (2) they are time-barred; and (3) Plaintiffs should be judicially estopped from now asserting their vicarious liability claims.

As noted above, Plaintiffs have sufficiently alleged an agency relationship between Citigroup, Banamex, and Citibank. Therefore, to survive the instant Motion to Dismiss, Plaintiffs need only allege the elements of the underlying acts of Banamex and Citibank for which they seek to hold Citigroup liable.[15] *See Honig*, 399 F. Supp. 3d at 1348 (citation omitted). Because Plaintiffs raise common law fraudulent misrepresentation claims, "[they] must allege facts which, if proven, are sufficient to show: (1) that the [agents] made a false statement concerning a specific material fact; (2) that the [agents] knew the statement was false; (3) that the [agents] intended the plaintiff[s] to [rely] on the statement; and (4) that the plaintiff[s] did rely on the statement to [their] detriment." *Meredith & Sons Lumber Co., Inc. v. Weyerhaeuser Co.*, No. 3:04CV283/RV, 2005 WL 8163302, at *3 (S.D. Fla. Oct. 26, 2005).

---

[14] Citibank, Citigroup's primary U.S. lending and banking entity, acted as trustee for the 2008 Bond Issuance. [ECF No. ¶ 26]. The 2008 Bond Plaintiffs consist of Plaintiffs Adar, Ashmore, Copernico, HBK, ICE, Moneda, and Waypont. *Id.* ¶ 264.

[15] The Court rejects Defendant's suggestion that Plaintiffs must show that Citigroup's agents' wrongdoing was done in furtherance of Citigroup's interests. While perhaps applicable in the employment context, as was the case in *Brown v. Zav*eri, 164 F. Supp. 2d 1354, 1361 (S.D. Fla. 2001), that is simply not the standard the Court must apply here.

Again, Plaintiffs' fraud claims are subject to Rule 9(b)'s heightened pleading requirements. Thus, Plaintiffs must "identify (1) the precise statements, documents or misrepresentations made; (2) the time and place of and persons responsible for the statement[s]; (3) the content and manner in which the statements misled the plaintiff[s]; and (4) what the [agents] [gain] by the alleged fraud." *W. Coast Roofing and Waterproofing, Inc. v. Johns Manville, Inc.*, 287 F. App'x 81, 86 (11th Cir. 2008) (citations omitted). In support of Count VII, The TAC alleges the following:

> Citigroup, particularly Citigroup employees such as Emilio Granja and Alfonso Ortega-Brehm, two senior ICG executives, and Louis Pisctelli, trustee of the 2008 Bond Issuance, made representations to Plaintiffs which caused Plaintiffs to reasonably believe that Citigroup's agents—employees of Banamex and Citibank—were authorized to act for Citigroup's benefit, including by introducing those employees as working for both Citigroup and Banamex or Citibank (e.g., supra ¶ 1491) and using joint Banamex/Citigroup letterhead and email signatures (supra ¶¶ 63-64). On information and belief, Citigroup intended for Plaintiffs to hold such reasonable belief.

[ECF No. 187 ¶ 1974]. To show reliance, the TAC further alleges the following:

> These representations by Citigroup induced Plaintiffs' reasonable and justifiable reliance upon the appearance of agency between (1) Citigroup as principal, which Plaintiffs recognized as a major international financial institution; and (2) Banamex and Citibank as agents. Plaintiffs further reasonably and justifiably relied on Banamex's and Citibank's fraudulent misrepresentations and material omissions through their employees and agents by deciding to do business or continue doing business with OSA.

*Id.* ¶ 1976. These allegations are insufficient because Plaintiffs fail to identify: (1) the fraudulent misrepresentations Banamex and/or Citibank made as agents of Citigroup; (2) the time and place of those misrepresentations; and (3) the specific misrepresentations on which Plaintiffs relied. *See Fernau*, 847 F. App'x at 622 (noting that plaintiffs' statements "[provide] no information about which of the specifically alleged misrepresentations and omissions, if any, induced them to purchase . . . or even whether they read the materials [] provided"); *see also Wilding*, 941 F.3d at 1128 (11th Cir. 2019) ("A bare allegation of reliance on alleged misrepresentations, bereft of any

22

additional detail, will not suffice under Rule 9(b).”). Therefore, Plaintiffs fail to sufficiently allege one or more of the heightened pleading requirements for Count VII.

As to Count VI, Plaintiffs offer no allegations in support of their vicarious liability claim for fraudulent misrepresentation based on actual agency. *See id.* ¶¶ 1959–70. Instead, Plaintiffs use most of the allegations in support of Count VI to establish an actual agency relationship between Citigroup, Banamex, and Citibank. *Id.* ¶¶ 1962–68. None of the allegations clearly identify the purported fraudulent misrepresentations, the individuals who made them, or the time, location, or manner of the fraudulent misrepresentations. Thus, Plaintiffs also fail to meet the heightened pleading requirements for Count VI.

Because Plaintiffs' vicarious liability claims for fraudulent misrepresentation based on actual and apparent agency fail to satisfy Rule 9(b)'s heightened pleading requirements, Counts VI and VII shall be dismissed. Thus, the Court need not address Citigroup's arguments regarding the applicable statute of limitations and judicial estoppel.

## CONCLUSION

Based on the foregoing, it is **ORDERED AND ADJUDGED** that Defendant Citigroup, Inc.'s Motion to Dismiss, [ECF No. 190], is **GRANTED** as follows:

(1) This action is **DISMISSED WITHOUT PREJUDICE**.[16]

(2) This action shall be **CLOSED**, and all pending motions, are **DENIED AS MOOT**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 25th day of August, 2023.

DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE

---

[16] There may be a sufficient basis to dismiss this action with prejudice since the Court previously dismissed the Second Amended Complaint because of similar pleading deficiencies. *See* [ECF No. 183]; *see also Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1057 (11th Cir. 2015) ("Three attempts at proper pleading are enough."). However, the Court will consider granting leave to amend upon the filing of a motion accompanied by a proposed Fourth Amended

Complaint that cures the deficiencies outline in this Order. Leave must be requested within twenty (20) days of this Order. Should the Court grant leave to file a Fourth Amended Complaint, Plaintiffs must do so "discretely and succinctly." *Weiland v. Palm Beach Cnty. Sheriffs Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015) (quoting *T.D.S. Inc. v. Shelby Mut. Ins. Co.*, 760 F.2d 1520, 1544 n.14 (11th Cir. 1985) (Tjoflat, J., dissenting)). Moreover, because the Court finds that dismissal is warranted as to all the Plaintiffs, the Court need not address Citigroup's argument regarding Plaintiff Nordic Trustee's standing.