**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Miami Division**

**Case No. 16-20725-CIV-GAYLES-TORRES**

**OTTO CANDIES, LLC, et al.**,

Plaintiffs,

v.

**CITIGROUP INC.**,

Defendant.

**PLAINTIFF NORDIC TRUSTEE'S OPPOSITION TO**
**<u>CITI'S MOTION TO DISMISS UNDER RULE 12(B)(1)</u>**

# TABLE OF CONTENTS

**Page**


INTRODUCTION ..... 1

FACTUAL BACKGROUND ..... 2

A. The Bond Agreement's Grant of Authority to Nordic Trustee and Citi's Direct Connection to the Bond Agreement and Bond Offering ..... 3

B. Nordic Trustee's Actions to Recover for the Bondholders After OSA's Collapse ..... 4

PROCEDURAL HISTORY ..... 4

LEGAL STANDARD ..... 5

ARGUMENT ..... 5

I. UNDER THE PLAIN LANGUAGE OF THE BOND AGREEMENT AND NORWEGIAN LAW, NORDIC TRUSTEE HAS STANDING TO BRING THIS LAWSUIT ..... 5

A. The Plain Language of the Agreement Establishes Nordic Trustee's Standing ..... 6

B. The *Thule* Decision's Holding That Nordic Trustee Had Standing to Sue Third Parties for Tort Claims Supports Nordic Trustee's Standing Here ..... 8

C. Citi's and Its Expert's Arguments Against Nordic Trustee's Standing Under Norwegian Law Are Unavailing ..... 10

D. Citi's Arguments About the Supposed Need for Bondholder-Specific Inquiries Are Both Irrelevant and Erroneous ..... 11

E. U.S. Cases Analyzing Similar Bond Agreements Confer Standing on the Bond Trustee ..... 13

II. NORDIC TRUSTEE'S AUTHORITY TO BRING CLAIMS ON BEHALF OF BONDHOLDERS ESTABLISHES ITS ARTICLE III STANDING UNDER U.S. LAW ..... 14

III. EVEN IF THE BOND AGREEMENT DOES NOT GIVE NORDIC TRUSTEE STANDING, THE BONDHOLDERS ASSIGNED THEIR CLAIMS TO NORDIC ..... 16

IV. IF THE COURT STILL QUESTIONS NORDIC TRUSTEE'S STANDING, IT SHOULD ACCEPT THE BONDHOLDERS' RATIFICATION OR JOINING OF THE BONDHOLDERS UNDER RULE 17(A)(3) ..... 18

CONCLUSION ..... 20

REQUEST FOR HEARING ..... 21

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Allstate Life Ins. v. Robert W. Baird & Co.*,
756 F. Supp. 2d 1113 (D. Ariz. 2010) ....................13

*Bank of America v. FDIC*,
908 F. Supp. 2d 60 (D.D.C. 2012) ....................15

*Cent. Bank of Denver v. Deloitte & Touche*,
928 P.2d 754 (Colo. App. 1996) ....................14

*Central Bank v. City of Fresno*,
1988 WL 60158 (9th Cir. June 16, 1988) (unpublished) ....................14

*Chernykh v. Korf*,
2011 WL 13223535 (S.D. Fla. Sept. 30, 2011) ....................19

*Class Plaintiffs v. City of Seattle*,
955 F.2d 1268 (9th Cir. 1992), *cert. denied*, 506 U.S. 953 ....................13

*Cont'l Bank v. Caton*,
1990 WL 129452 (D. Kan. Aug. 6, 1990) ....................14

*Continental Bank v. Village of Ludlow*,
777 F. Supp. 92 (D. Mass. 1991) ....................13, 15

*Corbett v. TSA*,
930 F.3d 1225 (11th Cir. 2019) ....................5

*CWCapital Asset Mgmt., LLC v. Chicago Props., LLC*,
610 F.3d 497 (7th Cir. 2010) ....................17, 19

*Delta Coal Program v. Libman*,
743 F.2d 852 (11th Cir. 1984) ....................20

*In re Engle Cases*,
767 F.3d 1082 (11th Cir. 2014) ....................19

*Fernandez v. Orlando Hous. Auth.*,
2016 WL 4382656 (M.D. Fla. Aug. 17, 2016) ....................18

*Fin-S Tech, LLC v. Surf Hardware Int'l-USA, Inc.*,
2014 WL 12461349 (S.D. Fla. Jan. 7, 2014) ....................18

*Giles v. Sun Bank, N.A.*,
450 So. 2d 258 (Fla. 5th DCA 1984) .......... 18

*Gross v. AT&T Inc.*,
2019 WL 3500496 (S.D.N.Y. July 31, 2019) (unpublished) .......... 15, 16

*Integon Life Ins. v. Browning*,
989 F.2d 1143 (11th Cir. 1993) .......... 19

*Keeton v. Gynecare Worldwide*,
2007 WL 9701139 (S.D. Fla. July 31, 2007) .......... 19

*Lance v. Wade*,
457 So. 2d 1008 (Fla. 1984) .......... 12

*Nat'l City Bank v. Coopers & Lybrand*,
409 N.W.2d 862 (Minn. App. 1987) .......... 14

*Otto Candies, LLC v. Citigroup Inc.*,
18-12663 (11th Cir. 2018) .......... 17

*Otto Candies, LLC v. Citigroup Inc.*,
23-13152 (11th Cir. 2023) .......... 17

*Premier Bank v. Tierney*,
114 F.Supp.2d 877 (W.D. Mo. 2000) .......... 14

*Regions Bank v. Blount Parrish & Co.*,
2001 WL 726989 (N.D. Ill. June 27, 2001) (unpublished) .......... 14

*Sprint Commc'ns Co. v. APCC Servs., Inc.*,
554 U.S. 269 (2008) .......... 14, 15, 16, 18

*UMB Bank v. City of Winooski*,
2018 WL 4080384 (D. Vt. Aug. 27, 2018) .......... 14, 15

*W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP*,
549 F.3d 100 (2d Cir. 2008) .......... 15, 16

*Ward v. Atl. Sec. Bank*,
777 So. 2d 1144 (Fla. 3d DCA 2001) .......... 12

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
623 F. Supp. 1466 (W.D. Wash. 1985) .......... 13

**Other Authorities**

Rule 12(b)(1) .......... 5

Rule 12(b)(6)....................................................................................................................4

Rule 17(a)(3)...........................................................................................................2, 18, 19

## INTRODUCTION

Citi's motion asks the Court to reject Nordic Trustee's right to bring claims on behalf of bondholders even though the Bond Agreement expressly grants that right, the Norwegian Supreme Court confirmed Nordic Trustee's right to bring such claims in materially identical circumstances, and the bondholders unanimously confirmed Nordic Trustee's right to do so in 2016 and in 2025. Citi provides no legal or equitable basis to pretend that the bondholders' claims have not properly been assigned to Nordic Trustee, nor does Citi cite any precedent suggesting that such an assignment does not suffice for Article III standing. Accordingly, Citi's motion should be denied.

*First*, Citi fails to confront the plain language of the Bond Agreement, which states that Nordic Trustee can "take every measure necessary to recover the amounts due under the Outstanding Bonds," D.E. 351-2 § 15.2, and "has power and authority to act on behalf of, and/or represent, the Bondholders, in all matters, included but not limited to taking any legal or other action," *id.* § 18.1(b). Citi attempts to evade this plain language by ignoring Section 15.2 and claiming Section 18.1 should not be taken "literally." MTD 11. Instead, Citi relies on a supposed strict construction rule under U.S. law, but Citi concedes that Norwegian law applies and there is undisputedly no such rule under Norwegian law. Indeed, Norwegian law recognizes a trustee's right to bring claims where, as here, such authority is provided for in the bond agreement, as discussed in the declaration of former Norwegian Supreme Court Justice Arne Ringnes. D.E. 371.

*Second*, Nordic Trustee's authority to bring claims, as provided under the Bond Agreement, establishes its Article III standing. Courts consistently recognize that a bond trustee with authority to bring claims on behalf of bondholders has standing to do so in U.S. courts. Indeed, Nordic Trustee's standing is especially clear here, given its interest and obligation in ensuring the 2013 bondholders are repaid, including through trust funds and bond collateral over which Nordic Trustee received a security interest. Citi's arguments regarding supposedly individualized issues

of domestic injury and reliance are a red herring. These issues do not matter under Norwegian law and do not matter to Article III standing. Regardless, the Court already held that Nordic Trustee sufficiently alleged a domestic injury, and the Eleventh Circuit already held that Nordic Trustee does not need to show reliance for its RICO claim and sufficiently alleged reliance for its fraud claim. This Court also authorized Nordic Trustee's Hague request for the bondholder information that Citi requested, and Nordic Trustee will produce documents to support the bondholders' reliance. Whether Nordic Trustee ultimately proves reliance through discovery, as with any of the Plaintiffs, is an issue for summary judgment or trial.

*Third*, even assuming *arguendo* that the Bond Agreement did not give Nordic Trustee standing, the 2013 bondholders assigned their claims to Nordic Trustee when Plaintiffs filed this lawsuit in 2016. Indeed, the bondholders agreed to a resolution instructing Nordic Trustee to initiate this litigation, set up and control an entity to fund the litigation, and prepare, negotiate, and finalize any agreement or document regarding the litigation.

*Finally*, if the Court still questions Nordic Trustee's standing after considering these arguments, it should accept the bondholders' ratification of Nordic Trustee as their representative or allow for substitution under Rule 17(a)(3).

## FACTUAL BACKGROUND

In 2013, Oceanografía ("OSA") issued $160 million in bonds to purchase an oil-servicing vessel called the Goliath. Third Am. Compl. ("TAC") ¶304. Under the Bond Agreement, Nordic Trustee serves as trustee of the issuance, acts on behalf of and represents the interests of all the 2013 bondholders, and "is responsible for enforcing the bondholders' rights, including collecting on the bond and pursuing their claims in litigation." TAC ¶349. Nordic Trustee represents Moneda and HBK, who are also Plaintiffs based on their 2008 bonds. TAC ¶¶33, 35, 42.

### A. The Bond Agreement's Grant of Authority to Nordic Trustee and Citi's Direct Connection to the Bond Agreement and Bond Offering

The Bond Agreement states that Nordic Trustee "has power and authority to act on behalf of, and/or represent, the Bondholders, in all matters, included but not limited to taking any legal or other action." D.E. 351-2 § 18.1(b). That authority is in addition to Nordic Trustee's ability to "take every measure necessary to recover the amounts due under the Outstanding Bonds," which is granted in a separate section of the agreement addressing Events of Default. *Id.* § 15.2. The Bond Agreement is governed by Norwegian law. *Id.* § 18.7.1.

Citi's subsidiary and agent Banamex is discussed in the Bond Agreement as the "Fiduciary Bank" and "trustee" of a trust meant to ensure the 2013 bondholders received payment (the "Mexican Trust"). *Id.* § 1.1 (p.4); TAC ¶¶159-61. Under the Mexican Trust agreement, Banamex (a signatory) was supposed to receive payments meant for OSA from Pemex for leasing the Goliath and, if OSA did not make its bond interest or principal payments on time, release those funds to Nordic Trustee, which held a security interest in them and the Goliath. TAC ¶¶355, 360-61; D.E. 351-2 §§ 1.1 (p.11), 13.7.1-13.7.2, 17.4.1; D.E. 370-1 §§ 1 (p.11), 4(b), 7(a)-(c). The Mexican Trust had two bank accounts to receive the Pemex funds: one for U.S. dollars at Citibank (Citi's U.S. banking subsidiary) and one for Mexican pesos at Banamex. TAC ¶364.

As part of the 2013 bond issuance, Citi provided information and documents to Pareto, the manager of the issuance, about the Mexican Trust. TAC ¶312. Pareto then used that information to prepare materials to market the offering, including presentations that explained the Mexican Trust structure with Banamex and the protections it provided to bondholders. TAC ¶¶313, 332. Those materials omitted information about the cash advance fraud. TAC ¶314. Citi's role in the Mexican Trust was critical to the success of the 2013 bond issuance. TAC ¶307. It provided comfort to the 2013 bondholders that, if OSA defaulted on its payments to the bondholders, Nordic

Trustee would receive payment from the Mexican Trust for the bondholders' benefit. TAC ¶308.

### B. Nordic Trustee's Actions to Recover for the Bondholders After OSA's Collapse

On February 28, 2014, OSA collapsed due to its cash advance fraud with Citi. TAC ¶177. Nordic Trustee declared an event of default, took title to the Goliath, and arranged additional bond issuances to pay for enforcement actions. TAC ¶1062. Nordic Trustee represented the 2013 bondholders in the Mexican bankruptcy proceeding to claim charter fees under the Mexican Trust and in court proceedings in the Bahamas related to the Goliath. D.E. 370-2, 370-3.

As part of the recovery process, in 2016, the bondholders "instruct[ed] the Bond Trustee to initiate litigation" as the named Plaintiff against third parties, set up and control a special purpose vehicle to fund this litigation, and "prepare, negotiate, finalize and enter into … any agreement or other document regarding … the contemplated litigation process." D.E. 370-4 §§ 2.1-2.2, 5; D.E. 351-2 § 16.1.3 ("Resolutions passed at Bondholders' Meetings shall be binding upon all Bondholders"). In 2025, the bondholders confirmed Nordic Trustee's representation in a resolution that stated: "We, the Bondholders, hereby confirm and approve that the Bond Trustee is granted all necessary rights and authorization to continue to pursue the claims in the US Litigation Proceedings and agree to be bound by the US Litigation Proceeding's result, including any judgment, decision, or order made with respect to the claims." D.E. 370-5 § 4(i).

## PROCEDURAL HISTORY

Plaintiffs filed this case over 10 years ago. D.E. 1. This is Citi's sixth attempt to dismiss Plaintiffs' claims. D.E. 50, 80, 161, 190, 225, 350. Its prior five attempts have been unsuccessful after two Eleventh Circuit reversals and this Court's ruling on RICO. D.E. 145, 215, 361. Citi first raised Nordic Trustee's standing over six years into the case as part of its fourth motion to dismiss under Rule 12(b)(6). D.E. 190 at 13-15. The Court did not rule on the argument and Citi did not raise it in the Eleventh Circuit as an alternative ground for dismissal. MTD 5. On remand,

the Court ruled that Citi could make the argument under Rule 12(b)(1). D.E. 330 at 102-03.

During discovery, Citi requested information on the 2013 bondholders from Nordic Trustee, which the Court granted. D.E. 277. In response, and pursuant to Norwegian confidentiality laws, in April 2026, Nordic Trustee requested and the Court authorized the disclosure of that information from Euronext (Norway's securities depository) under the Hague Convention. D.E. 311. Nordic Trustee expects to hear back over the coming months. The parties otherwise agreed to stay discovery as to Nordic Trustee until this motion is resolved. D.E. 329 ¶6.

## LEGAL STANDARD

Courts typically confine a Rule 12(b)(1) standing analysis to the complaint, but may look beyond it when there are facts in the record. *Corbett v. TSA*, 930 F.3d 1225, 1235 (11th Cir. 2019).

## ARGUMENT

### I. UNDER THE PLAIN LANGUAGE OF THE BOND AGREEMENT AND NORWEGIAN LAW, NORDIC TRUSTEE HAS STANDING TO BRING THIS LAWSUIT

As Citi notes, courts analyzing whether a bond trustee has standing look to the bond agreement. MTD 7. Citi also correctly concedes that Norwegian law governs the interpretation of the Bond Agreement here. MTD 2. Notwithstanding this concession, Citi predicates its interpretation of the Bond Agreement on a supposed strict construction rule under U.S. law. MTD 8. However, Citi does not argue—nor could it—that Norwegian law adopts a strict construction rule for the interpretation of assignment of rights to bring claims under bond agreements. Rather, Citi's own Norwegian law expert confirms that the Bond Agreement here should be interpreted based on its objective language (in conjunction with the parties' purpose, as reflected in the agreement) and Norwegian precedents. Perland Decl. ¶¶24-27; *see also* MTD 9 ("Norwegian principles of contract interpretation are based on an objective reading of the contract, asking how an ordinary reasonable person in the parties' place and in a similar context would have understood

the language used.”). As discussed below, the plain language of the provisions at issue and Norwegian precedents both strongly support Nordic Trustee’s standing.

**A. The Plain Language of the Agreement Establishes Nordic Trustee’s Standing**

The Bond Agreement here, which binds all of the 2013 bondholders (D.E. 351-2 § 2.1.1), grants Nordic Trustee broad authority to bring any legal claims on their behalf. “[T]he Bond Trustee has power and authority to act on behalf of, and/or represent, the Bondholders, in all matters, included but not limited to taking any legal or other action.” *Id.* § 18.1(b). Nordic Trustee’s authority to represent the bondholders in “all matters” related to the bonds, including in “any” lawsuits, encompasses claims related to the bonds against parties other than the bond issuer. That authority is in addition to Nordic Trustee’s ability to bring suits to collect on the bonds, which is granted in a separate section of the agreement addressing Events of Default. *Id.* § 15.2 (Nordic Trustee can “take every measure necessary to recover the amounts due under the Outstanding Bonds”). Accordingly, the plain language of the Bond Agreement grants Nordic Trustee standing to bring not only claims to collect on the bonds, but also tort claims related to the bonds against third parties for the benefit of the bondholders, such as this lawsuit against Citi for fraud and RICO.

Citi ignores the language of Section 15.2 entirely, which plainly covers the claims at issue here, as it concerns a measure necessary to recover amounts due. As to Section 18.1(b), Citi says (MTD 11) that Nordic Trustee’s right to pursue “all matters” for the bondholders should not be read “literally” because then it could apply to personal injury claims. This argument is disingenuous at best—the provision plainly concerns matters related to the bonds, and under any interpretation of “all matters,” it would cover the matter at issue here, which concerns recovery of the interests under the Bond Agreement. Citi also argues (MTD 12) that “the types of claims potentially subject to [Sections 17.1.2 and 18.1] must be those that concern or are ‘pursuant to the terms of [the] Bond Agreement,’” but that is false. The language Citi quotes comes from Section

17.1.2, but does not exist in Section 18.1.

Citi further argues (MTD 11-12) that Section 18.1(b) supposedly limits Nordic Trustee to bringing claims "common" to the bondholders because it is entitled, "The community of Bondholders," but the Bond Agreement states that "headings are for ease of reference only." D.E. 351-2 § 1.2(a). Looking into Section 18.1, it begins, "By virtue of holding Bonds … a community exists between the Bondholders." Stated differently, by owning bonds (a shared or common feature), the bondholders are part of a "community." The section continues that a community "impl[ies], inter alia, that: … (b) [Nordic Trustee] has power … to act on behalf of … the Bondholders, in all matters, includ[ing] … taking any legal … action." Simply put, there is nothing limiting the claims Nordic Trustee can bring under Section 18.1 on behalf of the bondholders.

Finally, Citi relies (MTD 8-10) on the "no action" clause stating that Bondholders "may not, based on this Bond Agreement, act directly towards the Issuer and may not themselves institute legal proceedings against the Issuer, however not restricting the Bondholders to exercise their individual rights derived from this Bond Agreement." D.E. 351-2 § 18.1(d)(ii). However, Citi's reliance on the "no action" clause is misplaced for three reasons. *First*, even assuming *arguendo* that the clause allowed for individual bondholder actions, that would show at most that bondholders could also bring an individual action; it would not change the plain language in Sections 18.1(b) and 15.2 establishing that Nordic Trustee has the authority to bring the claims at issue here. *Second*, as discussed below, under binding Norwegian precedent, this provision does not alter Nordic Trustee's authority to bring claims on the bondholders' behalf. *Third*, the bondholders gave up the right to bring individual actions by assigning their claims and ratifying that assignment. *Infra* Sections III-IV. Thus, whatever rights individual bondholders might have had, there is no question that those rights belong to Nordic Trustee now.

### B. The *Thule* Decision's Holding That Nordic Trustee Had Standing to Sue Third Parties for Tort Claims Supports Nordic Trustee's Standing Here

Norwegian law directly on point confirms Nordic Trustee's standing here. In *Thule III*, the Norwegian Supreme Court interpreted a bond agreement between Thule Drilling and Nordic Trustee, which brought claims against third parties to the agreement – a consulting firm for the company (Brutel AS), the company's directors and officers, and the CEO of a company that guaranteed the loans (Norinvest Ltd.). Ringnes Decl. ¶¶49-50. The tort claims included providing false information when the bonds were restructured and breach of fiduciary duties. *Id.* Like Citi, the *Thule* defendants argued that Nordic Trustee did not have standing to sue on the bondholders' behalf. *Id.* ¶51. Also like Citi, the *Thule* defendants' rationale was that the "no action" clause did not apply to claims against third parties, the injuries were not common to all the bondholders, and individual lawsuits would ensure better disclosure of the bondholders' identity. *Id.* ¶¶53-54.

In a unanimous decision among the five Justices, the Norwegian Supreme Court held that Nordic Trustee had standing to bring tort claims against third parties. *Id.* ¶64. The Court found that the bond agreement clause stating that "the trustee may take any steps it considers necessary 'to recover the loan' and other outstanding amounts under the loan agreement" included steps toward those other than the borrower where it may lead to the bondholders receiving coverage. *Id.* ¶62. The Court explained, "one of the purposes of the trustee arrangement is precisely to protect the interests of the bondholders when difficulties arise in the lending relationship. It would sit poorly with that purpose if the bondholders themselves were required to protect their interests where the trustee considers that there are grounds for holding persons associated with the borrower liable for non-performance." *Id.*

The Court also found that "the principle of equal treatment of bondholders is a weighty consideration … [for] permitting the trustee to act on bondholders' behalf." *Id.* ¶59. The Court

explained that "if each bondholder were required to pursue its own claim, this could favor those bondholders with the greatest resources and knowledge and could result in a race to obtain a basis for enforcement and attachment." *Id.* The Court further noted the strong practical need for the trustee to be able to file a lawsuit. *Id.* ¶60. The Court explained, "it would also be irrational for the judiciary, plaintiffs and defendants if bondholders' claims had to be processed in several parallel or successive lawsuits instead of being coordinated." *Id.* The Court continued, "this would inevitably lead to increased and unevenly distributed litigation costs, possible procedural complications and the risk of discrimination, to name a few." *Id.*

The Court rejected the defendants' arguments. The Court found that under the "no action" clause, "the fact that the bondholders possess standing in their own right cannot … preclude them from entrusting Nordic Trustee with the pursuit of damages claims." *Id.* ¶63. The Court also found that differences between the bondholders due to secondary market trading or contributory negligence should not prevent "joint proceedings with the trustee acting as plaintiff." *Id.* ¶58. The Court further noted that arguments regarding disclosure of the bondholders had "limited weight" because plaintiffs must provide access to evidence, and if defendants so request, courts can order the Norwegian Central Securities Depository to disclose who the bondholders are. *Id.* ¶61.

Here, former Norwegian Supreme Court Justice Arne Ringnes has analyzed the Bond Agreement in the context of the *Thule* cases. He explains that Nordic Trustee has standing to bring the fraud and RICO claims against Citi. *Id.* ¶¶68-103. He notes the Court's finding in *Thule II* that Nordic Trustee is a "claim holder" under the Norwegian Bankruptcy Act. *Id.* ¶¶88-89. He further notes that in *Thule III*, the Court relied on section 15.2 of the bond agreement, which stated that Nordic Trustee can "take every measure necessary to recover the loan," to find that Nordic Trustee had standing. *Id.* ¶103. The Bond Agreement here has a similar Section 15.2, and includes

Section 18.1(b), which Justice Ringnes finds "formulates the authority of the Trustee in an even broader and more precise legal manner, and states in text what *Thule III* confirmed in law." *Id.*

With respect to the "no action" clause, Justice Ringnes finds that "*in principle* an individual bondholder may not be contractually *precluded* from making a separate claim against a third party. But, despite this, it is incompatible with the rationale of the bondholder community and the broad powers vested in the Trustee under Clause 18.1(b) that the initiative to bring fraud claims against third parties rests with the individual bondholders." *Id.* ¶119. Justice Ringnes further notes that the "no action" clause is meant to preserve the bondholders' individual rights against the issuer, such as each bondholder's right to require OSA to redeem the bonds if a change of control event occurs. *Id.* ¶¶128-29. Therefore, Justice Ringnes concludes that "the Trustee has *the primary right and obligation* to bring claims against third parties that relate to the bondholders." *Id.* ¶120.

**C. Citi's and Its Expert's Arguments Against Nordic Trustee's Standing Under Norwegian Law Are Unavailing**

Citi attempts to distinguish *Thule* on irrelevant factual grounds. Citi argues (MTD 19) that the defendants in *Thule* were "closely associated with (and indeed controlled) the issuer," whereas Citi is "unconnected to and independent" from OSA. However, as noted above, the *Thule* defendants were not just the issuer's directors and officers, but a consulting firm (Brutel AS) and the CEO of a company that guaranteed the loans (Norinvest Ltd.), neither of which "controlled" the issuer. Moreover, Citi was "closely associated" with OSA. Its subsidiary and agent, Banamex, is named in the Bond Agreement as the "Fiduciary Bank" and "trustee" of the Mexican Trust, which was meant to ensure that the bondholders received their interest and principal payments. D.E. 351-2 § 1.1 (p.4); TAC ¶¶159-61. Citi also loaned OSA over $3 billion, acted as trustee for OSA's 2008 bond issuance, drafted investor presentations for OSA, and advised OSA on acquisitions. TAC ¶¶74, 208-52. Most importantly, Citi conspired with OSA to commit the fraud

that caused the company to collapse and the bondholders' losses. TAC ¶177. That interdependent relationship is even closer than the defendant/company relationship in *Thule*. In any event, there is nothing in *Thule* limiting its reasoning to this scenario and nothing in the Bond Agreement here limiting Nordic Trustee's authority based on the identity of the defendant.

Citi also argues (MTD 19) that the Court in *Thule* "stressed that the claims concerned bondholders' similar interests" and that permitting the trustee to sue would ensure equal treatment of their "equivalent claims." However, as noted above, *Thule* actually said the opposite, stating that differences between the bondholders' claims, such as secondary market trading or contributory negligence, should not prevent a joint trial with the trustee as plaintiff. Nowhere in Section 18.1 or in *Thule* is there a statement or support for Citi's argument (MTD 11-12) that the bond trustee can only pursue claims that are the same for all bondholders.

Citi further argues (MTD 20) that *Thule* said the bond agreement's "no action" clause permitted actions against third parties and that this retained right is somehow "fatal" to Nordic Trustee's standing. But Citi omits the very next sentence of the decision, which, as noted above, states, "the fact that the bondholders possess standing in their own right cannot … preclude them from entrusting Nordic Trustee with the pursuit of damages claims." Ringnes Decl. ¶63.

### D. Citi's Arguments About the Supposed Need for Bondholder-Specific Inquiries Are Both Irrelevant and Erroneous

Citi argues (MTD 13-14) that the bondholders must directly bring claims because of individual fact questions like domestic injury and reliance. However, as discussed above, *Thule* expressly rejected the idea that such individualized inquiries preclude Nordic Trustee's authority to bring claims on behalf of bondholders. In any event, this argument also fails on its own terms.

The Court already held that Nordic Trustee sufficiently alleged a domestic injury, D.E. 361 at 14-39, and discovery will not change the outcome. One of the largest 2013 bondholders is HBK,

whose injury the Court found "clearly arose in the United States." *Id.* at 17; TAC ¶45. Another 2013 bondholder, Moneda, has U.S. investors, purchased its bonds through a U.S. brokerage account, and attended U.S. marketing meetings two months before investing. D.E. 361 at 37-38. And importantly, an "American entity – Citigroup – is the defendant/co-conspirator." *Id.* at 33.

The Eleventh Circuit also already held that Nordic Trustee does not need to show reliance for its RICO claim and sufficiently alleged reliance for its fraud claim, including because there is no heightened standard based on "holding" an investment. D.E. 215 at 48, 52-55, 57-58. Citi argues that Nordic Trustee will need to show specific reliance through discovery, but its Florida cases are inapposite. *See Lance v. Wade*, 457 So. 2d 1008, 1009 (Fla. 1984) (holding that fraud on ~350 separate and distinct contracts could not be a basis for a class action); *Ward v. Atl. Sec. Bank*, 777 So. 2d 1144, 1146 (Fla. 3d DCA 2001) (reversing summary judgment on fraud claim because the question of whether a bank's internal memoranda showed that employees were aware of issues with an investment was for the jury).

Citi further argues (MTD 14) that Nordic Trustee does not possess or have access to the information needed to adjudicate the bondholders' claims.[1] However, this Court authorized Nordic Trustee's Hague request for the bondholder information that Citi requested, including the identity and residence of each bondholder for purposes of domestic injury, the holdings of each bondholder as of February 28, 2014 to determine the investors when OSA collapsed, and any contemplated transactions for purposes of reliance. D.E. 311 at 17. Nordic Trustee expects to hear back over the coming months. Citi also already knows two 2013 bondholders discussed in the Complaint, HBK and Moneda, who are also Plaintiffs based on their 2008 bonds. TAC ¶¶33, 35, 42. During discovery, Plaintiffs' counsel has identified other 2013 bondholders. Together, these bondholders hold most of the 2013 bonds. Nordic Trustee will produce documents to support

[1] Nordic Trustee did not say it is pursuing Norwegian claims, as the Court recognized. MTD 15.

the 2013 bondholders' reliance, including the investor materials, meeting information, and emails for HBK and Moneda that Citi discusses. MTD 3-4. Whether Nordic Trustee ultimately proves reliance through discovery, as with any of the Plaintiffs, is an issue for summary judgment or trial.

**E. U.S. Cases Analyzing Similar Bond Agreements Confer Standing on the Bond Trustee**

While Norwegian law governs here, it is also worth noting that the broad authority conferred upon Nordic Trustee in the Bond Agreement is analogous to language in bond agreements that U.S. courts consistently have recognized as sufficient to permit bond trustees to pursue bondholder claims, including state fraud and federal claims against third parties. For example, in *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1280 (9th Cir. 1992), *cert. denied*, 506 U.S. 953, the Ninth Circuit held that a bond agreement gave the trustee standing to bring state tort and federal claims against third parties on the bondholders' behalf because the agreement stated that the trustee could not only bring suits to collect on the bonds but also enforce "any other legal or equitable right" of the bondholders. The district court reached the same conclusion in rejecting a similar challenge by the defendants in the underlying multi-district litigation. *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 623 F. Supp. 1466, 1483-84 (W.D. Wash. 1985).

Similarly, *Continental Bank v. Village of Ludlow*, 777 F. Supp. 92, 97-98 (D. Mass. 1991), held that the bond agreement gave the trustee standing to bring state fraud and federal claims against third parties on the bondholders' behalf because the agreement stated that the trustee could pursue not only suits to collect on the bonds but also any "other appropriate proceeding in law or in equity to obtain other appropriate relief." *Allstate Life Ins. v. Robert W. Baird & Co.*, 756 F. Supp. 2d 1113, 1123, 1150-52 (D. Ariz. 2010), also held that the bond agreement gave the trustee standing to bring state fraud claims against third parties, including the bond underwriters and the law firms that drafted the offering documents, on behalf of the bondholders because the agreement

stated that the trustee has power to enforce "all rights" and "any other remedy" of the bondholders.[2]

In contrast, the agreements at issue in Citi's cases do not contain broad language giving a trustee authority to enforce bondholders' rights beyond just collecting the principal or interest on the bonds or enforcing provisions of the bond agreement. For example, *Central Bank v. City of Fresno*, 1988 WL 60158, at *1-2 (9th Cir. June 16, 1988) (unpublished), held that a bond agreement stating that the trustee had the power to enforce "action[s] … under this indenture or under any of the bonds" was only intended to remove "procedural barriers to remedies already vested in the trustee." Similarly, the bond agreement in *Regions Bank v. Blount Parrish & Co.*, 2001 WL 726989, at *2 (N.D. Ill. June 27, 2001) (unpublished), stated that the trustee may only pursue "remed[ies] … to collect the principal … or interest on the bonds or to enforce the performance of any provision of … this indenture."[3]

## II. NORDIC TRUSTEE'S AUTHORITY TO BRING CLAIMS ON BEHALF OF BONDHOLDERS ESTABLISHES ITS ARTICLE III STANDING UNDER U.S. LAW

Given the undisputed applicability of Norwegian law, the only question under U.S. law is whether Nordic Trustee's right, under the Bond Agreement and Norwegian law, to bring the claims at issue suffices for Article III standing. Under well-established law, it does.

As the Supreme Court has recognized, "federal courts routinely entertain suits which will result in relief for parties that are not themselves directly bringing suit." *Sprint Commc'ns Co. v. APCC Servs., Inc.*, 554 U.S. 269, 287 (2008). For example, common law "trustees bring suits to benefit their trusts." *Id.* Those "trustees hold legal title to the assets in the trust estate and have

[2] *See also UMB Bank v. City of Winooski*, 2018 WL 4080384, *8-9 (D. Vt. Aug. 27, 2018) (trustee had standing to sue third party for tort where agreement gave "full rights" to protect the collateral).

[3] *See also Premier Bank v. Tierney*, 114 F.Supp.2d 877, 881 (W.D. Mo. 2000) ("action[s] … under this … indenture … or … the bonds"); *Cont'l Bank v. Caton*, 1990 WL 129452, at *4 (D. Kan. Aug. 6, 1990) (same); *Cent. Bank of Denver v. Deloitte & Touche*, 928 P.2d 754, 756 (Colo. App. 1996) ("remed[ies] … [for] principal … and interest"); *Nat'l City Bank v. Coopers & Lybrand*, 409 N.W.2d 862, 866 (Minn. App. 1987) (actions "on the notes" or "under the indenture").

an independent fiduciary obligation to sue to preserve those assets. The trustee's discharge of its legal obligation is an independent, personal benefit that supports the trustee's standing to sue in federal court." *Id.* at 304 n.2 (Roberts, J., dissenting). A bond trustee may have similar duties and obligations under a bond agreement, including when it takes title to the bond collateral on default pursuant to a security interest for the benefit of the bondholders.

Indeed, courts consistently recognize that bond trustees have Article III standing where, as here, the bond agreement gives the trustee the right to pursue claims on behalf of the bondholders. For example, *Continental Bank*, 777 F. Supp. at 98, found that the bond trustee had an interest in whether third parties paid on contracts because the bondholders may not have been reimbursed otherwise. The court therefore held that "nothing other than an actual default could qualify as a more personal stake in the outcome of the case" for the trustee and thus it suffered an injury in fact under Article III. *Id.* *UMB Bank*, 2018 WL 4080384, at *9, also found that a third party's actions that decreased the value of the bond collateral and the trustee's expense to keep the collateral viable constituted an injury in fact to the trustee under Article III. *Bank of America v. FDIC*, 908 F. Supp. 2d 60, 85-86 (D.D.C. 2012), likewise found that a bond trustee had Article III standing where it had a security interest in the claims being pursued in the lawsuit, such that the trustee was equivalent to an assignee. Notably, none of those cases involved the bondholders' waiver of claims against third parties, as Citi argues (MTD 8, 20) is necessary. Rather, as here, they concern simply a broad right for a trustee to pursue claims on behalf of bondholders.

Citi argues (MTD 20) that the bondholders retain the substantive right to sue and thus Nordic Trustee lacks Article III standing, citing *Gross v. AT&T Inc.*, 2019 WL 3500496 (S.D.N.Y. July 31, 2019) (unpublished) (citing *W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP*, 549 F.3d 100 (2d Cir. 2008)). In *Gross*, the court denied a motion to reconsider its ruling that an asset

manager not be lead plaintiff in a securities class action because, under the management agreements with its funds, there was a risk it lacked a property interest in the claims. *Id.* at *2-3. In *Huff*, the court held that an investment advisor with discretionary authority to make investment decisions for its clients, and a power of attorney ("POA") from its clients to bring a lawsuit, lacked standing to bring federal securities claims on behalf of its clients because the POA did not transfer an ownership interest in the claims. 549 F.3d at 109. Those cases' focus on asset managers and investment advisors is inapposite to cases where trustees bring claims on behalf of bondholders.

Moreover, Nordic Trustee has Article III standing not only based on its right to bring claims under the Bond Agreement, but also based on the rights and interests the agreement granted to Nordic Trustee. The Bond Agreement grants Nordic Trustee a security interest in both the charter payments from Pemex meant to ensure the bondholders received their interest and principal payments under the Mexican Trust, and the vessel serving as collateral for the bonds. TAC ¶¶160, 355; D.E. 351-2 §§ 1.1 (p.11), 13.7.1-13.7.2, 17.4.1; D.E. 370-1 §§ 1 (p.11), 4(b), 7(a)-(c). Consistent with its more active role in the Norwegian high-yield bond market, Ringnes Decl. ¶39, Nordic Trustee has the exclusive right to enforce that collateral and took title to it on OSA's default, TAC ¶1062. Indeed, Nordic Trustee's claim in the Mexican bankruptcy was for the charter payments, D.E. 370-2, which it can pursue against Citi as alternative damages. Nordic Trustee thus had "an independent fiduciary obligation to sue to preserve those assets" and its "discharge of its legal obligation is an independent, personal benefit that supports [its] standing." *Sprint*, 554 U.S. at 304 n.2.

**III. EVEN IF THE BOND AGREEMENT DOES NOT GIVE NORDIC TRUSTEE STANDING, THE BONDHOLDERS ASSIGNED THEIR CLAIMS TO NORDIC**

If there were any doubt about Nordic Trustee's standing, that doubt was eliminated when the bondholders assigned their claims to Nordic Trustee. As a matter of law, an assignment of

claims suffices to provide the assignee with Article III standing. *E.g.*, *Sprint*, 554 U.S. at 289. Indeed, in this very litigation, the Eleventh Circuit and this Court have repeatedly recognized assignments of claims. D.E. 361 at 44; *Otto Candies, LLC v. Citigroup Inc.*, 18-12663 (11th Cir. 2018), D.E. 14, 25; *Otto Candies, LLC v. Citigroup Inc.*, 23-13152 (11th Cir. 2023), D.E. 29, 30.

The 2013 bondholders assigned their claims to Nordic Trustee when Plaintiffs filed this lawsuit in 2016. As part of the recovery process for OSA's 2013 bonds, the bondholders "instruct[ed] the Bond Trustee to initiate litigation" as the named Plaintiff against third parties, set up and control a special purpose vehicle to fund this litigation, and "prepare, negotiate, finalize and enter into … any agreement or other document regarding … the contemplated litigation process," which included the engagement agreement with Quinn Emanuel and would include, for example, a settlement agreement. D.E. 370-4 §§ 2.1-2.2, 5; D.E. 351-2 § 16.1.3 ("Resolutions passed at Bondholders' Meetings shall be binding upon all Bondholders").

Courts have held that such agreements constitute an assignment. For example, in *CWCapital Asset Mgmt., LLC v. Chicago Props., LLC*, 610 F.3d 497, 501 (7th Cir. 2010), the Seventh Circuit held that a contract giving a mortgage servicer "full power and authority, acting alone" to initiate any action the servicer believed necessary may be construed as giving the servicer "effectively equitable ownership" to the legal claim. Although the contract at issue lacked clear language assigning ownership of the legal claim, the Seventh Circuit construed the contract as an assignment because it gave the servicer total and exclusive control over legal claims, including the right to pursue any legal actions it deemed necessary, and the right to sue in its name. *Id.* The Seventh Circuit thus found the servicer to be an effective assignee. *Id.*

Florida law likewise recognizes that "no particular words or form of instrument is necessary to effect an equitable assignment and any language, however informal, which shows an

intention on one side to assign a right … and an intention on the other to receive, if there is a valuable consideration, will operate as an effective equitable assignment." *Fin-S Tech, LLC v. Surf Hardware Int'l-USA, Inc.*, 2014 WL 12461349, at *5 (S.D. Fla. Jan. 7, 2014) (quoting *Giles v. Sun Bank, N.A.*, 450 So. 2d 258, 260 (Fla. 5th DCA 1984)). "[T]he true test of an equitable assignment is whether the debtor would be justified in paying the debt to the person claiming as assignee." *Giles*, 450 So. 2d at 260. In *Giles*, the court found an equitable assignment in the context of an employment agreement where "all parties … treated the arrangement as an assignment." *Id.* at 261. The same is true here: the bondholders' unanimous agreement in 2016 to have Nordic Trustee pursue, fund, and potentially settle this litigation is an assignment of the bondholders' claims.

The fact that Nordic Trustee will remit the proceeds of the litigation to the bondholders under the funding arrangement does not undermine Nordic Trustee's standing based on the assignment. *See Sprint*, 554 U.S. at 271 (Article III permits an assignee to bring suit on behalf of others "even when the assignee has promised to remit the proceeds of the litigation to the assignor"). Moreover, for assignments, Nordic Trustee steps into the shoes of the 2013 bondholders and the Court considers their injury in fact, *i.e.*, their bond losses. *See, e.g.*, *id.* at 286. Accordingly, the bondholders assigned the substantive right to sue on their claims to Nordic Trustee, such that Nordic Trustee has the exclusive right to pursue them.

## IV. IF THE COURT STILL QUESTIONS NORDIC TRUSTEE'S STANDING, IT SHOULD ACCEPT THE BONDHOLDERS' RATIFICATION OR JOINING OF THE BONDHOLDERS UNDER RULE 17(A)(3)

Rule 17(a)(3) states that "the court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action." Ratification is the process of the real parties in interest authorizing a representative to continue the lawsuit on their behalf.

*See Fernandez v. Orlando Hous. Auth.*, 2016 WL 4382656, at *3 (M.D. Fla. Aug. 17, 2016) ("when an action is brought by someone other than the real party in interest, the suit need not be dismissed if the real party in interest subsequently joins or ratifies the action"). The Eleventh Circuit has recognized that Rule 17(a)(3) is applicable where "the plaintiff brought the action [in the name of the wrong party] as a result of an understandable mistake, because the determination of the correct party to bring the action is difficult." *In re Engle Cases*, 767 F.3d 1082, 1109 (11th Cir. 2014). This case presents, at the very least, a difficult question regarding the proper party and an understandable mistake, assuming *arguendo* that Nordic Trustee were not a proper party.

"A proper ratification under Rule 17(a) requires that the ratifying party (1) authorize continuation of the action and (2) agree to be bound by its result." *Chernykh v. Korf*, 2011 WL 13223535, at *5 (S.D. Fla. Sept. 30, 2011). That is exactly what occurred here, and thus the ratification is proper. In 2025, the bondholders confirmed Nordic Trustee's representation through a resolution, which stated: "We, the Bondholders, hereby confirm and approve that the Bond Trustee is granted all necessary rights and authorization to continue to pursue the claims in the US Litigation Proceedings and agree to be bound by the US Litigation Proceeding's result, including any judgment, decision, or order made with respect to the claims." D.E. 370-5 § 4(i).

The Court should accept the bondholders' ratification of Nordic Trustee as their representative. *See Keeton v. Gynecare Worldwide*, 2007 WL 9701139, at *4 (S.D. Fla. July 31, 2007) (ratification accomplished by filing of affidavits and allowing Plaintiff a month to file proof of ratification in response to a motion for summary judgment); *Integon Life Ins. v. Browning*, 989 F.2d 1143, 1153 (11th Cir. 1993) (affidavit submitted with summary judgment opposition sufficient). The ratification suffices for standing under well-established law. *See Chernykh*, 2011 WL 13223535, at *5; *CWCapital*, 610 F.3d at 502.

If the Court finds ratification insufficient, then, alternatively, the Court should allow the 2013 bondholders to join or be substituted into the action. In *Delta Coal Program v. Libman*, 743 F.2d 852, 853-56 (11th Cir. 1984), the Eleventh Circuit affirmed the district court's order permitting the substitution of individual investors in place of their limited partnership after it was found not to have standing to assert federal claims. Such a substitution would be especially justified given the circumstances here and the lack of any cognizable prejudice to Citi. Citi has had notice of Nordic Trustee's and the 2013 bondholders' claims and allegations since Plaintiffs filed the Complaint. Nordic Trustee and the 2013 bondholders are related parties. Ratification, joinder, or substitution would not create a new cause of action. And the parties have agreed to stay discovery as to Nordic Trustee until this motion is resolved. D.E. 329 ¶6.

On the other hand, it would be extremely prejudicial to the 2013 bondholders if their claims were terminated based on the supposedly insufficient standing of the party they had designated to pursue their claims, where the bondholders assigned their claims to Nordic Trustee in 2016 and Citi did not challenge that party's standing until its fourth motion to dismiss in 2022. Since the statute of limitations on their fraud and RICO claims has expired, the bondholders could face a statute-of-limitations problem if they tried to separately bring their claims for $160 million in bond principal plus continuing penalty interest, substantial costs to seize the bond collateral, and alternative damages of charter fees. There is no legal or equitable basis to punish the bondholders for Citi's delay in pursuing its argument as to Nordic Trustee, especially given the bondholders' repeated efforts to confirm Nordic Trustee was the proper party to pursue claims on their behalf.

## CONCLUSION

For the reasons above, the Court should deny Citi's sixth motion to dismiss.

**REQUEST FOR HEARING**

Pursuant to Local Rule 7.1(b), Plaintiffs respectfully request an in-person hearing of approximately 60 minutes to present the parties' arguments and assist the Court in resolving the motion.

Dated: September 28, 2026

Respectfully submitted,

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

By: /s/ *Juan P. Morillo*
Juan P. Morillo (Fla. Bar No. 135933)
Gabriel F. Soledad (*pro hac vice*)
Derek L. Shaffer (*pro hac vice*)
Lauren H. Dickie (*pro hac vice*)
David H. Needham (*pro hac vice*)
555 13th Street NW, Suite 600
Washington, D.C. 20004
Telephone: (202) 538-8000
juanmorillo@quinnemanuel.com
gabrielsoledad@quinnemanuel.com
derekshaffer@quinnemanuel.com
laurendickie@quinnemanuel.com
davidneedham@quinnemanuel.com

David M. Cooper (*pro hac vice*)
Samantha I. Gillespie (*pro hac vice*)
295 Fifth Avenue, 9th Floor
New York, NY 10016
Telephone: (212) 849-7000
davidcooper@quinnemanuel.com
samanthagillespie@quinnemanuel.com

Laura N. Ferguson (Fla. Bar No. 1047701)
2601 S. Bayshore Dr., Ste. 1550
Miami, Florida 33133
Telephone: (305) 402-4880
lauraferguson@quinnemanuel.com

Vasundhara Ziemba-Prasad (*pro hac vice*)
111 Huntington Ave., Ste. 520
Boston, MA 02199
Telephone: (617) 712-7100
vasundharaprasad@quinnemanuel.com

HOMER BONNER JACOBS ORTIZ, P.A.
Peter W. Homer (Fla. Bar No. 291250)
Gregory J. Trask (Fla. Bar No. 0055883)
Kevin P. Jacobs (Fla. Bar No. 169821)
1200 Four Seasons Tower
1441 Brickell Avenue
Miami, Florida 33131

Telephone: (305) 350-5100
phomer@homerbonner.com
gtrask@homerbonner.com
kjacobs@homerbonner.com

*Counsel for Plaintiffs*